UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYNTEL STERLING BEST SHORES
MAURITIUS LIMITED,

      Plaintiff and Counterclaim Defendant,

           v.

THE TRIZETTO GROUP, INC.
and COGNIZANT TECHNOLOGY SOLUTIONS
CORP.,

      Defendants and Counterclaim Plaintiffs.

15 Civ. 00211 (LGS) (JLC)

**TRIZETTO CORPORATION AND COGNIZANT TECHNOLOGY SOLUTIONS
CORPORATION'S ANSWER TO COMPLAINT AND COUNTERCLAIMS**

Defendants TriZetto Corporation ("TriZetto")[1] and Cognizant Technology Solutions Corporation ("Cognizant") (collectively, "Defendants" or "Counterclaim Plaintiffs"), by and through their undersigned counsel, file this Answer to the Complaint of Plaintiff Syntel Sterling Best Shores Mauritius Limited ("Plaintiff" or "Syntel Mauritius") and assert Counterclaims against Plaintiff.

## NATURE OF CLAIMS AND COUNTERCLAIMS

1.    Syntel Mauritius filed this lawsuit as one part of Syntel's[2] campaign to sabotage Cognizant and TriZetto in order to gain unlawful competitive advantages. Syntel Mauritius signed a Master Services Agreement ("MSA") in which it promised to supply TriZetto with

---

[1] Syntel named The TriZetto Group, Inc. as a defendant. The TriZetto Group, Inc. is now known as TriZetto Corporation. For purposes of its Answer, TriZetto will assume that all references to "TriZetto" in the Complaint refer to TriZetto Corporation.

[2] Syntel, Inc. apparently operates through and with numerous subsidiaries and affiliates. For ease of reference, Syntel Mauritius, as well as Syntel, Inc. and its other affiliates or entities, are referred to herein as "Syntel," except where necessary to make a distinction.

technical personnel to service TriZetto's software products, including extensive customization for its clients' needs.  The MSA expressly anticipated that TriZetto could be acquired by a competitor of Syntel Mauritius, and permitted Syntel Mauritius to terminate the MSA if that occurred—but only if it continued to provide personnel "of the same quality, level of performance and scope as provided prior to termination" for two years.  (MSA § 25.01(4).)

2.       On November 20, 2014, Cognizant, a Syntel competitor, acquired TriZetto, as contemplated in the MSA.  Syntel Mauritius terminated the MSA, as was its right under its terms.  However, in the weeks leading up to the consummation of Cognizant's acquisition of TriZetto and following the closing of the acquisition, Syntel has continually failed to live up to its promises in the MSA.  Rather than continuing to provide technical personnel to TriZetto for the required two years so that TriZetto could transition to another supplier in an orderly manner, Syntel opportunistically undertook to sabotage its competitor, Cognizant, not only by removing key personnel from important customer accounts, but also by stealing trade secrets (downloading hundreds of confidential key business documents), using those trade secrets to compete against Cognizant and TriZetto, and harassing Cognizant employees.

3.       Through this pattern of misconduct, Syntel has seriously disrupted Cognizant and TriZetto's ability to service its clients—causing them to miss key client deadlines and damaging client relationships.  Syntel is also undertaking to steal client business from Cognizant and TriZetto—business for which it would otherwise not be in a position to even be considered because it lacks the expertise and experience—by using the trade secrets it misappropriated and the damaged client relationships it caused.

4.       This sabotage not only violates the MSA, it violates New York laws which prohibit breaches of the covenant of good faith and fair dealing, the misappropriation of trade

2

secrets, unfair competition, and tortious interference with business relations.   Syntel and Cognizant bring those counterclaims below.

5.      The claims of Syntel Mauritius, which commenced this lawsuit as a preemptive tactic, are utterly without merit.  Syntel Mauritius's primary claim is that Cognizant violated the MSA by hiring former employees of other Syntel affiliates, which Cognizant was required to do to defend itself from Syntel's sabotage and removal of key personnel.  But the MSA does not prohibit hiring of non-Syntel Mauritius employees and, in any case, Cognizant is not a party to the MSA.  Syntel Mauritius *knows* its claim is without any basis because it tried to amend the MSA to include provisions that would apply to non-Syntel Mauritius employees and Cognizant, but such an amendment never occurred.  Yet it brings that claim before this Court anyway.

