**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SYNTEL STERLING BEST SHORES MAURITIUS LTD. and SYNTEL, INC., <br><br> Plaintiffs-Counterdefendants, <br><br> v. <br><br> THE TRIZETTO GROUP, INC. and COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, <br><br> Defendants-Counterclaimants. | 1:15-cv-00211(LGS) (RLE) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS-COUNTERCLAIMANTS TRIZETTO CORPORATION & COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION'S MOTION FOR LEAVE TO AMEND COUNTERCLAIMS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTS & PROCEDURAL HISTORY ..................................................................... 2

I.     FACTUAL OVERVIEW ................................................................................ 2

II.    THE PLEADINGS ......................................................................................... 3

III.   INITIAL DISCOVERY ................................................................................. 3

IV.   SYNTEL'S RECENT PRODUCTION ........................................................ 5

       A.   New Evidence Of Syntel's Infringement And Misappropriation ................... 5

       B.   Evidence That Syntel Willfully Destroyed Relevant Evidence ....................... 9

       C.   Pending Motion Practice Concerning Syntel's Recent Production................ 9

V.    THE INSTANT MOTION ........................................................................... 10

ARGUMENT ........................................................................................................... 11

I.     THE MOTION SHOULD BE GRANTED BECAUSE DEFENDANTS
      DILIGENTLY SOUGHT LEAVE TO ADD MERITORIOUS CLAIMS
      BASED ON INTERVENING FACTS AND LAW, AND SYNTEL WILL
      NOT SUFFER PREJUDICE ........................................................................ 11

       A.   Defendants Were Diligent In Bringing Their First Motion To Amend
            In Light Of New Evidence And Law ................................................................. 12

            1.   The Motion Is Timely ............................................................................. 12

            2.   New Evidence Adduced In Discovery Warrants Leave To Amend ........ 13

            3.   Recently Passed New Federal Law Warrants Leave To Amend ............. 13

       B.   Syntel Cannot Satisfy Its Burden of Showing Undue Prejudice ................... 14

            1.   The Proposed Amendments Are Closely Related To The Original
               Claims And Foreshadowed In Earlier Pleadings And Argument ............ 15

            2.   Syntel Has Ample Time To Meet The New Allegations And
               Claims ..................................................................................................... 16

       C.   Defendants' Proposed Amendments Are Meritorious ................................... 17

1.      Defendants' Proposed Amendments State A *Prima Facie* Case Of Copyright Infringement ........................................................................... 17

2.      Defendants' Proposed Amendments State Additional Claims Of Misappropriation Under New York Law .................................................... 20

3.      Defendants' Proposed Amendments State A *Prima Facie* Case Of Trade Secret Theft Under The DTSA ....................................................... 22

4.      Defendants' Proposed Amendments State Additional Claims For Breach Of Contract ................................................................................. 23

**CONCLUSION** ............................................................................................................. **24**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbatiello v. Monsanto Co.*,
   571 F. Supp. 2d 548 (S.D.N.Y. 2008)..............................................................................14, 16

*Asset Vision, LLC v. Fielding*,
   2013 WL 6633743 (D. Idaho Dec. 17, 2013) ........................................................................19

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   2011 WL 1044899 (N.D. Cal. Mar. 23, 2011)................................................................19, 20

*Cat3, LLC v. Black Lineage, Inc.*,
   2015 WL 5559569 (S.D.N.Y. Sept. 21, 2015)......................................................................14

*Chavis v. Chappius*,
   618 F.3d 162 (2d Cir. 2010)..........................................................................................11, 12

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
   282 F.3d 83 (2d Cir. 2002)..................................................................................................17

*E.E.O.C. v. Michael Cetta, Inc.*,
   2011 WL 5117020 (S.D.N.Y. Oct. 27, 2011) ......................................................................13

*Eagle Comtronics, Inc. v. Pico, Inc.*,
   89 A.D.2d 803 (4th Dep't 1982)..........................................................................................21

*Fla. Day Cruises, Inc. v. Ins. Co. of N. Am.*,
   2003 WL 22100691 (S.D.N.Y. Sept. 11, 2003)..............................................................12, 16

*Foman v. Davis*,
   371 U.S. 178 (1962)..............................................................................................11, 12, 17

*Heinold Commodities, Inc. v. N.Y. Mercantile Exch.*,
   78 F.R.D. 190 (S.D.N.Y. 1978) ..........................................................................................15

*Holmes v. Grubman*,
   568 F.3d 329 (2d Cir. 2009)...............................................................................................11

*Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*,
   342 F.2d 737 (2d Cir. 1965)...............................................................................................21

*Infosint S.A. v. H. Lundbeck A/S*,
   2007 WL 2489650 (S.D.N.Y. Sept. 4, 2007)......................................................................13

*Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, LLC*,
  712 F. Supp. 2d 96 (S.D.NY. 2010)..................................................................................17, 18

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*,
  920 F.2d 171 (2d Cir. 1990).....................................................................................................20

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)......................................................................................................11

*Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192 (S.D.N.Y. Feb. 8, 2010)...............................13

*McGuire v. Warren*,
  207 F. App'x 34 (2d Cir. 2006) .................................................................................................13

*Miller v. Facebook, Inc.*,
  No. 3:10-cv-00264-WHA (N.D. Cal. July 26, 2010) (ECF No. 69)........................................20

*Monahan v. N.Y. City Dep't of Corrections*,
  214 F.3d 275 (2d Cir. 2000)......................................................................................................15

*Pactiv Corp. v. Multisorb Tech. Inc.*,
  2011 WL 5244359 (N.D. Ill. Nov. 2, 2011) .......................................................................12, 14

*Pay(q)r, LLC v. Sibble*,
  2015 WL 9583034 (N.D. Ohio Dec. 31, 2015) .......................................................................19

*Price v. Fox Entm't Grp., Inc.*,
  2007 WL 241389 (S.D.N.Y. Jan. 26, 2007) .............................................................................18

