UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SYNTEL STERLING BEST SHORES MAURITIUS LIMITED, and SYNTEL, INC., <br><br>        Plaintiffs, <br><br>      -against- <br><br> THE TRIZETTO GROUP, INC. and COGNIZANT TECHNOLOGY SOLUTIONS CORP., <br><br>        Defendants. | Hon. Ronald L. Ellis <br><br> 15 CV 00211 (LGS) (RLE) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND COUNTERCLAIMS**

21949790.7

## TABLE OF CONTENTS

I.      **INTRODUCTION**..................................................................................**4**

II.    **FACTUAL BACKGROUND** ...........................................................**6**

III.   **THIS COURT SHOULD DENY DEFENDANTS' MOTION TO AMEND**..............**12**

       A.     Defendants Cannot Show "Good Cause" Or Justify Its Delay In Seeking Amendment..................................................................13

       B.     Defendants' Proposed Amendment Would Severely Prejudice Syntel .................15

       C.     Defendants' Motion Should Be Denied Because Amendment Is Futile................17

             1.     Defendants Cannot State A DTSA Claim For Pre-Enactment Conduct..........................................................................17

             2.     Defendants Do Not Allege A Valid Copyright Claim ..............................18

IV.   **CONCLUSION** ...............................................................................**18**

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*,
 760 F.2d 442 (2d Cir. 1985)....................................................................................... 17

*Clarex Ltd. v. Natixis Securities Americas LLC*,
 No. 12 Civ 7908, 2013 WL 3892898 (S.D.N.Y. July 29, 2013) ............................... 16

*Cresswell v. Sullivan & Cromwell*,
 922 F.2d 60 (2d Cir. 1990)......................................................................................... 13

*G.C.W. v. United States*,
 15-CV-0294, 2015 WL 8481677 (S.D.N.Y. Dec. 4, 2015) ....................................... 15

*Int'l Media Films, Inc. v. Lucas Entertainment, Inc.*,
 No. 07 Civ. 1178, 2008 WL 781823 (S.D.N.Y. Mar. 20, 2008) ............................... 17

*Parker v. Columbia Pictures Indus.*,
 204 F.3d 326 (2d Cir. 2000)....................................................................................... 15

*Pfkinans Int'l Corp. v. IBJ Schroder Leasing Corp.*,
 No. 93 Civ. 5375, 1996 WL 84481 (S.D.N.Y. Feb. 27, 1996) .................................. 13

*Pope v. Cnty. of Albany*,
 2014 WL 316703 (N.D.N.Y. Jan. 28, 2014)............................................................... 16

*Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*,
 No 09 Civ. 5580, 2010 WL 3023981 (S.D.N.Y. Aug. 3, 2010) ......................... 12, 15

*Ruotolo v. City of New York*,
 514 F.3d 184 (2d Cir. 2008)....................................................................................... 15

### <u>Statutes</u>

Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2, "§ 1836 Civil proceedings" (2016)
 ...................................................................................................................................... 17

21949790.7

## I.  <u>INTRODUCTION</u>

A year and a half ago, Syntel, Inc ("**Syntel**") and Syntel Sterling Best Shores Mauritius Limited ("**Syntel Mauritius**") (collectively, "**Syntel**") filed this lawsuit, alleging that The TriZetto Group, Inc. ("**TriZetto**") and Cognizant Technology Solutions Corp. ("**Cognizant**") (collectively, "**defendants**") engaged in a widespread scheme to poach Syntel's most valuable service providers after TriZetto merged with Syntel's biggest competitor, Cognizant. In response to Syntel's complaint, defendants filed counterclaims (which defendants have already amended once) putting forth a narrow theory of misappropriation—*i.e.*, that in fall 2014, in the wake of the TriZetto/Cognizant merger announcement, Syntel's service providers downloaded manuals and other documents from TriZetto's server and misused them.

