USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-23-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYNTEL STERLING BEST SHORES MAURITIUS
LIMITED, et al.,

                  Plaintiffs,

          - against -

THE TRIZETTO GROUP, INC., et al.,

                  Defendants.

OPINION AND ORDER

15-CV-211 (LGS) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiffs Syntel Sterling Best Shores Mauritius Limited, and Syntel, Inc., (collectively, "Syntel") initiated this action against The TriZetto Group, Inc. ("TriZetto") and Cognizant Technology Solutions Corp. ("Cognizant," and, collectively, "Defendants"), alleging breach of contract, intentional interference with contractual relations, and misappropriation of confidential information. (Doc. Nos. 1, 39.) Defendants asserted counterclaims against Syntel, alleging breach of contract, breach of implied covenant of good faith and fair dealing, misappropriation of confidential information, unfair competition, and tortious interference with prospective business relations. (Doc. Nos. 21, 50.) Before the Court is Defendants' motion for leave to amend their counterclaims against Syntel to (1) add new claims and allegations of copyright infringement; (2) expand allegations of misappropriation under New York law; (3) add new claims and allegations of trade secret theft under the Defend Trade Secrets Act ("DTSA"); (4) expand allegations of breach of contract; and (5) make additional amendments to conform the counterclaims to the products of discovery and new information developed since their initial filing. (Doc. No. 191.) For the reasons that follow, Defendants' motion to amend their counterclaims is **GRANTED**.

## II. BACKGROUND

### A. Relevant Factual Allegations in the Operative Counterclaims

TriZetto develops and licenses software products in the healthcare industry. Relevant to this action is Facets, TriZetto's "core software product geared specifically to health plan administration." (*Id.* at ¶ 42.) TriZetto also provides consulting services, including a unit that customizes and integrates its own software into clients' existing systems. (*Id.* at ¶ 43.) TriZetto explains that this process is "complex" and can take many months. (*Id.*) Accordingly, TriZetto hires contractors to perform some of this work, including Syntel. (*Id.* at ¶ 44.)

Syntel and TriZetto were parties to a Master Services Agreement ("MSA") in which Syntel promised to supply TriZetto with appropriately qualified technical personnel to assist with "software development, consulting, and other customer projects." (*Id.* at ¶ 46.) The MSA included a clause prohibiting each party from using the other's "Confidential Information" for its own benefit, including "TriZetto Data," defined as "all data and information to which [the parties to the contract] have access in connection with the provision of the Services under … the MSA." (*Id.* at ¶ 47.) The MSA also contemplated that, in the event that TriZetto was acquired by one of Syntel's competitors, including Cognizant, Syntel could elect to terminate the MSA, as long as Syntel continued to provide "Termination Assistance Services" for up to two years. (*Id.* at ¶ 48.)

On September 15, 2014, Cognizant announced that it would acquire TriZetto. (*Id.* at ¶ 52.) Syntel issued a notice of termination on November 20, 2014, which took effect on February 18, 2015. (*Id.*) Defendants allege that after issuing the notice of termination, Syntel "opportunistically undertook to sabotage TriZetto and, therefore, Syntel's competitor Cognizant." (*Id.* at ¶ 54.) TriZetto alleges that Syntel engaged in "an organized effort … to misappropriate … confidential files in order to effectively compete" against Defendants. (*Id.* at ¶

63.) In particular, Defendants allege that Syntel accessed and downloaded documents from TriZetto's Customer Exchange, a bank of confidential and proprietary information, intended to be accessible through TriZetto's intranet and used by its contractors and clients to meet the needs of TriZetto's customers. (*Id.* at ¶ 64-66.)

The Counterclaim alleges that approximately 1,500 documents were downloaded by Syntel staffers between its notice of termination in September 2014 and the termination effective date the following February. (*Id.* at ¶ 67.) Defendants allege that there were systematic downloads on or around staffers' last days on TriZetto projects, including some staffers forwarding documents to their personal email addresses. (*Id.* at ¶¶ 70-75.) They allege that Syntel then used the wrongly downloaded data to pitch consulting jobs in direct competition with Defendants, including for the client United Health Group ("UHG"). (*Id.* at ¶¶ 77-81.)