6.      That this and Syntel Mauritius's other claims and allegations are devoid of merit is underscored by its wildly irresponsible demand for "punitive damages in an amount of a multiple of Cognizant's net worth, listed as $6,135,791,000 in Cognizant's most recent public financial statement."  (Complaint ¶ 24.)  There is no legal or factual basis for such an allegation, which Syntel Mauritius made up out of thin air and presented to this Court, solely for publicity purposes and its *in terrorem* effect on a competitor.

7.      Syntel is engaged in a campaign to sabotage TriZetto and Cognizant and it should be stopped.

## ANSWER

## GENERAL ALLEGATIONS

8.      Defendants lack knowledge or information sufficient to form a response to the allegations in Paragraph 1 of the Complaint, and therefore deny the same.

9.      With respect to Paragraph 2 of the Complaint, Defendants admit that TriZetto is a Delaware corporation with its principal place of business in Colorado.

3

10.     With respect to Paragraph 3 of the Complaint, Defendants admit that Cognizant is a Delaware corporation with its principal place of business in New Jersey.

11.     Defendants state that Paragraph 4 of the Complaint asserts conclusions of law for which no response is required.

12.     Defendants state that Paragraph 5 of the Complaint asserts conclusions of law for which no response is required.   The MSA speaks for itself, and Defendants refer to it for its complete terms.

13.     With respect to Paragraph 6 of the Complaint, the MSA speaks for itself, and Defendants refer to it for its complete terms.   Defendants otherwise:  (1) admit that Syntel Mauritius and TriZetto executed an MSA effective June 30, 2010; (2) admit that a copy of that MSA is in the possession of TriZetto; (3) admit that Syntel Mauritius and TriZetto executed Amendment No. 1 to the MSA; (4) deny that the effective date of the amendment was August 17, 2012; and (5) admit that Syntel provided TriZetto with certain services under the MSA.

14.     With respect to Paragraph 7 of the Complaint, the MSA speaks for itself, and Defendants refer to it for its complete terms.

15.     With respect to Paragraph 8 of the Complaint, Defendants admit that Cognizant is listed as a Competitor of Syntel in Exhibit 20 to the MSA.   Defendants admit the remaining allegations in Paragraph 8 of the Complaint.

16.     With respect to Paragraph 9 of the Complaint, Defendants admit that Syntel issued a notice of termination dated November 20, 2014.   Defendants further state that the remainder of Paragraph 9 of the Complaint asserts conclusions of law for which no response is

required.   To the extent a response is required to the remaining allegations in Paragraph 9, Defendants deny those allegations.

17.     Defendants deny the allegations in Paragraph 10 a-d of the Complaint.

18.     Defendants deny the allegation in Paragraph 11 of the Complaint.

19.     Defendants state that Paragraph 12 of the Complaint asserts conclusions of law for which no response is required.   To the extent a response is required to the allegations in Paragraph 12, Defendants deny those allegations.

### COUNT I – BREACH OF CONTRACT

20.     Defendants incorporate by reference, as if fully set forth herein, their responses to the allegations contained in Paragraphs 1 through 12 of the Complaint as set forth above.

21.     Defendants state that Paragraph 14 of the Complaint asserts a conclusion of law for which no response is required.   To the extent a response is required to the allegation in Paragraph 14, Defendants deny the allegation.

22.     Defendants state that Paragraph 15 of the Complaint asserts conclusions of law for which no response is required.   To the extent a response is required to the allegations in Paragraph 15, Defendants deny those allegations.

### COUNT II – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND INDUCEMENT TO BREACH (AGAINST TRIZETTO)

23.     Defendants incorporate by reference, as if fully set forth herein, their responses to the allegations contained in Paragraphs 1 through 15 of the Complaint as set forth above.

24.     Defendants state that Paragraph 17 of the Complaint asserts conclusions of law for which no response is required.   To the extent a response is required to the allegations in Paragraph 17, Defendants deny those allegations.