*Repp v. Webber*,
  947 F. Supp. 105 (S.D.N.Y. 1996)............................................................................................18

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir.), cert. denied, 506 U.S. 934 (1992) .....................................................18

*Stonewell Corp. v. Conestoga Title Ins. Co.*,
  2010 WL 647531 (S.D.N.Y. Feb. 18, 2010)..............................................................14, 15, 17

*Tokio Marine & Fire Ins. Co. Ltd. v. Emp'rs Ins. of Wausau*,
  786 F.2d 101 (2d Cir. 1986)......................................................................................................15

*U.S. Airways, Inc.v. Sabre Holdings Corp.*,
  2015 WL 8335119 (S.D.N.Y. Dec. 8, 2015) ...........................................................................11

**Statutes**

17 U.S.C. § 106...............................................................................................................................18

18 U.S.C. § 1839.......................................................................................................................22, 23

**Rules**

Fed. R. Civ. P. 15(a)(2) ..................................................................................1, 11

Fed. R. Civ. P. 16(b) ...........................................................................................11

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and 16(b), Defendants-Counterclaimants The TriZetto Group, Inc., now known as TriZetto Corporation ("TriZetto"), and Cognizant Technology Solutions Corporation ("Cognizant") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for leave to amend their counterclaims (the "Motion") against Plaintiffs-Counterdefendants Syntel Sterling Best Shores Mauritius Ltd. ("Syntel Mauritius") and Syntel, Inc. (collectively, "Plaintiffs" or "Syntel").

## PRELIMINARY STATEMENT

After months of failed attempts to avoid proper discovery requests by pursuing meritless motions, and only after being ordered by the Court, Syntel recently made a voluminous document production that nearly doubled its production to date.  Syntel's document production nevertheless remains deficient, and Syntel continues to resist producing obviously relevant documents.  Even so, Syntel's recent productions and representations to the Court have revealed additional contractual breaches and misappropriations from which Defendants seek relief.  Moreover, Defendants have learned that Syntel engaged in acts of willful copyright infringement.  Further, the recent enactment of a federal cause of action for trade secret theft provides Defendants with a new claim under federal law.  Accordingly, Defendants respectfully request leave of the Court to file amended counterclaims adding these allegations.[1]

*First*, Defendants' request for leave to amend has been submitted in a diligent and timely fashion.  Defendants bring the Motion only in response to recent changes in the law, and newly adduced evidence that Syntel tried to avoid producing.  The parties are presently engaged in motion practice regarding additional document production owed by Syntel.  The parties and the Court have acknowledged that substantial completion would be a predicate for depositions and

---

[1]  The proposed amended counterclaims also contain non-substantive and minor revisions to update prior allegations for accuracy.

1

expert discovery, which have not taken place or even been scheduled.  Thus, ample time remains in discovery.  Further, in light of the discovery posture, the case is not close to dispositive briefing or trial.  Courts routinely grant motions to amend at the same stage as this litigation, and even much later stages.

*Second*, Syntel cannot meet its burden of showing that it will be unduly prejudiced by granting the Motion.  The new allegations are closely related to Defendants' original claims and arise from documents that Syntel wrongly withheld and only recently produced.  Indeed, discovery is likely subsumed in large part within the scope of already-served discovery.  Further, any additional effort that Syntel would need to expend as a result of granting the Motion is not prejudice; rather, it is a consequence of Syntel's own unwarranted delay in producing the highly relevant documents at issue here.  In any event, given the case posture, there is ample time for Syntel to defend against the proposed amendments.

*Finally*, Defendants' proposed amendments are meritorious.  A motion for leave to amend may be denied as futile only where the new claims are insufficient to survive a motion to dismiss.  Here, as shown in the proposed amended pleadings, the new allegations meet and far exceed that low threshold.

In sum, the Motion should be granted because it is a timely and diligent response to newly adduced evidence and new law, Syntel will not be prejudiced, and the amendments are meritorious.

## FACTS & PROCEDURAL HISTORY

### I.   FACTUAL OVERVIEW

TriZetto is a producer of software products, including Facets™, and provides custom services related to those products.  Dkt. No. 50 ¶ 41–42.  Syntel Mauritius entered into a Master Services Agreement ("MSA") with TriZetto to provide outsourced technical personnel to service

2

TriZetto's software products, including extensive customization needs for TriZetto's clients.  *Id.* ¶ 1.  On September 15, 2014, Cognizant, a competitor of Syntel, announced that it would acquire TriZetto.  *Id.* ¶ 52.  Upon learning of the announcement, Syntel engaged in a massive and concerted effort (1) to disrupt TriZetto's business by abruptly removing key personnel in violation of the MSA, and (2) to steal TriZetto's confidential and proprietary information.  *See, e.g.*, *id.* ¶¶ 2–3.  The Cognizant-TriZetto acquisition was announced on September 15, 2014, and Syntel Mauritius issued its Notice of Termination pursuant to the MSA on November 20, 2014, the same day that the Cognizant-Trizetto acquisition closed, and the termination became effective on February 18, 2015.  *Id.* ¶¶ 52–54.

## II.     THE PLEADINGS

Syntel initiated this action on January 12, 2015.  Dkt. No. 1.  On February 23, 2015, Defendants filed their Answer and Counterclaims, which alleged that Syntel violated state law by (1) breaching its contract with TriZetto, (2) breaching the implied covenant of good faith and fair dealing, (3) misappropriating TriZetto's confidential information, (4) engaging in unfair competition, and (5) tortiously interfering with prospective business relations.  Dkt. No. 21.

On March 4, 2015, Syntel filed an Amended Complaint, and then filed its Answer to Defendants' counterclaims on March 19, 2015.  Dkt. Nos. 39, 47.  On March 23, 2015, Defendants filed their Answer to the Amended Complaint and also filed substantially identical counterclaims, with only minor revisions to conform the counterclaims to Syntel's new allegations.  Dkt. No. 50.  Defendants brought the same counts and sought identical relief.  *Id.* Syntel filed its Answer to Defendants' Counterclaims on April 16, 2015.  Dkt. No. 56.