It is that narrow theory of misappropriation—***and only that theory***—that defendants have consistently alleged in their pleadings, sworn discovery responses, and agreements regarding the scope of discovery.  For example:

- Defendants' counterclaims and amended counterclaims identify the alleged downloading of documents in fall 2014 in response to the TriZetto/Cognizant as the only theory of misappropriation;

- In response to Syntel's interrogatories requiring defendants to identify all allegedly misappropriated information, defendants served verified responses that identified only the alleged downloads from fall 2014 that they focused on in their complaint.  Defendants have not supplemented those responses;

- Defendants opposed applying a date range to the production of documents that was more than 30 days' prior to the TriZetto/Cognizant merger given the narrow date range relevant to defendants' misappropriation claims; and

- Defendants agreed to limit the scope of their interrogatories regarding allegedly misappropriated information in Syntel's position to the approximately 1,600 downloaded documents identified by defendants.

Now, a year and a half after this action was filed—and more than a year after the Court's deadline to amend pleadings in the scheduling order—defendants seek leave to amend their

counterclaims for a second time to radically expand the scope of this litigation and advance theories of misappropriation and copyright infringement never previously alleged.

Defendants' requested amendment is untimely and would severely prejudice Syntel. Discovery in this matter has been defined by the allegations pled by defendants. Syntel has thus been denied the right to necessary discovery regarding defendants' new claims and Syntel's defenses to those claims, including:

- How, and if, defendants maintained the confidentiality of the new documents and information they now contend for the first time were misappropriated;

- Cognizant's (and other service providers') own uses of, and access to, the very information TriZetto claims is confidential—a critical issue because there is every reason to believe that Cognizant is now claiming that Syntel wrongfully took from it what Cognizant once took from TriZetto;

- Whether the newly claimed confidential information is and was already in the public domain through use by Cognizant prior to its purchase of TriZetto and by other information technology companies and, therefore, is not confidential at all;

- Defendants' development and ownership of the various copyrights they assert; and

- Syntel's defenses to those copyrights.

Permitting defendants to again amend their counterclaims, this time adding entirely new theories of potential liability, would essentially press the reset button on discovery and require Syntel to take enormously expensive, time-consuming and critically needed discovery regarding these, and other, topics—a process that would delay discovery for a prolonged period and require Syntel to expend considerable additional costs and resources.

There is no excuse for defendants' decision to wait to raise these new claims until the end of fact discovery. Defendants' claimed impetus for amendment is the "discovery" of various health care software "tools" Syntel included in a ███████████████████████████ (Mot. to Amend at 6-8.)  Defendants' purported "discovery" does not remotely justify their

dilatory conduct.  Syntel produced ███████████ *six months ago* in December 2015. It is undisputed that Syntel has publicly marketed those tools on its public website for years. Defendants undoubtedly knew about Syntel's tools, assuming they did the most rudimentary investigation into their claims.  Defendants cannot justify amendment based on information that was publicly available and that they had when the lawsuit was filed.

Put simply, defendants' motion to amend is not a response to "new" information located in discovery.  Rather, it is an attempt to gloss over the consideration that there is no factual support for defendants' current claims.  Defendants hope that by seeking leave to amend after the end of document discovery they can radically expand the scope of this long-pending litigation. Defendants' motion is improper regardless of whether they will agree to additional discovery by Syntel, and this Court should reject defendants' gamesmanship and deny their motion in its entirety.

## II.   FACTUAL BACKGROUND

Plaintiffs are technology and business services companies that provide software development services to clients. Companies hire Syntel to, among other things, customize software purchased from third parties to fit the company's specific business and requirements.

***Syntel's and TriZetto's Business Relationship.***   In 2010, Syntel Mauritius agreed to provide software development services to TriZetto, a health care IT company that sells health care billing software called FACETS.  Syntel Mauritius and TriZetto entered into a Master Services Agreement ("**MSA**"), which governed the terms of their relationship.  (*See* Dkt #59 (redacted MSA).)  The MSA's terms included:

- ***Non-Competition Provision.***   The MSA also limited Syntel Mauritius's ability to compete with TriZetto for work that involved the "technical, design, process or architectural knowledge of TriZetto's products or services." (*Id.* ¶ 29.17.)  ***As discussed below, however, TriZetto agreed to amend the MSA in 2012 to remove this section in its***

6

*entirety*, thereby authorizing Syntel Mauritius to compete with TriZetto for services related to TriZetto software like "Facets," TriZetto's health care claims processing software.