## B. Relevant Evidence Disclosed Through Discovery

Defendants allege that documents produced by Syntel throughout the course of discovery demonstrate that Syntel's course of conduct, including downloading, using, and copying key pieces of TriZetto's software, was more widespread than they realized when they filed their most recent counterclaim in March 2015. (Doc. No. 192 (Defendants' Memorandum of Law in Support of their Motion for Leave to Amend Counterclaims) ("Defs.' Mem.") at 5.) Specifically, they cite to emails that they say demonstrated rampant sharing among Syntel workers of documents that had been downloaded from the Customer Exchange as late as April 2015, and to an October 2014 UHG pitch by Syntel promising access to its Facets "Platform Management Tools." (*Id.* at 5-6.) They further allege that the Platform Management Tools, descriptions of which were allegedly posted on Syntel's website as early as December 2014,[1] appear to

---

[1] There appears to be no dispute that the Platform Management Tool descriptions from Syntel's website were not produced to Defendants during discovery, but rather have been "publically marketed on [Syntel's] public website"

3

improperly compete with TriZetto's proprietary tools. (*Id.* at 6-9.) Defendants contend that Syntel would never have been able to develop this "sophisticated software and vast libraries of code and documents by October 2014" without improperly using or copying TriZetto's confidential information, data, and intellectual property ("IP"). (*Id.* at 9.)

## C. Relevant Procedural History

Syntel initiated this action on January 12, 2015. (Doc. No. 1.) Defendants filed their Answer and Counterclaims on February 23, 2015. (Doc. No. 21.) On March 4, 2015, Syntel filed an Amended Complaint, joining the parent company, Syntel Inc., as a party. (Doc. No. 39.) Defendants filed their Answer to the Amended Complaint and Counterclaims on March 23, 2015. (Doc. No. 50.) Judge Lorna G. Schofield entered a scheduling order on March 24, 2015, setting that date as the deadline to amend the pleadings without leave of the Court. (Doc. No. 51.) The Case was referred to Magistrate Judge James L. Cott for general pretrial on June 1, 2015, and reassigned to the undersigned on June 8, 2015. (Doc. No. 71.)

The Parties have been engaged in discovery since March 2015. Syntel made its initial document productions in June 2015, and the undersigned held a conference on July 2, 2015, to address disputes regarding the scope of the initial production and future productions. (Doc. No. 105 (Hr'g Tr.).) The Court set the end of August 2015 for completion of non-custodial ESI and the end of October 2015 for the end of fact discovery. (*Id.* at 5:8-6:18.) A month later, at a hearing on August 5, 2015, the Court ruled on a dispute regarding the Parties' proposed ESI search terms, and ordered the Parties to further meet and confer regarding the timeframe for the completion of discovery. (Doc. No. 112 (August 5, 2015 Hr'g Tr.).) The Parties thereupon agreed to the substantial completion of document production by October 31, 2015. (Doc. No.

---

since "at least December 2014." (Pl.'s Mem. at 6, 14.)

4

117.) On November 4, 2015, Syntel sought an order modifying the search terms. The application was denied by the undersigned on December 4, 2015. (Doc. No. 136 (December 4, 2015 Hr'g Tr.).) Syntel appealed, and the ruling was affirmed by Judge Schofield on January 12, 2016. (Doc. No. 143.) The Parties agreed that Syntel would complete its document production by February 11, 2016. (Doc. No. 142.) Defendants allege that in February, Syntel produced over 86,000 pages of documents, doubling its productions to date. (Defs.' Mem. at 5, citing Declaration of Gianni Cuatri ("Cuatri Decl.") at ¶¶ 6-8.)

On April 21, 2016, the undersigned held a discovery conference at which both Parties raised issues with the other's production to date. (Doc. No. 146 (April 21, 2016 Hr'g Tr.).) The Court ordered the parties to confer further and to file a joint letter detailing their disputes by May 12, 2016. The issues raised in the May 12 letter were addressed before the undersigned on June 22, 2016 (Doc. No. 157 (June 22, 2016 Hr'g Tr.) and June 29, 2016 (Doc. No. 166 (June 29, 2016 Hr'g Tr.). *Inter alia*, the Court ordered Syntel to produce additional documents related to its allegedly improper downloading and use of TriZetto confidential materials and its Platform Management Tools. (*See id.*) The Court's discovery orders were affirmed by Judge Schofield on July 8, 2016 (Doc. No. 163) and July 29, 2016. (Doc. No. 187.)