25.     Defendants state that Paragraph 18 of the Complaint asserts conclusions of law for which no response is required.  To the extent a response is required to the allegations in Paragraph 18, Defendants deny those allegations.

26.     Defendants state that Paragraph 19 of the Complaint asserts conclusions of law for which no response is required.  To the extent a response is required to the allegations in Paragraph 19, Defendants deny those allegations.

## COUNT III – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND INDUCEMENT TO BREACH (AGAINST COGNIZANT)

27.     Defendants incorporate by reference, as if fully set forth herein, their responses to the allegations contained in Paragraphs 1 through 19 of the Complaint as set forth above.

28.     Defendants state that Paragraph 21 of the Complaint asserts conclusions of law for which no response is required.  To the extent a response is required to the allegations in Paragraph 21, Defendants deny those allegations.

29.     Defendants state that Paragraph 22 of the Complaint asserts conclusions of law for which no response is required.  To the extent a response is required to the allegations in Paragraph 22, Defendants deny those allegations.

## COUNT IV – MISAPPROPRIATION OF CONFIDENTIAL INFORMATION (AGAINST TRIZETTO AND COGNIZANT)

30.     Defendants incorporate by reference, as if fully set forth herein, their responses to the allegations contained in Paragraphs 1 through 22 of the Complaint as set forth above.

31.     Defendants state that Paragraph 24 of the Complaint asserts conclusions of law for which no response is required.  To the extent a response is required to the allegations in Paragraph 24, Defendants deny those allegations.

WHEREFORE, TriZetto and Cognizant deny that Plaintiff is entitled to any of the relief requested in the Complaint.

6

## AFFIRMATIVE DEFENSES

Defendants have not knowingly and intentionally waived any applicable affirmative defenses and reserve the right to amend their answer and affirmative defenses to raise affirmative defenses in addition to those below as they become known to Defendants through discovery in this matter.

As to affirmative defenses, Defendants allege as follows, without admission that they carry the burden of proof on any of the matters set forth below:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to meet its burdens, including its burden of pleading a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is precluded from recovering punitive damages that are inconsistent with the due process limitations of the constitutions of the United States and any applicable state.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own inequitable conduct and unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs purport to request injunctive relief, any such claim is barred because Plaintiffs have an adequate remedy at law.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by laches, equitable estoppel, ratification, waiver, or other related equitable doctrine.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendants are barred, in whole or in part, because Plaintiff lacks standing to assert its claims against Defendants.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendants are barred, in whole or in part, because Plaintiff lacks capacity to assert its claims against Defendants.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Defendants and Counterclaim Plaintiffs TriZetto and Cognizant allege the following against Plaintiff and Counterclaim Defendant Syntel.

## PARTIES

32.    TriZetto is a technology company incorporated in Delaware, with its principal place of business in Colorado.

33.    Cognizant is a technology company incorporated in Delaware, with its principal place of business in New Jersey.

34.    Syntel is a technology company with multiple affiliates.  Upon information and belief, at least one of those affiliates is a Mauritius corporation with its principal place of business in Mauritius.

## JURISDICTION AND VENUE

35.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (pendent state law claims).  Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

36.     The Court has personal jurisdiction over Syntel, and venue is proper, because, *inter alia*, Syntel Mauritius agreed in the MSA that any legal action arising out of the MSA must be brought in either New York state court or the United States District Court for the State of New York.

## GENERAL ALLEGATIONS

37.     TriZetto offers numerous software products that it develops for and licenses to clients.  TriZetto's technology products, in combination with its consulting, IT and business process services, simplify the deployment and adoption of technology and improve healthcare operations.

38.     Of particular importance, Facets™ is TriZetto's core software product geared specifically to health plan administration.

39.     TriZetto also has a Consulting unit that services its products, providing the implementation necessary to allow clients to use the products seamlessly and interface with other software.  Clients can hire TriZetto to customize its products for their individual systems and needs, a complex process that can take many months.

40.     In addition to the work done by its full-time employees, TriZetto contracts out for personnel from multiple third-party vendors to meet its client needs.  One such important vendor is Syntel.