## III.    INITIAL DISCOVERY

On March 24, 2015, Judge Schofield issued a Scheduling Order, which set certain interim discovery deadlines.  Dkt. No. 51.  Syntel made its first production on June 30, 2015, which

consisted of 64 documents.   Decl. of G. Cutri in Support of Defs.' Mot. for Leave to Amend Countercls., filed concurrently herewith ("Cutri Decl.") ¶ 2.   This Court held a hearing on July 2, 2015 after disputes arose between the parties on their approaches to discovery, and revised the discovery schedule to set "general parameters of substantial completion of non-custodial ESI by the end of August [2015] and fact discovery by the end of October [2015]," granting the parties "certain flexibility as long as . . . the parties are making progress," and noting that "at some point while that's going on, we'll have to talk about expert discovery, but I find that in these cases the fact discovery poses most of the contention."   Dkt. No. 105 (7/2/15 Hr'g Tr.) at 5:8–6:18.

Syntel made its second production on August 4, 2015, consisting of 165 documents. Cutri Decl. ¶ 3.   On August 5, 2015, the Court again addressed discovery issues raised by the parties and required the parties to meet and confer.   Dkt. No. 117 at 1.   On September 1, 2015, the parties reported to the Court that they had met and conferred concerning ESI protocols, and agreed to run search terms against their respective custodial documents and substantially complete production of responsive documents by October 31, 2015.   *Id*.   Syntel made its third production on October 2, 2015, consisting of 4,447 documents, totaling 10,525 pages.   Cutri Decl. ¶ 4.

On November 5, 2015—after the substantial completion date for production had passed without Syntel producing any further documents—Syntel sought to modify the agreed-upon search terms.   *See* Dkt. No. 124.   On December 4, 2015, the Court denied Syntel's request and ordered Syntel to produce documents by December 31, 2015.   *Id.* at 2.   Instead of doing so, however, Syntel waited two weeks and then objected to the ruling and appealed to Judge

Schofield, who denied Syntel's motion.  *See* Dkt. No. 143.  Again, Syntel was ordered to produce documents, this time by "no later than February 11, 2016."  *See* Dkt. No. 142.[2]

## IV.    SYNTEL'S RECENT PRODUCTION

Syntel's continued unsuccessful motion practice delayed Defendants' access to crucial documents.  For example, in mid-February 2016, Syntel produced ***86,658*** additional pages of documents, which nearly doubled its prior production.[3]  Specifically, the day before the Court-ordered production date of February 11, 2016, Syntel produced 23,780 documents, which consisted of 75,512 pages.  Cutri Decl. ¶ 6.  Syntel followed with a production on February 18, 2016, which consisted of 1,772 documents, totaling 11,146 pages.  Cutri Decl. ¶ 8.  Defendants promptly reviewed those materials, which revealed highly relevant new evidence and serious deficiencies.

### A.    New Evidence Of Syntel's Infringement And Misappropriation

Syntel's recent production revealed evidence that Syntel downloaded, used, and copied key pieces of TriZetto software and documents that exceeded what was known at the time Defendants filed their counterclaims.  As one example, ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████   Ex. 1.[4]

Another email chain ███████████████████████████████████

---

[2] While this motion practice was happening, Syntel made additional productions on November 13, 2015, December 31, 2015 and January 22, 2016, which totaled 22,533 documents and 77,472 pages.  Cutri Decl. ¶ 5.

[3] From the start of this litigation until Syntel's mid-February productions, Syntel had produced 27,209 documents, consisting of 90,423 pages.  Cutri Decl. ¶ 7.

[4] "Ex. ##" refers to the exhibits to the Declaration of Gianni Cutri, filed concurrently herewith.

███████████████████████████████████████████████████

██████████████   Ex. 2.  Another example is ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████   Ex. 3.  Indeed, █████████████

███████████████████████████████████████████████████

██████████████████████   *See* Ex. 4.

As yet another example, documents marked CONFIDENTIAL - FOR OUTSIDE COUNSEL ONLY show that █████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████   *See, e.g.*, Exs. 5–8.  Indeed, Syntel has recently cited to a PDF document on its website (which it has never produced) bearing an October 2014 copyright notice, which lists and describes the Platform Management Tools as follows:



Ex. 9 at 2. On information and belief, these Platform Management Tools improperly compete directly with TriZetto's proprietary tools that Syntel had access to and used during the course of its relationship with TriZetto.  *See* Defs.' Proposed Am. Countercls., attached as Ex. A hereto (hereinafter, "Ex. A.")  ¶¶ 78, 137.  For instance, TriZetto offers a proprietary "Custom Code

Impact Tool," which is a crucial piece of software that TriZetto's developers use at the outset of every custom software upgrade job. *See* Ex. A ¶¶ 49, 122, 136. Syntel markets its "Step-up probe" as a "Multi-format FACETS custom code Impact Analyzer," which is a tacit admission that Syntel's "Step-up probe" was created to improperly compete with TriZetto's tool. Indeed, the day after the Cognizant-TriZetto transaction was announced, Syntel distributed a chart entitled "TriZetto Tools Information.xlsx," listing among various "Tools" the "Code Impact Analyzer" which Syntel described as "[c]reated [b]y" both Syntel and TriZetto:



Ex. 10 (annotations added).[5]

TriZetto also offers a proprietary Data Dictionary software program that developers use as a comprehensive reference guide to the myriad fields and tables in Facets™:



Ex. A ¶ 49. TriZetto's Data Dictionary is an essential tool because Facets™ has so many fields and tables that it is virtually impossible to know what each of them does without referencing the Data Dictionary. *See* Ex. A ¶¶ 49, 79. Syntel describes its "D2 Data generator" as a "Dictionary for FACETS database, batches and common interfaces," which suggests that it emulates

---

[5] Syntel recently made a confusing attempt to explain this admission by claiming that the reference is to "generic tools that [Syntel] developed for TriZetto" rather than Syntel's "proprietary tools that it markets[.]" *See* May 12, 2016 Joint Confidential Submission at 35 n.17.