- **Change of Control and Termination Provisions**.  The MSA also recognized the significant strategic harm that could befall Syntel Mauritius if TriZetto were acquired by one of Syntel Mauritius's competitors.  As such, the MSA gave Syntel Mauritius the right to terminate the MSA if TriZetto were acquired by one of its competitors, like Cognizant.  (*Id.* ¶ 23.02(3).)

- **Reimbursement of Transition Rebates Post-Termination.**  TriZetto was required to reimburse Syntel Mauritius, on the effective termination date, for:  "any transition rebates received" and "unrecovered costs for Transition Services."  (*Id.*)

- **Non-Solicitation Provision**.  The MSA also contained a provision forbidding TriZetto from "directly or indirectly" hiring Syntel Mauritius service providers for a set term.

**_Syntel and TriZetto Amend the MSA To Allow Syntel To Compete With TriZetto._**  On August 17, 2012, Syntel Mauritius and TriZetto entered into a formal amendment to the MSA. (Dkt. #59-1.)  The Amendment made several changes to the MSA, including removing all prohibitions on Syntel Mauritius's ability to compete with TriZetto.

Specifically, the Amendment provided that "Section 29.17 **_and any other provision in the Agreement related to [Syntel Mauritius] being restricted from competing with TriZetto are deleted in their entirety_**."  (*Id.*, Art. 2(2).[1])  The deleted MSA Section 29.17 stated:

> In order to prevent any misuse or disclosure of Confidential Information, Service Provider agrees that during the Term and for the Restricted Period thereafter, Service Provider will not provide any products or services that (i) require technical, design, process or architectural knowledge of TriZetto's products or services relating to TriZetto's products . . . .  (*Id.* ¶ 29.17.)

**_Effect of the Amendment & Market for Servicing TriZetto Products._**  The Amendment thus expressly permitted Syntel to compete with TriZetto in the market for companies that service and customize TriZetto's FACETS product and removed any prohibition on Syntel's

---

[1] Emphases added throughout.

ability to compete with TriZetto using "technical, design, process or architectural knowledge of TriZetto's products or services relating to TriZetto's products." (*Id.*) Syntel was thus able to bid on projects to perform FACETS upgrades, customizations, and other work for companies that purchased TriZetto's FACETS software.

The market for third-party companies to service and customize software sold by companies like TriZetto is robust. Prior to the TriZetto-Cognizant merger, Syntel's largest competitor in bidding for work servicing TriZetto's projects was Cognizant. Indeed, Cognizant was the largest third-party FACETS service provider and was engaged in the very business that both TriZetto and Cognizant attempt to portray as improper in this litigation.

***TriZetto Merges With Syntel's Biggest Competitor—Cognizant.*** In September 2014, TriZetto sold itself to Syntel's largest competitor, Cognizant, in a $2.7 billion cash transaction. TriZetto's sale triggered the termination provision in the MSA that gave Syntel Mauritius the right to terminate the MSA if TriZetto was acquired by Cognizant. Given the strategic implications of servicing its biggest competitor, Syntel Mauritius elected to exercise its bargained-for right to terminate the MSA, effective February 18, 2015, and to demand its contractual right to be reimbursed for the transition rebates Syntel gave to TriZetto.

***Defendants Engage In A Scheme To Hire Syntel's Service Providers.*** After Syntel's termination, defendants engaged in a secret and wide-ranging scheme to poach Syntel's best service providers. In fact, defendants have admitted in discovery that TriZetto's new parent company, Cognizant, has hired numerous Syntel service providers. (Ex. 1 (Defendants' Rsps. to Syntel's First Interrogatories) No. 1.) ████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████

TriZetto also brazenly refused to pay Syntel Mauritius the transition rebates it was owed under the MSA, which totaled more than $3.3 million.  (Dkt. #59 ¶ 20.)  Again, in the event of a termination following a change in control, the MSA required TriZetto to reimburse Syntel Mauritius for any such rebates.  (*Id.* ¶ 23.02(3).)