### III. DISCUSSION

**A. Legal Standard**

Generally, leave of court to amend pleadings should be freely given "when justice so requires." FED. R. CIV. P. 15(a); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230 (2d Cir. 1995). "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Dluhos v. Floating*

*and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998); *see Cevasco v. National R.R. Passenger Corp.*, No. 04 Civ. 5760 (PAC) (GWG), 2007 WL 4440922, at *3 (S.D.N.Y. Dec. 18, 2007) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Furthermore, Federal Rule of Civil Procedure 16(b) requires parties to show "good cause" before the court will consent to the modification of scheduling order. FED. R. CIV. P. 16(b)(4). In the Second Circuit, "the amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b)." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (citing Fed. R. Civ. P. 16(b)(4)). "With respect to the Rule 16(b) standard, 'good cause' depends on the diligence of the moving party." *Id.* at 243.

## B. Good Cause

The scheduling order in this case set March 23, 2015, as the deadline to amend the pleadings without leave of the Court. (Doc. No. 51.) Defendants argue that they have shown good cause for the Court to exercise its discretion and to allow amendment of their counterclaims because they have diligently sought leave to amend during discovery, "which is a timely response to newly adduced evidence and changes in controlling law." (Defs.' Mem. at 12.)

The Court agrees that Defendants were timely in their response. The Defend Trade Secrets Act of 2016 ("DTSA") was passed during the pendency of this case, amending existing law, creating a federal cause of action for trade secrets misappropriation. *See* Defend Trade Secrets Act of 2016, ch. 90, 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. 1831 *et seq.*); *McGuire v. Warren*, 207 F. App'x 34, 37 (2d Cir. 2006) (permitting plaintiff to amend complaint to meet a change in applicable law since the complaint was filed). The remaining allegations in the proposed amendment are based on evidence that Syntel produced within a large

production of documents in February 2016, and the motion was filed while the Parties were still engaged in the active litigation of the sufficiency of that production. "Courts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery." *In re Pfizer Inc. Sec. Litig.*, No. 04 CIV. 9866 (LTS) (HBP), 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012).

Syntel argues that the newly adduced evidence does not excuse Defendants' delay in seeking leave to amend, noting that more than a year has passed since the deadline to amend the pleadings without court approval. It alleges that descriptions of Syntel's Platform Management Tools have been available on Syntel's website since 2014, and that Defendants knew or should have known of the information before it filed its original counterclaims. (Pl. Mem. at 14, citing *Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*, No. 09 CIV. 5580 (LTS), 2010 WL 3023981, at *2 (S.D.N.Y. Aug. 3, 2010); *G.C.W. v. United States*, No. 15-CV-0294 (DF), 2015 WL 8481677, at *3 (S.D.N.Y. Dec. 4, 2015).) Syntel further argues that the UHG proposal identifying those tools was produced to Defendants in December 2015 and, in any event Defendants have failed to establish any link between the data that Defendants claim was misappropriated and the Platform Management Tools. (*Id.*)

First, the Court disagrees that the availability of the descriptions of the Platform Management Tools on Syntel's website is analogous to the cases Syntel cites. *Reach Music Pub., Inc.*, 2010 WL 3023981, at *2 (leave to amend denied where moving party "personally executed" the contracts that were the subject of the amendment and "provided no explanation [] why Plaintiffs were not aware of those contracts prior to their production in discovery"); *G.C.W.*, 2015 WL 8481677, at *3 (moving party delayed obtaining a medical examination to assess his own damages until after the expiration of the deadline to amend the pleadings). Additionally, the

Court does not find the time between Syntel's production of the UHG proposal in December 2015 and Defendants' motion unreasonable, as they explain that "the extent to which Syntel misappropriated TriZetto's confidential information to create those tools was not apparent" until they received Syntel's internal email communications in February 2016. (Defs.' Reply Mem. at 5.)

The Court is also satisfied that Defendants have adequately pled, at this stage, a link between the emails that show downloading and sharing of TriZetto's documents among Syntel employees and the Platform Management Tools. Defendants allege that Syntel's complex Facets-related software, such as its "'repository of 3,000+ FACETS test cases and 500+ automation scripts' and an inventory of custom code interfaces" could not have been developed "by October 2014 without using or copying TriZetto's confidential information, data, and intellectual property." (Defs.' Mem. at 8-9.) The Court finds this inference reasonable, and accordingly finds that the amendments are sufficiently related to the newly adduced evidence to warrant granting leave to amend.