41.     Upon information and belief, Syntel Mauritius is not registered to do business anywhere, and is not listed as a subsidiary of Syntel, Inc. in Syntel Inc.'s recent SEC filings.

**TriZetto And Syntel Mauritius Entered Into
A Master Services Agreement**

42.     Effective June 30, 2010, TriZetto and Syntel Mauritius entered into the MSA,

pursuant to which Syntel agreed to supply personnel to TriZetto to assist with software

development, consulting, and other customer projects.  The MSA was amended in 2012.

43.     Provisions of the MSA include the following:

- Section 10.03(3) of the MSA requires Syntel to "only appoint [personnel] with suitable training, education, skills and experience for the position to which such individual is assigned."

- Section 10.03(6) of the MSA requires Syntel to "conduct the replacement procedures . . . in such a manner so as to assure an orderly succession for the individuals . . . replaced."

- Section 19.01(1) of the MSA prohibits each party from using the other party's "Confidential Information" for its own benefit.  Section 1.01(13) of the MSA defines "Confidential Information" as including "TriZetto Data," in turn defined as "all data and information . . . to which Service Provider or Service Provider Agents have access in connection with the provision of the Services" under Section 1.01(125) of the MSA.

- Section 21.02(2) of the MSA reinforces that Syntel shall "use adequate numbers of qualified individuals with suitable training, education, experience and skill to perform the Services" contracted for.

44.     Additionally, the MSA expressly contemplated that TriZetto could be acquired by

a competitor of Syntel.  Section 23.02(3) of the MSA allows Syntel to terminate "[i]n the event

of a TriZetto Change in Control, in each case in a transaction involving an entity listed on

Exhibit 15."  Exhibit 15 to the MSA lists "Cognizant" among the "Change in Control Entities."

If Syntel elects to terminate the MSA, Section 25.01(1) of the MSA describes Syntel's obligation

to provide "Termination Assistance Services" during the Termination Assistance Period.  Section

1.01(110) of the MSA defines "Termination Assistance Period" as beginning upon notice of the

termination and "continuing for up to 24 months after such expiration or termination."  Section

25.01 (4) of the MSA further requires that Syntel's "Termination Assistance Services shall be of

10

the same quality, level of performance and scope as provided prior to termination, but not less than as required under this Agreement."

45.     In order to deliver its services to TriZetto under the MSA, Syntel assigns personnel to assist with TriZetto projects.  Once assigned to TriZetto, Syntel personnel receive ongoing training from TriZetto regarding TriZetto's products and develop knowledge and skills specific to those products (and, relatedly, to TriZetto's clients' use of the products).

46.     TriZetto's Syntel staffers are a combination of "offshore" personnel, who work primarily from a facility in Pune, India, and "onshore" personnel, who work in one of TriZetto's offices or at a TriZetto client site in the U.S.  Offshore personnel are typically less experienced and billed to a client at a lower rate, while onshore staffers are generally highly skilled with greater TriZetto product knowledge and can be billed at much higher rates.  The typical career progression is for talented offshore personnel who hone their required skills to eventually move onshore.  While onshore, personnel have more TriZetto product exposure and client interaction.

**Cognizant Acquired TriZetto, Syntel Exercised Its Right To Terminate, And Syntel Began Backing Out Of The Services It Promised To Provide**

47.     Cognizant has long been one of the leading healthcare IT providers and since its inception has provided excellent client services to its customers.  As a result of the changing market, Cognizant sought to acquire a software platform to add to its already industry-leading services, in order to improve its ability to service its customers with one, fully integrated solution.

48.     On September 15, 2014, Cognizant and TriZetto announced that Cognizant would acquire TriZetto.  The strategic rationale for the deal was to add TriZetto's healthcare software platform to Cognizant's first-in-class technology services in order to create a fully integrated healthcare technology and operations leader.  The deal closed in November 2014.

11

49.     After the Cognizant-TriZetto transaction announcement, Syntel Mauritius issued to TriZetto a notice of termination of the MSA.  That notice was issued on November 20, 2014, and became effective on February 18, 2015.