TriZetto's proprietary Data Dictionary software.  *See id.* ¶ 78.  █████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████  Ex. 6 at SYNT00067353.

Further, Syntel touts a "[r]epository of 3,000+ FACETS test cases and 500+ automation scripts," and an inventory of custom code interfaces.  A "test case" is a document containing a step-by-step prose description of specific steps to take within the Facets™ software in order to test the functionality of the Facets™ software, and an automation script is a software program that, among other things, automates those test cases by executing the steps delineated in a test case.  Ex. A ¶ 49.  These are used primarily in the quality assurance phase of a custom code development or upgrades to ensure that the software is fully functional.  *See id*.

TriZetto manuals, software, test cases, and automation scripts are located on protected servers.  *See, e.g.*, *id.* ¶¶ 58–60, 90, 123, 134.  One such server is called "Customer Exchange," which is a password protected website available only to a limited set of users by permission only (TriZetto employees, clients, and contractors, including Syntel staffers, who are working on TriZetto and/or TriZetto customer's projects) and is subject to Terms & Conditions of Use, providing that users may only access documentation in relation to TriZetto's business, and may not collect any materials other than for internal use nor may they make materials available to any unauthorized third party.  Dkt. No. 50 ¶¶ 64–66.  Another server, called the Polytron Version Control System or "PVCS" is available only to TriZetto employees (including outsourced resources supplied by Syntel pursuant to the MSA), and users must submit specific requests to access documents or file locations, which are then reviewed by supervisors before being granted.  Ex. A ¶ 59.

Further, at all times, Syntel's access to materials on Customer Exchange, PVCS, and elsewhere was subject to the MSA. *Id.* ¶ 60. Pursuant to the MSA, Syntel was prohibited from using TriZetto's confidential information, data, and IP, and from decompiling or reverse engineering TriZetto's software. *Id.* ¶¶ 56, 79. Further, Syntel agreed that all work product generated in connection with TriZetto IP belonged to TriZetto. *Id.* ¶¶ 52, 56. On information and belief, it would have been impossible for Syntel to develop this sophisticated software and vast libraries of code and documents by October 2014 without using or copying TriZetto's confidential information, data, and intellectual property. *Id.* ¶ 79.

### B.  Evidence That Syntel Willfully Destroyed Relevant Evidence

Syntel's recent production also revealed evidence that Syntel wrongfully withheld, or willfully destroyed relevant documents. For example, an email from March 27, 2015 shows



Ex. 11.

### C.  Pending Motion Practice Concerning Syntel's Recent Production

Syntel's recent production raised numerous questions and was deficient in many respects. On March 4, 2016, the parties represented to the Court that they were still reviewing document productions and, in light of their ongoing review, "preliminarily agreed" to raise outstanding issues regarding written discovery and document production by April 15, 2016, complete

depositions and fact discovery by September 15, 2016, and complete expert discovery by November 17, 2016.  Dkt. No. 145 at 2.

On April 6, 2016, Defendants contacted Syntel hoping to resolve issues arising from Syntel's recent production.  Cutri Decl. ¶ 9.  Despite multiple meet-and-confers and a conference before the Court on April 18, 2016, Syntel still did not agree to remedy its deficiencies.  Cutri Decl. ¶ 10.  Pursuant to the Court's instruction, the parties worked together to file a joint letter with cross-motions to compel and submitted it on May 12, 2016.  Cutri Decl. ¶ 11.  Specifically, Defendants sought to compel, among other things, further documents, communications, and information regarding:

- Syntel's spoliation and preservation efforts;
- The NAS drive;
- The 15 downloaded manuals;
- All of Syntel's "Platform Management Tools," including any code, automation scripts, and test cases;
- Any code, automation scripts, or test cases acquired from TriZetto; and
- Any document that contains information derived directly or indirectly from TriZetto

*Id*.  The Court set a hearing on the motion for June 13, 2016, which has been rescheduled at Syntel's request for June 21.  Dkt. No. 153; 6/8/2016 Minute Entries.

On May 11, 2016—while the parties were preparing their joint motion to compel—President Obama signed into law the Defend Trade Secrets Act ("DTSA").[6]

## V.  THE INSTANT MOTION

On June 8 and 9, 2016, Defendants' attorney conferred with Syntel's attorney to see if Syntel would consent to the instant motion.  Cutri ¶ 12.  Syntel's counsel responded on June 13, 2016 that Syntel would oppose the motion.  *Id*.[7]

---

[6]  *See* S. 1890, 114th Cong. (2016) (as signed into law May 11, 2016) *available at* https://www.congress.gov/bill/114th-congress/senate-bill/1890/actions.

**ARGUMENT**

I. **THE MOTION SHOULD BE GRANTED BECAUSE DEFENDANTS DILIGENTLY SOUGHT LEAVE TO ADD MERITORIOUS CLAIMS BASED ON INTERVENING FACTS AND LAW, AND SYNTEL WILL NOT SUFFER PREJUDICE**

"Rule 15 requires courts to 'freely give leave [to amend] when justice so requires.'" *U.S. Airways, Inc.v. Sabre Holdings Corp.*, 2015 WL 8335119, at *3 (S.D.N.Y. Dec. 8, 2015) (Schofield, J.) (quoting Fed. R. Civ. P. 15(a)(2)). This Court has described the Rule 15 standard as "permissive" and "consistent with the 'strong preference for resolving disputes on the merits.'" *Id.* (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). "If the underlying facts or circumstances relied upon by a [movant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, a "motion to amend is generally denied only for 'futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *U.S. Airways*, 2015 WL 8335119, at *3 (quoting *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010)); *accord Foman*, 371 U.S. at 182. Where granting leave would require amending a scheduling order, the Court has discretion to grant leave for good cause. *U.S. Airways*, 2015 WL 8335119, at *2 (citing Fed. R. Civ. P. 16(b)). "Whether good cause exists turns on the 'diligence of the moving party.'" *Id.* (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).