**_Syntel Files Its Complaint._**   After TriZetto conspired with Cognizant to poach Syntel's best service providers and refused to pay the $3.3 million in transition rebates it owed under the MSA, Syntel filed this lawsuit in January 2015.  (Dkt. #1.)  Syntel's lawsuit alleged that TriZetto willfully breached the MSA by providing confidential information to Cognizant, by hiring Syntel's service providers in violation of the non-solicitation provision and employee non-compete agreements, and by refusing to pay the transition rebates Syntel was unquestionably owed under the MSA post-termination.  (*See id.*)

**_Defendants Manufacture Their Operative Misappropriation Theory._**   In response to Syntel's lawsuit, defendants manufactured a theory of misappropriation in an attempt to transform TriZetto's willful breach of the MSA into a two-way dispute.  On February 23, 2015, defendants filed their first counterclaims, accusing Syntel Mauritius of misappropriation and breach of contract.

█████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

9

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

***Defendants Amend Their Counterclaims The First Time.***   On March 23, 2015, defendants amended their counterclaims to add Syntel, Inc. as a defendant. (Dkt. #50.)

***Defendants' Narrow Operative Misappropriation Theory.***   The sole theory of misappropriation set forth in defendants' operative counterclaims is that after TriZetto and Cognizant announced their merger in fall 2014, Syntel service providers improperly downloaded TriZetto's confidential documents *en masse* and used those documents improperly.  (Dkt. #50 (Amended Counterclaim) ¶¶ 63-83.)  Defendants' counterclaims make no other allegations of misappropriation, and defendants' interrogatory responses list only Syntel's downloading of 1,600 documents as the alleged misappropriation in the case.  (*See* Ex. 1 (Defendants' Rsps. to Syntel's First Interrogatories) at No. 3, 6.)

That is the theory—and the only theory—in defendants' counterclaims and in their verified discovery responses.  In fact, the entire discovery process has focused on that specific theory of misappropriation.  When the parties negotiated a date range for the collection of ESI, defendants opposed Syntel's requests for documents pre-dating the merger by more than 30 days on the grounds that documents from that time period were irrelevant to the issues in the case and called discovery regarding that time period a "waste of time."  (Dkt. #86 (Defendants' July 10, 2015 letter).  Defendants also agreed to limit the scope of their offensive interrogatories, which asked about Syntel's misappropriation of confidential information, to the approximately 1,600 downloads defendants identify in their complaint.  (Dkt. #108 at 3 ("all that was required [for

10

21949790.7

Syntel] to respond to the Interrogatories was for Syntel to search its computer systems for the [approximately 1,600] listed file names"); Ex. 1 at Nos. 3, 6 (defining the scope of defendants' misappropriation theory).)

**_Court Sets Case Deadlines._**    This Court's scheduling order set March 24, 2015, almost a year and a half ago, as the deadline for the amendment of pleadings without leave of the Court. (Dkt. #51 at 2.)  Defendants have already amended their counterclaims once, on March 23, 2015. (Dkt #50.)  Defendants themselves have previously taken the position that an amendment of the pleadings after that date would be improper.  In fact, during the pre-motion conference on defendants' Rule 12(c) motion, defendants' counsel argued in favor of their motion by arguing that Syntel had "already amended once" and therefore should not be allowed to amend their complaint to address any purported pleading deficiency.  (_See_ Dkt. #96 at 5:25-6:13 (transcript of June 23, 2015 pre-motion conference).)

In fact, defendants took that position **_almost a year and a half ago_**, when the case was in its infancy.  Now, 18 months into this litigation and almost a year and a half after the deadline to amend pleadings, defendants seek leave to amend their own counterclaims for a second time to add new claims that would radically expand the scope of this litigation and result in months of additional discovery.