## C. Prejudice

Syntel "bear[s] the burden of 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" *Cat3, LLC v. Black Lineage, Inc.*, No. 14 CIV. 5511 (AT) (JCF), 2015 WL 5559569, at *4 (S.D.N.Y. Sept. 21, 2015) (quoting *Oneida Indian Nation of New York State v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)). Syntel alleges that they will be "severely prejudiced" by the proposed amendment because it would "radically transform the scope and nature of the case, would require voluminous additional discovery, and would delay resolution indefinitely," "essentially [hitting] the reset button on all discovery." (Pl. Mem. at 15-16.) Syntel claims that it would be required to expend "considerable

resources" on discovery regarding the new claims and potential defenses including: how Defendants' maintained the confidentiality of new documents and information they contend were misappropriated; Cognizant's access to the confidential material; whether the confidential material was already in the public domain and therefore not confidential; Defendant's development and ownership of the copyrights they assert; and Syntel's "defenses to those copyrights." (*Id.* at 16.)

While some additional discovery will likely be required, the Court does not find that it will cause Syntel substantial prejudice because Defendants' existing counterclaims are closely related to the proposed amendments and were "foreshadowed in earlier pleadings, argument, and subsumed within prior discovery." (*Stonewall Corp. v. Conestoga Title Ins. Co.* 2010 WL 647531, at *2 (S.D.N.Y. Feb. 18, 2010).) The Parties have already engaged in substantial document production, which both forms the basis for Defendants' amendments and Syntel's defenses. For example, Syntel has already pursued discovery relating to TriZetto's protection of confidential materials. (*See* June 21, 2016 Hr'g Tr. 24:16-21.) Additionally, the Court recently ruled that discovery regarding Defendants' allegations of improper downloading, beyond the 1,500 downloads alleged in the Complaint, was relevant to the Defendants' existing counterclaims. (June 29, 2016 Hr'g Tr. 3:9-11, affirmed at Doc. No. 187.)

Moreover, discovery has not yet closed and there are pending discovery disputes. Accordingly, because the Court does not find that the proposed amendments would substantially increase the scope of discovery, and because Syntel will have an opportunity to complete what additional discovery is required, Syntel has not met its burden of showing substantial prejudice.

### D. Futility

The adequacy of an amendment "is to be judged by the same standards as those

9

governing the adequacy of a filed pleading." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Thus, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009). The Court finds that Defendants have adequately pled each of the proposed additional claims, and accordingly, amendment is not futile.

### 1. Copyright Infringement

"To establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991)). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106," including reproduction, distribution of copies, and creation of derivative works based on the copyrighted work. *Id.* (internal quotations omitted) (citations omitted).

Defendants' proposed amended counterclaims adequately allege that TriZetto owns valid copyrights in various software, presentations, manuals and user guides, and other materials (collectively, "Trizetto's Intellectual Property"), and that these copyrights have been registered with the Copyright Office, satisfying the first element of a copyright infringement claim. (Defs.' Mem., Ex. A ("Proposed Countercl.") ¶¶ 50-51, 160-61.) *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) (At the motion to pleading stage, "Plaintiffs need only 'allege . . . that plaintiff owns the copyrights in those works' and 'that the copyrights have been

registered in accordance with [17 U.S.C. § 411(a)]") (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)). Syntel argues that Defendants have failed to allege valid copyright ownership because the proposed amendment indicates "some or all of its applications have been 'refused.'" This argument lacks merit. (Pl. Mem. at 18.) The statute entitles an applicant whose registration has been refused to institute a civil action for infringement. 17 U.S.C. § 441(a).