50.     Issuing the termination notice was Syntel Mauritius's right under the MSA. However, the MSA also obligated Syntel Mauritius to continue to provide to TriZetto Termination Assistance Services "of the same quality, level and performance" for two years. Rather than comply with the MSA, and its promise to provide such services, Syntel opportunistically undertook to sabotage TriZetto and, therefore, Syntel's competitor Cognizant. Syntel began to engage in manipulative, unfair, and unlawful activities to damage TriZetto's business operations, tarnish its reputation with clients, and better position itself vis-à-vis the combined TriZetto and Cognizant.

51.     For example, in mid-October 2014, after the Cognizant transaction was announced but before an official notice of termination was delivered, Syntel notified TriZetto that Syntel intended imminently to remove 12 of its most highly skilled onshore staffers then working in TriZetto's Consulting unit and deeply embedded in TriZetto client projects.  Syntel was well aware that many of these staffers were critical to TriZetto customer projects that were on the verge of "going live" or approaching other key milestones, and virtually irreplaceable at that point due to their embedded knowledge. The 12 staffers that Syntel wanted to withdraw immediately were 12 of TriZetto's most highly skilled and knowledgeable Syntel staffers, who had been on specific TriZetto client assignments for months.  TriZetto vigorously protested their removal and expressed concern for the impact that such an action would have on ongoing client projects.  Nevertheless, over TriZetto's vigorous protest, Syntel removed 11 of the 12 staffers on November 24, 2014, and the last of the 12 on December 5, 2014.

52.     TriZetto and Syntel both knew that such actions by Syntel would damage TriZetto's ability to service its clients beyond repair.  Indeed, Syntel's unilateral removal of staffers from TriZetto in November 2014 disrupted TriZetto's business significantly.

53.     Six of the 12 staffers pulled out by Syntel had been working for many months on a Facets™ software update project for TriZetto client Topaz Shared Services, LLC  ("Topaz"), which had an upcoming "go live" deadline of January 1, 2015.  These six staffers were among the top Syntel staffers at TriZetto with regard to knowledge of Facets™.

54.     The replacements that Syntel suggested for these six onshore staffers were offshore staffers who did not have the same Facets™ familiarity, experience, and depth of skills as the onshore resources that were being removed.  Additionally, these staffers lacked the embedded knowledge of the removed resources, and the imminent "go live" left no time to get any such replacement resources up to speed.  This lesser training, in addition to their overseas location, meant that they could not fulfill the necessary tasks on the Topaz project.

55.     Syntel ultimately withdrew the six personnel from the Topaz project without making any replacements, in violation of its contractual obligations.  This caused TriZetto to miss the "go live" deadline for the project.  TriZetto struggled to find replacements to backfill these positions on the Topaz project team.  The missed "go live" deadline and other issues with the shift of Syntel staffers prompted many strong complaints from Topaz.  Topaz is an important and high-profile client of TriZetto.

56.     Other Syntel personnel were also abruptly removed from other important TriZetto client projects.  Although Syntel made some replacements for these projects, they were with individuals who had less training and less project-specific knowledge, once again violating the

MSA. Indeed, the quality of services provided by Syntel has diminished significantly since the Cognizant acquisition was announced.

57.     Making matters worse, in addition to depriving TriZetto of the personnel to which it is entitled under the MSA, Syntel used the leverage it had over TriZetto and Cognizant to impose new demands on them—above any required by the MSA. In a letter dated December 23, 2014, Syntel asserted that it would only continue to provide services during the Termination Assistance Period if TriZetto agreed to new contractual commitments not set forth in the MSA— namely, (a) that it would pay Syntel approximately $3.4 million in disputed rebates and (b) to amend the MSA so that neither TriZetto nor Cognizant nor their affiliates would hire any recent employee of Syntel Mauritius or its affiliates. By making the latter demand, Syntel conceded that the MSA does not, in fact, bar the hiring of non-Syntel Mauritius employees or apply to Cognizant—which is fatal to its claim on this issue. Further, Syntel's threat that it would effectively "Abandon" the services it was obligated to provide under the MSA constituted a breach of Section 29.21 thereof. TriZetto refused to accede to Syntel's demands.