---

[7] Defendants intend to file but not serve a separate action in Southern District of New York, containing the claims that Defendants seek to add to the current action by way of this Motion. For the reasons described herein, Defendants believe that their proposed new allegations should be resolved in this action rather than in a separate action. If the Court grants the Motion in this case, then Defendants will dismiss their separate action without prejudice. If the Motion is denied, Defendants plan to serve the separate complaint and move to consolidate the actions in the interest of judicial economy.

### A.    Defendants Were Diligent In Bringing Their First Motion To Amend In Light Of New Evidence And Law

Defendants have diligently made their first motion for leave to amend during discovery, which is a timely response to newly adduced evidence and changes in controlling law.[8]

### 1.    The Motion Is Timely

Courts generally grant leave to amend when there is still time left in discovery, and the case overall.  *See, e.g.*, *Fla. Day Cruises, Inc. v. Ins. Co. of N. Am.*, 2003 WL 22100691, at *2 (S.D.N.Y. Sept. 11, 2003) (granting motion where discovery would not close for **two more days**); *Abbatiello v. Monsanto Co.*, 571 F. Supp. 2d 548, 552–55 (S.D.N.Y. 2008) (granting leave where discovery was not yet complete); *Pactiv Corp. v. Multisorb Tech. Inc.*, 2011 WL 5244359, at *2 (N.D. Ill. Nov. 2, 2011) (granting leave to amend counterclaims where discovery could be extended).[9]  Here, discovery is at least six months from completion.  *See supra* at 10.

Specifically, after Syntel's belated production of over 85,000 pages of documents in February, the parties "preliminarily agreed" to raise issue on the productions in April 2016, and then to complete depositions and fact discovery by September 15, 2016, and expert discovery by November 2016.  *See supra* at 10.  Indeed, the parties and this Court regarded substantial completion of document production as a threshold step to further discovery, *see supra* at 3–4, and the parties' joint motion to compel concerning the substantial completion of document

---

[8] This is Defendants' first request for leave to amend.  Defendants have no history of deficient pleadings, which supports the Motion.  *See Foman*, 371 U.S. at 182; *Chavis*, 618 F.3d at 171.

[9] *See, e.g.*, *McGuire v. Warren*, 207 F. App'x 34, 37 (2d Cir. 2006) (on appeal, vacating in part judgment on the pleadings and remanding to permit amendment of pleadings); *In re Pfizer, Inc. Secs. Litig.*, 2012 WL 983548, at *1 (S.D.N.Y. Mar. 22, 2012) (granting motion one month after close of discovery); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4, 9 (S.D.N.Y. Mar. 26, 2010) (granting motion to amend **three months after** close of discovery).

production is still pending.  *See supra* at 10.  The parties have not taken a single deposition or made expert disclosures, nor are they close to dispositive briefing or trial.  *See id*.

### 2.   New Evidence Adduced In Discovery Warrants Leave To Amend

The Motion also is timely because newly adduced evidence both refines the existing claims, and gives rise to new claims.  Courts "routinely grant leave to amend when a [party] seeks to refine the [pleading] to reflect evidence obtained in discovery" and expand on the existing claims.  *See, e.g.*, *In re Pfizer*, 2012 WL 983548, at *2 (collecting cases); *E.E.O.C. v. Michael Cetta, Inc.*, 2011 WL 5117020, at *1–2 (S.D.N.Y. Oct. 27, 2011) (Ellis, M.J.) (granting leave to expand the class definition to cover an additional six years based on new information in discovery and depositions).  Courts also routinely grant motions to add new claims brought within months of discovering new, relevant evidence.  *See, e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *11 (S.D.N.Y. Mar. 26, 2010) (granting motion to amend to add inequitable conduct claim filed **three months** after newly discovered evidence); *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to add breach of contract claim filed **six months** after newly discovered evidence).

Here, Syntel only recently produced the evidence giving rise to these claims, and the parties are still engaged in motion practice concerning additional related evidence.  *See supra* at 5–10.  Thus, the Motion is well within the timeframe established in similar cases.[10]

### 3.   Recently Passed New Federal Law Warrants Leave To Amend

Courts also grant leave to amend where there has been a change in the law during the pendency of the case.  *McGuire*, 207 F. App'x at 37 (on appeal, vacating judgment on the

---

[10] Even if that were not the case, "[m]ere delay is not a sufficient basis on which to deny the claim, unless there is undue prejudice . . . or bad faith[.]" *Infosint S.A. v. H. Lundbeck A/S*, 2007 WL 2489650, at *2 (S.D.N.Y. Sept. 4, 2007) (Ellis, M.J.) (granting motion after close of discovery to add defendants).  Neither is present here.  *See infra* Section I.B.

pleadings in part and remanding for amendment in light of intervening Supreme Court decision); *see also Pactiv*, 2011 WL 5244359, at *2 (granting leave to amend counterclaims where motion was filed within a month of new law being passed); *id.* ("Courts have routinely held that litigants are entitled to replead claims to conform to a change in the applicable law, provided that the underlying allegations of fact do not change."). Here, with discovery still open, and while the parties were briefing their joint cross-motions to compel, trade secret law underwent an unprecedented federal expansion, which covers the conduct at issue here.