**_Defendants Raise New Discovery Issues._**  At the very end of document discovery, which has already spanned more than a year, defendants raised several discovery "issues" that in fact sought new information not previously requested in discovery and not within the scope of the claims pled in defendants' complaint. (_See_ May 12, 2016 Joint Discovery Letter.) For example:

- 



The parties submitted their joint letter on the open discovery issues on May 12, 2016.  At no point before submitting the joint letter ████████████████████ did defendants suggest that they intended to amend their complaint. It was not until a meet and confer call on June 8, 2016, after Syntel opposed defendants' request for additional discovery on the grounds that defendants' requests were outside the bounds of defendants' counterclaims, that defendants first broached the issue of amendment. In an apparent attempt to justify their discovery requests (which are still objectionable even if amendment is permitted), defendants seek to amend their complaint in the hope of pleading claims broad enough to encompass the requested discovery.

## III.  THIS COURT SHOULD DENY DEFENDANTS' MOTION TO AMEND

Defendants ask this Court for leave to modify the scheduling order to permit leave to amend to file a second amended counterclaim raising several new claims and theories of liabilities. Defendants make their request almost a year and a half after the deadline for the amendment of pleadings. As defendants acknowledge, "good cause" is required to modify the Court's scheduling order. *See Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*, No 09 Civ. 5580, 2010 WL 3023981, at *2 (S.D.N.Y. Aug. 3, 2010) (noting that motion for leave to amend was "untimely under the Scheduling Order" and that "under Rule 16, Plaintiffs have not

made the requisite showing of good cause to warrant modification of the Scheduling Order."); *see also* Mot. to Amend at 11.

Furthermore, as defendants also acknowledge, "leave to amend must be denied (1) when the party seeking the amendment has unduly delayed making its amendments, (2) when the movant is acting in bad faith or with dilatory motive, (3) when the opposing party will be unduly prejudiced by the amendment, or (4) when the amendment is futile." *Pfkinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, No. 93 Civ. 5375, 1996 WL 84481 at *1 (S.D.N.Y. Feb. 27, 1996). *See also Komatsu v. NTT Data, Inc.*, 15 Civ. 7007, 2016 WL 2889064 (S.D.N.Y. May 17, 2016) (Schofield, J.) (denying motion for leave to amend on grounds that claim would be futile); *see also* Mot. to Amend at 11. Indeed, the Second Circuit has made clear that leave to amend may be denied "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (upholding denial of motion for leave to amend where party waited "more than 17 months after bringing suit.").

Here, defendants' motion should be denied because: (A) defendants unduly delayed in seeking to amend their complaint until a year after the deadline to do so; (B) defendants' new claims would dramatically change the nature of the case, causing significant prejudice to Syntel; and (C) defendants' new claims have no legal basis.

A.   <u>Defendants Cannot Show "Good Cause" Or Justify Its Delay In Seeking Amendment</u>.

Defendants cannot show "good cause" for amending their counterclaims a second time or offer any legitimate reason why they waited until the end of document discovery to seek to amend their claims. As this Court is aware, the scheduling order in this case required that all

amendments to pleadings be filed by March 24, 2015. Yet, defendants waited until *almost a year and a half* after that deadline to seek amendment.[2]

While defendants claim that they only recently discovered Syntel's tools, the evidence proves otherwise. Syntel has openly marketed those tools on its website since 2014, long before the purchase of TriZetto by Cognizant and long before this litigation. (Ex. 6 (the first of two publications listed on Syntel's website under the "Products" section of the "Healthcare and Life Sciences" "Industry Solutions" page since at least December 2014).) Furthermore, Syntel produced the ██████████ identifying those tools in December 2015, more than six months before defendants now attempt to amend their counterclaims for a second time. And while defendants point to selected e-mails they claim show that Syntel misappropriated specific TriZetto manuals (an allegation Syntel strongly denies), defendants do not—and cannot—link any of those manuals to the Syntel tools defendants claim were misappropriated. ██████████
████████████████████████████████████████████████████████
██████████████████████████████████████[3]