Second, Defendants have adequately alleged that Syntel copied its original materials. (*See, e.g.*, Proposed Countercl. ¶ 3 ("Syntel personnel downloaded, used, copied, converted and stole Trizetto's Intellectual Propery…"); ¶ 53 ("During the MSA, Syntel abused its access [to Trizetto's Intellectual Property], exceeded the scope of its authority, and improperly copied, downloaded, distributed, and used [it]"); ¶ 79 ("Upon information and belief, Syntel created [its Platform Management Tools] by copying TriZetto's Intellectual Property, and has used, and is using, such copies in connection with its own business."); ¶ 80 ("Internal Syntel emails confirm that Syntel has downloaded, used, copied, misappropriated and distributed TriZetto's Intellectual Property.").) Defendants also allege facts that support an inference of copying, namely that Syntel had access to its proprietary materials and that there is a substantial similarity between Syntel's Platform Management Tools and their own Intellectual Property, including their Code Impact Tool and Data Dictionary Program. (*Id.* at ¶ 78-83.)

Contrary to Syntel's argument that "Defendants' only evidence of copying is a chart showing that Syntel developed each of the tools," (Pl. Mem. at 18.), the Court finds that Defendants have pled sufficient specific facts to render their claim that Syntel copied Trizetto's Intellectual Property facially plausible. *See Twombly*, 550 U.S. at 570.

### 2. Defend Trade Secrets Act of 2016

The Defend Trade Secrets Act of 2016 ("DTSA" or "Act") expands the provisions of 18

U.S.C. § 1831 *et seq*. Defend Trade Secrets Act of 2016, ch. 90, 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. 1831 *et seq.*). The Act provides a federal cause of action to the owner of a trade secret that is misappropriated and is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b). A trade secret is defined within DTSA as, *inter alia*, technical information, including "programs," "processes," and "codes," if (A) "the owner thereof has taken reasonable measures to keep such information secret; and (B) "the information derives independent economic value ... from not being generally known ... [or] readily ascertainable ... [to] another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. 1839(3)(A)-(B). "Misappropriation" is defined within DTSA as an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty. 18 U.S.C. § 1839(5). "Improper means" includes breach of duty to maintain secrecy, but "does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

Defendants have adequately pled the elements for relief under DTSA. The Intellectual Property at issue in the proposed amendments falls within the scope of trade secrets protected by the Act. (*See* Proposed Countercl. ¶¶ 76, 132-33.) Defendants have alleged that they have taken reasonable measures to keep the information secret by making those who use it subject to confidentiality provisions and limitations, and only making it accessible through strictly controlled servers such as the Customer Exchange. (*Id.* at ¶¶ 58-60, 77, 90, 123, 134.) Additionally, Defendants have alleged that the information is valuable and crucial to the business

functions and competitive position of TriZetto. (*Id.* at ¶¶ 49, 122, 136.) Finally, Defendants have alleged that Syntel has, without their consent, downloaded TriZetto's Intellectual Property from their Customer Exchange and other repositories and used it for Syntel's own use and financial gain, unrelated to its service of TriZetto's clients, in breach of the MSA's prohibition on each party using the other's confidential information for its own benefit. (*Id.* at ¶¶ 79-80, 96.)

Syntel opposes Defendants' addition of a claim under DTSA because the amendment alleges pre-enactment conduct, noting that DTSA applies only to acts of misappropriation that occur "on or after the date of the enactment of this Act," May 11, 2016. (Pub. Law 114-153.) The plain language of the Act defines misappropriation to include "disclosure *or use* of a trade secret without the consent of another." 18 U.S.C. 1839(5) (emphasis added). Accordingly, as Defendants allege that Syntel continues to use its Intellectual Property to directly compete with Trizetto, the wrongful act continues to occur after the date of the enactment of DTSA. (Proposed Countercl. ¶ 137.)

### 3. Misappropriation and Breach of Contract Under New York State Law

Defendants seek to supplement their existing counterclaims of misappropriation and breach of contract under New York State Law. Syntel does not allege that either of these amendments are futile. The Court finds that the facts described above supplement and bolster counterclaims that were already adequately pled, and, accordingly, amendment of those claims is not futile.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion for leave to amend its counterclaims is **GRANTED**. Defendants shall file the Amended Answer and Counterclaims in its redacted form by **September 30, 2016**, and shall file the full, unredacted version under seal and placed in

the clerk's office.

**IT IS FURTHER ORDERED THAT** the Parties shall meet and confer regarding the outstanding discovery in this case, and by **September 30, 2016,** file a joint status report explaining what fact and expert discovery remains and a proposed timeline for its completion. If the Parties disagree on the timeline, the report shall set forth their respective positions.

**SO ORDERED this 23rd day of September 2016
New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis
United States Magistrate Judge**