58.     This pattern of conduct has continued and TriZetto has been forced to scramble existing staffing and hire outside third-party contractors to try to fill the void left by Syntel's removal of its personnel. Nevertheless, the missed deadlines and client-relations damage cannot be quantified.

### Syntel Has Used TriZetto's Confidential Information To Compete With Cognizant And TriZetto

59.     Upon information and belief, Syntel staffers have downloaded massive amounts of confidential TriZetto files, through an organized effort by Syntel to misappropriate TriZetto's confidential files in order to effectively compete with Cognizant and TriZetto.

60.     TriZetto's internal Customer Exchange website appears on TriZetto's intranet and is only available to TriZetto employees, clients, and other third parties—including Syntel staffers—who are working on TriZetto and/or TriZetto customers' projects.

61.     TriZetto's Customer Exchange contains, among other things, highly technical documentation that enables TriZetto to implement, configure, customize, upgrade and maintain its software, efficiently and precisely, to meet its customers' needs.  This is confidential and proprietary information, and having access to it could enable Syntel to be a viable competitor for projects involving TriZetto's products.

62.     Under its Terms and Conditions of Use, Customer Exchange users may only access documentation for their own personal use in relation to TriZetto's business, may not collect any materials other than for internal use, and may not make any of the materials available to any unauthorized third party.

63.     Close to 1,500 downloads were completed by Syntel staffers of approximately 500 unique confidential documents between September 2014 and February 2015.

64.     The downloaded documents contain highly sensitive materials.  For example:

- The Facets™ Data Models Guide contains a complete set of data and codes for the underlying diagrams in Facets™—TriZetto's core proprietary software product—which is used to configure Facets™ for specific client needs and create customized data reports, as well as the basic architecture for Facets™, including a virtual representation of the database.

- The Claims Processing User Guide provides steps and illustrations of Facets™ claims processing functionality for hospital and medical claims, including detailed descriptions of the claims adjudication process, batch processing, system overrides, archiving, and software security issues.

- Facets™ Systems Administration User Guide specifies the parameters for configuring different Facets™ customizations and includes instructions on establishing users, setting up attachments, defining security settings, establishing auto numbering and masking personal identifiers.

15

65.     For all three types of documentation above, versions 4.71 through 5.20 were downloaded.

66.     Many of the Syntel staffers who have been pulled from TriZetto projects downloaded massive amounts of these critical files in the days leading up to their departure—and for some, their absolute last day.

67.     For instance, one Syntel staffer who later left TriZetto downloaded 79 files on September 18, 2014—the day that a Syntel-wide meeting is believed to have taken place at TriZetto's office—between 6:54 a.m. and 7:07 a.m.

68.     Another Syntel staffer who left TriZetto on November 7, 2014 downloaded 49 files on November 6, 2014 between 3:12 p.m. and 3:20 p.m.

69.     Three of the 12 aforementioned Syntel staffers who were abruptly pulled from Consulting projects collectively downloaded at least 126 TriZetto files in the days leading up to their November 24, 2014 departure.  Specifically, one Syntel staffer who worked on the Topaz project downloaded 26 files on November 23—the day before his last day at TriZetto—all between 6:39 p.m. and 6:56 p.m.  Another Syntel staffer who worked on a different Consulting project downloaded 89 files on November 24—his last day—all between 1:36 a.m. and 2:58 a.m.

70.     In all of the cases detailed above, the downloaded files were by and large related to Facets™ implementation.

71.     Additionally, in the days leading up to their departures from TriZetto, numerous Syntel staffers forwarded TriZetto's confidential and proprietary information from their TriZetto email accounts to their own personal and Syntel email addresses.  Upon information and belief, there is no legitimate explanation for this forwarding activity.

72.     Upon information and belief, Syntel has used TriZetto's files, including files from Customer Exchange, to pitch for other consulting jobs on TriZetto's products—reviewing TriZetto confidential materials to prepare to bid against Cognizant and TriZetto.