Just last month, President Obama signed into law a new, federal civil cause of action for trade secret theft, which exists in parallel with state trade secret claims. 18 U.S.C. § 1836(f). The DTSA presents an intervening addition to the governing law for Defendants' trade secret counterclaim, which Defendants could not have brought before May 11, 2016. *See Pactiv*, 2011 WL 5244359, at * 2 ("[I]t would ask too much of litigants to predict whether pending legislation will pass or what form it might take."). Thus, the proposed DTSA claim is timely.

### B.   Syntel Cannot Satisfy Its Burden of Showing Undue Prejudice

As the party opposing the Motion, Syntel has the burden of establishing undue prejudice. *See, e.g.*, *Cat3, LLC v. Black Lineage, Inc.*, 2015 WL 5559569, at *4 (S.D.N.Y. Sept. 21, 2015); *Stonewell Corp. v. Conestoga Title Ins. Co.*, 2010 WL 647531, at *2 (S.D.N.Y. Feb. 18, 2010). Syntel cannot satisfy its burden. As an initial matter, requiring Syntel to defend the proposed allegations on the merits is not prejudicial. The need arises solely because Syntel wrongly withheld, and is still fighting to withhold, documents revealing the scope of its illicit conduct. There is no prejudice in forcing Syntel to face the consequences of its own actions.

Further, as discussed below, no prejudice exists because the proposed amendments closely relate to the current claims, and Syntel has ample time to meet the new claims. *See, e.g.*, *Abbatiello*, 571 F. Supp. 2d at 552–55 (granting leave where adding allegations would not

14

unduly prejudice defendant because much of the information was likely compiled for, or contained in, documents that defendant had in its possession and possibly already discoverable due to codefendants' potential defenses, and amendment would not significantly delay the litigation because, *inter alia*, discovery was not complete, and the parties were not ready to prepare summary judgment motions); *Heinold Commodities, Inc. v. N.Y. Mercantile Exch.*, 78 F.R.D. 190, 191–92 (S.D.N.Y. 1978) (granting leave where defendant failed to show prejudice notwithstanding potential further discovery).

### 1. The Proposed Amendments Are Closely Related To The Original Claims And Foreshadowed In Earlier Pleadings And Argument

"Courts in this district have consistently granted motions for leave to amend a complaint where facts and allegations developed during discovery are closely related to the original claim and are foreshadowed in earlier pleadings." *Stonewell*, 2010 WL 647531, at *2 (collecting cases); *see also Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (affirming no prejudice in granting motion to amend filed at summary judgment because counsel was aware of underlying facts before summary judgment motion was filed); *Tokio Marine & Fire Ins. Co. Ltd. v. Emp'rs Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986) (finding abuse of discretion in denying leave to amend where proposed amendments arose from contract terms, which were the object of discovery, and new allegations "had been explicitly foreshadowed" at oral argument). Defendants' proposed amendments are extensions of the pending allegations and claims, overlap significantly with them, and are supported by new evidence.

From the start, Defendants have consistently claimed that Syntel abused its relationship with TriZetto to obtain or retain TriZetto's proprietary and confidential information, and to use it for its own purposes in direct competition with TriZetto. That information included copyrightable and trade secret materials, which were covered by the MSA, including various

15

data, codes, and user guides.  Dkt. No. 50 ¶¶ 67–72.  Indeed, the basis for the proposed amendments comes directly from evidence that Syntel has produced as responsive to Defendants' already-served discovery requests, and Defendants' now-pending motion to compel seeks further documents relevant to the proposed new claims.  *See Abbatiello*, 571 F. Supp. 2d at 552–55.  Therefore, Syntel cannot claim that it would be prejudiced simply because discovery has revealed additional evidence of wrongdoing that was unknown to TriZetto at the time of pleading and only recently uncovered.

Syntel cannot claim ignorance of Defendants' attempts to obtain relevant discovery.  Syntel has recently sought to avoid disclosing relevant documents by, among other things, wrongly attempting to limit the scope of its discovery to 1,500 documents specifically identified in portions of the initial counterclaims.  Ex. 12.[11]  Syntel belatedly produced damning evidence that Syntel stole documents and code far in excess of the 1,500 documents initially alleged and showed instances of how the documents and code were misused in direct competition with TriZetto.  Syntel cannot resist Defendants' attempt to oblige Syntel's protestations by amending the counterclaims to place such conduct expressly in issue, to the extent it was not already.

## 2.    Syntel Has Ample Time To Meet The New Allegations And Claims

When assessing prejudice, a key consideration is whether the non-moving party has time to meet the proposed amendments.  *See, e.g.*, *Abbatiello*, 571 F. Supp. 2d at 552–55; *Fla. Day Cruises*, 2003 WL 22100691, at *2.  It is expected that amendments will "often require some

---

[11]  Syntel's counsel has misrepresented to Defendants and the Court that there was an agreement to limit Syntel's discovery to the "1,600" documents.  When asked to provide proof of this alleged agreement, Syntel's counsel made vague references to undocumented "meet and confer discussions" and pointed to Defendants' earlier Motion to Compel (Dkt. No. 108).  Ex. 12.  But that motion states unambiguously that "TriZetto and Cognizant do not concede that this list [of documents] represents the only confidential information that Syntel misappropriated."  Dkt. No. 108 at 3, n.2. Thus, there was no agreement to limit the scope of discovery as Syntel has claimed.

amount of additional discovery and investigation by the parties," and therefore, "[t]his fact does not automatically constitute undue prejudice," especially where "the parties have sufficient time to conduct appropriate discovery and investigation related to the new allegations." *Stonewell*, 2010 WL 647531, at \*2–3 (granting motion to amend, finding the ***month before trial*** sufficient time for additional discovery and investigation).

Here, discovery is still ongoing, and many months from finishing. As discussed above, Syntel only recently produced the evidence giving rise to the claims and Defendants' fully briefed motion to compel additional documents is currently pending, not a single deposition has taken place, nor have the parties made expert disclosures, which are only tentatively scheduled to be completed in November 2016, and the parties are not close to dispositive motions or trial. *See supra* at 10. Thus, Syntel would have ample opportunity to formulate an appropriate defense.