Syntel's tools were publicly available and promoted on its website long before Cognizant bought TriZetto and long before this litigation. Indeed, defendants do not claim that they did not know or should not have known of Syntel's publicly available tools prior to Cognizant purchasing TriZetto or before this litigation was commenced over a year and a half ago. That alone is fatal to their argument that they have "good cause" to seek amendment. *See G.C.W. v.*

---

[2] The only theory or claim defendants could not have, and should not have, pled at the beginning of the case is the Defend Trade Secrets Act ("DTSA") claim, which was not enacted at the time of the complaint. As discussed below, however, the DTSA does not provide a cause of action for pre-enactment conduct. As a result, defendants cannot state a viable claim under the DTSA for pre-May 2016 conduct.

[3] Exhibit 10 to defendants' Motion was produced in September 2015. In fact, all of the exhibits to defendants' motion to amend were produced on or before February 8, 2016, and several of them were produced in 2015.

*United States*, 15-CV-0294, 2015 WL 8481677, at *1 (S.D.N.Y. Dec. 4, 2015) ("[E]xamples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline.").

For that reason, courts frequently deny leave to amend where, as here, a party is dilatory in seeking leave to amend. *See, e.g.*, *Warner/Chappell Music, Inc.*, 2010 WL 3023981 at *2 (denying motion for leave to amend where party waited "more than two years after the filing of the original complaint" and "knew or should have known the relevant facts at least a year before it sought leave" to amend.); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (affirming denial of motion to amend under Rule 16(b) "good cause" standard and holding that good cause depends on "the diligence of the moving party.").

### B.     Defendants' Proposed Amendment Would Severely Prejudice Syntel.

Defendants' motion must also be denied for the independent reason that amendment would substantially prejudice Syntel's position in this litigation. "In gauging prejudice, [federal courts] consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (internal quotation omitted).

That is precisely the prejudice Syntel would suffer here. The proposed amendment would radically transform the scope and nature of the case, would require voluminous additional discovery, and would delay resolution indefinitely. Courts do not permit parties to play possum with potential, unpled claims and spring them on plaintiffs at the end of document discovery. To the contrary, "defendants should be protected from reasonably conducting discovery on one theory of liability, and then having to defend against a different theory." *See, e.g.*, *Pope v. Cnty.*

*of Albany*, No. 1:11-cv-0736, 2014 WL 316703, at *10 (N.D.N.Y. Jan. 28, 2014). Such action is the height of gamesmanship and results in significant prejudice and avoidable expense.

Syntel's discovery efforts to date were tailored to defend against defendants' narrow theory of misappropriation. As a result, if amendment is permitted, Syntel would need voluminous, time-consuming and expensive discovery regarding these new claims to try to mitigate the prejudice caused by the amendment and be able to respond to these new theories of potential liability. That would essentially hit the reset button on all discovery.  There has been no allegation of, and no discovery regarding, these new claims and potential defenses to these new claims, specifically including but not limited to:

- How, and if, defendants maintained the confidentiality of new documents and information they contend were misappropriated;

- Cognizant's (and other service providers') uses of, and access to, the information TriZetto claims is confidential;

- Whether the newly claimed confidential information is and was already in the public domain through use by Cognizant prior to its purchase of TriZetto and by other information technology companies and, therefore, is not confidential at all;

- Defendants' development and ownership of the various copyrights they assert; and

- Syntel's defenses to those copyrights.

Syntel would be required to expend considerable resources and suffer significant delay in doing so—all of which could have, and should have, been avoided if defendants had timely pled these claims.