73.     Upon information and belief, in late November 2014, several Syntel staffers gathered in a conference room in TriZetto's Denver office to strategize for the pursuit of other consulting jobs outside TriZetto and to use Customer Exchange materials to prepare for a pitch at UnitedHealth Group ("UHG"), a major client of both TriZetto and Cognizant.

74.     Upon information and belief, a Syntel staffer called in sick to his TriZetto project for an entire week in early December 2014 and attended a pitch on Syntel's behalf for a Facets™ upgrade project at UHG.  Cognizant was bidding for the same UHG project.

75.     Upon information and belief, Syntel won the UHG bid by extolling Syntel staffers' training and familiarity with TriZetto's Facets™ product—which had been acquired while Syntel was being paid by TriZetto under the MSA—and significantly under-bidding Cognizant.

76.     Upon information and belief, Syntel has now sent several of the highly skilled staffers with intimate knowledge of TriZetto's confidential information who it had pulled from TriZetto's Topaz project in November to work on this new UHG project.

77.     Upon information and belief, the prospect of the UHG and other client engagements is precisely the reason that Syntel so abruptly withdrew key staffers from TriZetto.

78.     Many established clients have begun demanding that Cognizant and TriZetto make concessions, or the clients would pursue other options.  Upon information and belief, this has occurred because Syntel had pitched these clients, emphasizing in particular its staffers' experience with one of TriZetto's core products, Facets™, which they had obtained through their

work at TriZetto, and offering to charge less than TriZetto to have those staffers work on Facets™ projects.

79.     Upon information and belief, at least one of the Syntel staffers who was pulled off a TriZetto project has been assigned by Syntel to HealthEdge, another of TriZetto's competitors, and has been tasked with developing a competing product to Facets™.

### Syntel Engaged In A Harassment Campaign Against Cognizant's New Or Soon-To-Be Employees

80.     To mitigate its losses from Syntel's actions, Cognizant has been forced to hire certain ex-Syntel staffers as backfill on the TriZetto client work that Syntel has abandoned. Upon information and belief, none of the staffers that Cognizant has hired have been employees of Syntel Mauritius.

81.     Upon information and belief, Syntel has reacted by bullying its current and former staff and spreading misinformation.

82.     Upon information and belief, Syntel sent its staffers threatening letters incorrectly claiming that the staffers are not allowed to join Cognizant, and that Cognizant has a contractual obligation not to hire Syntel employees.  Cognizant has no contractual restriction against hiring employees from any Syntel entity, much less Syntel Mauritius.  These letters were therefore false and misleading.

83.     Upon information and belief, Syntel has forced staffers in India who have resigned to attend meetings during their mandatory "notice period" between resignation and date of departure.  Syntel has used these meetings to intimidate the staffers and coerce them away from joining Cognizant.

84.     In its most aggressive maneuver to date, Syntel has published advertisements in Indian newspapers containing "mug-shot"-type pictures of ex-Syntel staff who have departed for

Cognizant.   Upon information and belief, these advertisements are blatant (and successful) efforts to cause unwanted attention, shame and fear for these individuals.

85.     Many of the Syntel staffers are now apprehensive to join Cognizant because of the punitive steps that Syntel has taken.

86.     Syntel itself, however, has solicited TriZetto employees to work for Syntel.

## COUNT I – BREACH OF CONTRACT
### (ON BEHALF OF TRIZETTO AGAINST SYNTEL)

87.     TriZetto repeats and re-alleges the allegations of the preceding Paragraphs 1-86 of these counterclaims as if fully set forth herein.

88.     The actions of Syntel, as set forth herein, constitute a breach of contract.

89.     TriZetto satisfied all relevant obligations under the MSA.

90.     Nonetheless, Syntel breached multiple provisions of the MSA, including Sections 10.03(3), 10.03(6), 12.01(1),19.01(1), 21.02(2), 25.01(1), 25.01(4), 29.16 and 29.21.

91.     As a result of Syntel's breach, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (ON BEHALF OF TRIZETTO AGAINST SYNTEL)

92.     TriZetto repeats and re-alleges the allegations of the preceding Paragraphs 1-91 of these counterclaims as if fully set forth herein.