### C.    Defendants' Proposed Amendments Are Meritorious

Amendment is futile only if it cannot withstand a motion to dismiss. *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (reversing denial of motion to amend because plaintiff "adequately set[] forth specific facts, which if proven, can support a [claim]"). Defendants' proposed amendments amply state a *prima facie* case of copyright infringement, state and federal trade secret theft, and breach of contract. Further, because the proposed amendments are "proper subject[s] of relief," Defendants should be "afforded an opportunity to test their claim on the merits." *Foman*, 659 F.3d at 182.

### 1.    Defendants' Proposed Amendments State A *Prima Facie* Case Of Copyright Infringement

"To make out a prima facie case of copyright infringement, a party must show (1) ownership of a valid copyright in the item and (2) unauthorized copying." *Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, LLC*, 712 F. Supp. 2d 96, 102 (S.D.N.Y. 2010) (denying

motion to dismiss).  As to ownership, the proposed amendments allege that Defendants own valid and subsisting copyrights in various materials, including software and presentations, which are the embodiment of original, creative choices, and the product of discretion, skill, resources, and creative energies.  *See, e.g.*, Ex. A ¶¶ 50–51, 160–61.  These copyrights give Defendants the exclusive right to do and to authorize the reproduction, distribution, and preparation of derivative works based on Defendants' works.  *Id.*  ¶ 162; *see also* 17 U.S.C. § 106.  Syntel's unauthorized use of the works infringes those rights.

Pleading unauthorized copying requires allegations of (1) actual copying and (2) substantial similarity between the copy and the original work.  *Int'l Swaps & Derivatives Ass'n*, 712 F. Supp. 2d at 102.  First, the proposed amendments adequately allege actual copying by asserting that there is direct evidence of Syntel copying them.  *See, e.g.*, Ex. A. ¶¶ 3, 53, 79–80, 96, 163–65.  *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.), cert. denied, 506 U.S. 934 (1992) ("[T]his case presents the rare scenario where there is direct evidence of copying).  Even if Defendants had not alleged direct evidence of copying, they also allege that Syntel had access to TriZetto's copyrightable works—including its Code Impact Tool and Data Dictionary programs—and that Syntel's software is probatively similar to Defendants' works.  *See, e.g.*, Ex. A ¶¶ 3, 53, 58, 60, 96, 123–24.  *See also Repp v. Webber*, 947 F. Supp. 105, 114 (S.D.N.Y. 1996) (noting that an inference of actual copying is supported from access and probative similarity).  Further, Defendants allege that Syntel could not have created its "Platform Management Tools" legitimately in such a short amount of time without copying Defendants' works.  Ex. A ¶ 79.  Such allegations are sufficient to properly plead a claim.  *See, e.g.*, *Price v. Fox Entm't Grp., Inc.*, 2007 WL 241389, at *8 (S.D.N.Y. Jan. 26, 2007) (denying defendant's

motion for summary judgment where "unusual speed" supported allegations of access and use of plaintiff's copyrighted work).

As for similarity, the proposed amendments adequately allege that Syntel infringed copyrighted works by making and distributing literal copies, and by making and distributing unauthorized derivative works that are verbatim or near verbatim copies of the TriZetto's copyrighted works at least as early as October 2014, which perform identical or substantially identical functions as TriZetto's copyrighted works. *See, e.g.*, Ex. A ¶¶ 74, 78–80, 163. *See, e.g.*, *Pay(q)r, LLC v. Sibble*, 2015 WL 9583034, at *11 (N.D. Ohio Dec. 31, 2015) (denying motion to dismiss, finding sufficient plaintiff's allegations that defendant had access to source code, and that allegedly infringing code is substantially similar to the original code written pursuant to prior software development services agreement); *Asset Vision, LLC v. Fielding*, 2013 WL 6633743, at *4 (D. Idaho Dec. 17, 2013) (finding allegations that "the programs used by the defendants perform substantially the same functions as, and were based on or incorporated into" plaintiffs' source code "sufficient to allege that the works are substantially similar or virtually identical to survive a motion to dismiss"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *8 (N.D. Cal. Mar. 23, 2011) (denying motion to dismiss, finding sufficient plaintiff's allegations that defendant used plaintiff's source code in making and developing infringing products, and that the infringing products "utilize software copied from, or substantially similar to, Plaintiffs' copyrighted software code," and defendant "retains an unauthorized copy of the . . . source code.").

Moreover, Syntel has wrongfully refused to produce copies of its infringing products, and that refusal is part of Defendants' currently pending motion to compel. *See supra* at 10. Allegations similar to those proposed here have been held sufficient to withstand a motion to

dismiss where the infringing products are not publicly available, or are uniquely in the possession of the accused. *See Brocade*, 2011 WL 1044899, at *8 (noting that "[s]ource code is often not publicly available.  As a result, it can be difficult or impossible for a plaintiff to examine accused source code before some discovery has occurred."); *Miller v. Facebook, Inc.*, No. 3:10-cv-00264-WHA, at 2–3 (N.D. Cal. July 26, 2010) (ECF No. 69) (attached in App'x of Unreported Cases hereto) (denying motion to dismiss, finding allegations sufficient based on defendant's access to the code, and allegation that the accused game mimicked the "look and feel" of the original game, noting that "a plaintiff can rarely examine the underlying source code of an accused infringing software program without resorting to discovery" and thus "it would be unreasonable, if not impossible, for plaintiff to know with exacting detail" how the code was copied at the pleading stage).