Courts in this circuit routinely disallow amendment where, as here, it advances new theories of liability at or near the end of discovery. *See, e.g.*, *Clarex Ltd. v. Natixis Securities Americas LLC*, No. 12 Civ 7908, 2013 WL 3892898, at *5 (S.D.N.Y. July 29, 2013) (proposed amended complaint would create prejudice when "discovery has closed and the parties are on the

16

eve of moving for summary judgment" and "the proposed amended complaint asserts an entirely new cause of action . . . of which [the defendant] has had no prior notice"); *Int'l Media Films, Inc. v. Lucas Entertainment, Inc.*, No. 07 Civ. 1178, 2008 WL 781823, at *5 (S.D.N.Y. Mar. 20, 2008) (denying motion to amend filed close to summary judgment on the grounds that "a motion to amend a complaint made at such a late date is 'especially prejudicial' to the nonmoving party"); *Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of motion to amend to add fraud allegations concerning "a different period of time and [which] were derived from a different statute" because "the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed . . . .").

### C.   Defendants' Motion Should Be Denied Because Amendment Is Futile.

Defendants' motion to amend should also be denied on the independent ground that the amendment would seek to add claims that have no legal basis. *See Mayo v. Federal Gov't*, No. 11 Civ. 2828, 2012 WL 843477 at *1 (S.D.N.Y. Mar. 12, 2012) ("leave to amend a complaint need not be granted when amendment would be futile.") (Ellis, M.J.). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *Smith v. Kessner*, 183 F.R.D. 373, 374 (S.D.N.Y. 1998).

#### 1.   Defendants Cannot State A DTSA Claim For Pre-Enactment Conduct.

Defendants cannot state a viable claim under the DTSA because the DTSA applies only to acts of misappropriation that occur on or after the date of enactment.  Indeed, the statute makes clear that it "shall apply with respect to any misappropriation of a trade secret for which any act ***occurs on or after the date of the enactment of this Act***."  Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2, "§ 1836 Civil proceedings" (2016).  As a result, defendants' allegations (even if true, which they are not) are based entirely on acts preceding enactment fail to state a claim cannot state a viable claim under the DTSA. Defendants do not allege facts that

17

plausibly state a claim that any misappropriation occurred after the date the DTSA was enacted. Their proposed amendment, therefore, is futile with respect to the DTSA claim and leave to amend should be denied.

2.    <u>Defendants Do Not Allege A Valid Copyright Claim</u>.

Defendants similarly fail to allege a valid copyright claim. As defendants acknowledge, to succeed on a copyright claim, defendants must prove: (1) a valid copyright in the allegedly infringed materials, and (2) show unauthorized copying by Syntel. (Mot. to Amend at 17-20.) However, defendants cannot establish either element of a valid copyright claim. Defendants' only evidence that Syntel "copied" its health care software tools is a chart showing that *Syntel* developed each of the tools.  (Mot. to Amend, Ex. 10.)  Furthermore, defendants do not allege that they have validly registered for copyrights in any of the identified materials, and in fact acknowledge that some or all of its applications have been "refused."  (Mot. to Amend, Ex. A (Proposed Amended Counterclaims) ¶ 51.)

## IV.    <u>CONCLUSION</u>

Defendants have filed their motion to amend (and their request for corresponding amendment of the Court's scheduling order) 15 months after they should have. What is more, they offer no credible explanation for why they waited as long as they did to move to amend. Defendants' requested second amendment threatens to turn this lawsuit into a completely different lawsuit from what it was when it was filed several years ago. There is no basis for allowing defendants to do so, and allowing defendants to do so would prolong this year and a half old litigation for a prolonged period, require a ramp-up of enormous discovery and cost, and severely prejudice Syntel. Finally, and equally critically, defendants have no viable factual or legal basis for the tardy claims they want to assert.

Defendants' motion should be denied.

18

Dated:  June 27, 2016

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By:/s/  Matthew G. Mrkonic
　　　Norman C. Ankers (admitted *pro hac vice*)
　　　Matthew G. Mrkonic (admitted *pro hac vice*)
　　　Andrew W. Clark (admitted *pro hac vice*)

2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226-3506
(313) 465-7306
nankers@honigman.com
mmrkonic@honigman.com

21949790.7