93.     The actions of Syntel, as set forth herein, constitute a breach of the implied covenant of good faith and fair dealing.

94.     Syntel improperly deprived TriZetto of its right to receive the benefits under the MSA.

95.     As a result of Syntel's breach, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

### COUNT III – MISAPPROPRIATION OF CONFIDENTIAL INFORMATION
### (ON BEHALF OF TRIZETTO AGAINST SYNTEL)

96.     TriZetto repeats and re-alleges the allegations of the preceding Paragraphs 1-95 of these counterclaims as if fully set forth herein.

97.     The actions of Syntel, as set forth herein, constitute misappropriation of confidential information.

98.     TriZetto possessed trade secrets.

99.     Syntel improperly obtained, used, and disclosed those trade secrets.

100.    As a result of Syntel's actions, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

### COUNT IV– UNFAIR COMPETITION
### (ON BEHALF OF TRIZETTO AND COGNIZANT AGAINST SYNTEL)

101.    TriZetto and Cognizant repeat and re-allege the allegations of the preceding Paragraphs 1-100 of these counterclaims as if fully set forth herein.

102.    The actions of Syntel, as set forth herein, constitute unfair competition.

103.    Syntel copied or misappropriated TriZetto and Cognizant's products and operations by obtaining access to them through fraud or deception, and/or an abuse of a confidential relationship.

104.    Syntel's use of copied or misappropriated TriZetto and Cognizant material confused the public, including members of the healthcare and technology industries, as to whether Syntel, TriZetto, or Cognizant was the source of that material.

105.    As a result of Syntel's actions, TriZetto and Cognizant have suffered direct and consequential damages, including in the form of actual, economic harm to their businesses, and are entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

### COUNT V– TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS (ON BEHALF OF TRIZETTO AND COGNIZANT AGAINST SYNTEL)

106.    TriZetto and Cognizant repeat and re-allege the allegations of the preceding Paragraphs 1-105 of these counterclaims as if fully set forth herein.

107.    The actions of Syntel, as set forth herein, constitute tortious interference with prospective business relations.

108.    TriZetto and Cognizant reasonably expected to obtain economic advantages from relationships with clients.

109.    Syntel intentionally and improperly interfered with TriZetto and Cognizant's relationships with clients, preventing TriZetto and Cognizant from forming contracts with those clients.

110.    Syntel used wrongful means and acted with the sole purpose of harming TriZetto and Cognizant.

111.    Syntel's malicious interference with TriZetto and Cognizant's client relationships prevented TriZetto and Cognizant from obtaining economic advantages through those relationships.

112.     As a result of Syntel's actions, TriZetto and Cognizant have suffered direct and consequential damages, and are entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, TriZetto and Cognizant respectfully request this Court to enter judgment for TriZetto and Cognizant and against Syntel as follows:

a.     That the Complaint and all of Syntel's claims are dismissed with prejudice and that Syntel be denied any recovery by reason thereof;

b.     That TriZetto and Cognizant are entitled to compensatory relief, including prejudgment and postjudgment interest;

c.     That TriZetto and Cognizant are entitled to punitive damages;

d.     That TriZetto and Cognizant are entitled to injunctive relief;

e.     That TriZetto and Cognizant are entitled to reasonable costs, including attorneys' fees and expenses;

f.     That TriZetto and Cognizant are entitled to such additional and further relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants and Counterclaim Plaintiffs demand trial by jury in this action of all issues so triable.

Dated:  February 23, 2015                    LATHAM & WATKINS LLP


By: /s/ James E. Brandt
    James E. Brandt
    Jeff G. Hammel
    Sarah M. Lightdale
    885 Third Avenue
    New York, NY  10022
    Telephone:  (212) 906-1200
    Fax:  (212) 751-4864
    E-mail: james.brandt@lw.com
    E-mail: jeff.hammel@lw.com
    E-mail: sarah.lightdale@lw.com

*Attorneys for Defendants and Counterclaim Plaintiffs TriZetto Corporation and Cognizant Technology Solutions Corporation*