### 2. Defendants' Proposed Amendments State Additional Claims Of Misappropriation Under New York Law

To state a claim for trade secret misappropriation under New York law, a plaintiff must allege (1) its possession of a trade secret, and (2) defendant's use in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.  *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 172 (2d Cir. 1990).  "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *Id.* at 173 (quoting Rest. of Torts § 757 cmt. b).  Here, the proposed amendments allege ownership of information that is properly the subject of trade secret protection, specifically, manuals, documents, and software, and which are used continuously in the operation of Defendants' business.  *See, e.g.*, Ex. A ¶¶ 49, 56, 74–77, 89–90, 120–23.  *See also Integrated Cash*, 920 F.2d at 174 (holding that software, and the manner in which software

20

functions, and the "way in which [the] various components fit together as building blocks in order to form the unique whole" are trade secrets); *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 743–44 (2d Cir. 1965) (holding that information contained in manuals and drawings are trade secrets).

After establishing that the material is capable of trade secret protection, New York courts weigh six factors to determine whether the material is in fact a trade secret:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Integrated Cash*, 920 F.2d at 174 (citing *Eagle Comtronics, Inc. v. Pico, Inc.*, 89 A.D.2d 803, 803–04 (4th Dep't 1982). Here, the proposed amendments provide sufficient allegations under the factors. For example, Defendants allege that the trade secrets are subject to agreements with confidentiality provisions and limitations on use, and are accessible only through strictly controlled servers such as Customer Exchange and PVCS, and which are subject to additional restrictions. *See, e.g.*, Ex. A ¶¶ 58–60, 77, 90, 123, 134. Further, Defendants allege that the information is extremely valuable and indeed crucial to the business functions and competitive position of TriZetto. *See, e.g.*, *id.* ¶¶ 49, 122, 136. Defendants also allege great expense in developing the trade secrets in terms of manpower, time, and expenditures. *See id.* ¶¶ 50, 121. Additionally, Defendants allege that the information cannot be properly acquired or duplicated because of the limited number of people who can access the information, and the contractual limitations imposed on those who can access it. *See* Ex. A ¶¶ 123, 134.

Finally, the proposed amendments adequately allege that Syntel has used, and is using such trade secrets. Syntel has used the trade secrets to convert them into assets for its own

business, to create Platform Management Tools used in the operation of its business, and otherwise to compete directly with Defendants.  *See, e.g.*, Ex. A ¶¶ 2, 74, 122, 136–37.

### 3.     Defendants' Proposed Amendments State A *Prima Facie* Case Of Trade Secret Theft Under The DTSA

Although the DTSA is too new to have developed case law on the topic, the statute sets out clear requirements to state a *prima facie* case.  Specifically, a plaintiff must allege ownership of a trade secret, and the defendant's misappropriation.  18 U.S.C. § 1839 (as amended 5/11/16).  The DTSA sweeps in the types of protectable information and uses at issue here, and thus the DTSA claim is adequately supported by the same allegations discussed in the previous section.  Further, the DTSA expands the scope of protectable information and actionable conduct, and the proposed amendments support additional claims under the DTSA.

*First*, the DTSA defines a "trade secret" as (1) all forms and types of financial, business, scientific, technical, economic, or engineering information, including, *inter alia*, plans, compilations, program devices, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing, for which (2) the owner taken reasonable measures to keep such information secret, and (3) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  18 U.S.C. § 1839(3).  Here, the statute expressly covers the types of trade secret information at issue.

*Second*, the DTSA defines "misappropriation" as including, *inter alia*, unconsented disclosure or use by one who (1) used improper means to acquire the trade secret, or (2) at the time of use or disclosure knew or had reason to know that the trade secret was (a) derived from

or through someone who acquired it by improper means, (b) acquired subject to a duty to maintain secrecy or limit its use, or (c) derived from or through a person who owed such a duty. 18 U.S.C. § 1839(5).  "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  *Id.* § 1839(6).  Here, the proposed amendments allege that Syntel used improper means by stealing trade secrets, misrepresenting the purpose of its acquisition, breaching its own duty to maintain secrecy or limit use pursuant to the MSA and other agreements, and by inducing third parties to do the same.  *See, e.g.*, Ex. A ¶¶ 96, 125–26, 137–38.  Defendants also allege that Syntel engaged in distinct acts of illicit acquisition, disclosure, and use of trade secrets.  *See, e.g.*, *id.* ¶¶ 2–3, 53, 74, 79–90, 92–95, 125, 139.

### 4. Defendants' Proposed Amendments State Additional Claims For Breach Of Contract

The proposed allegations also support additional claims that Syntel breached the MSA and Terms & Conditions of Customer Exchange.  The proposed amendments allege additional violations of the MSA's IP provisions prohibiting Syntel from "decompil[ing], disassembl[ing] or reverse engineer[ing]" TriZetto's intellectual property, and prohibiting the use of TriZetto's "data and information" to which Syntel had "access in connection with the provision of the services" pursuant to the MSA.  Ex. A. ¶¶ 56, 79.  The conduct described in the foregoing sections, which give rise to independent claims of copyright infringement and state and federal misappropriation, also give rise to independent claims for breach of the MSA and Terms & Conditions of Customer Exchange.

*         *         *

23

In light of the foregoing, Defendants' proposed amendments easily satisfy the minimal requirement of being capable of surviving a motion to dismiss.  Thus, granting leave to amend would not be futile, and leave to amend should be granted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion in its entirety.

Dated:  June 13, 2016                         KIRKLAND & ELLIS LLP,

*/s/ Gianni Cutri*

Michael De Vries (admitted *pro hac vice*)
333 South Hope Street
Los Angeles, California 90071
Tel: (213) 680-8400
Fax: (213) 680-8500
michael.devries@kirkland.com

Gianni Cutri (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
gianni.cutri@kirkland.com

Jared Barcenas (SDNY Bar No. JB0784)
Joshua Simmons (SDNY Bar No. JS2341)
Phillip Hill (SDNY Bar. No. PH0202)
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
jared.barcenas@kirkland.com
joshua.simmons@kirkland.com
phil.hill@kirkland.com
*Attorneys for Defendants-Counterclaimants TriZetto Corporation and Cognizant Technology Solutions Corporation*