UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/19/2018

Syntel Sterling Best Shores Mauritius
Limited et al.,

Plaintiff,

-against-

The TriZetto Group, et al.,

Defendants.

1:15-cv-00211 (LGS) (SDA)

<u>OPINION AND ORDER</u>

**STEWART D. AARON, United States Magistrate Judge:**

The issues presented serve as a cautionary reminder of the obligations that attorneys who appear before this Court undertake as officers of the Court. Attorneys are expected to strictly adhere to the letter and spirit of Court Orders. They also are expected to be completely candid and forthright in the representations they make during the course of all Court proceedings.

Before the Court is a motion by Defendants/Counterclaim Plaintiffs, The TriZetto Group ("TriZetto") and Cognizant Technology Solutions Corp. (collectively, "Defendants") for sanctions stemming from alleged discovery misconduct by Plaintiffs/Counterclaim Defendants, Syntel Best Shores Mauritius Limited and Syntel, Inc. (collectively, "Syntel" or "Plaintiffs"). Defendants seek sanctions for Syntel's alleged failure to: (1) comply with the Court's June 29, 2016 and October 30, 2017 discovery Orders; (2) preserve relevant information including a "live inventory" of computer assets; and (3) search non-custodial electronically stored information ("ESI"). (*See* Defs.' 7/30/18 Mot. For Sanctions, ECF No. 439 (hereinafter "Mot. For Sanctions").)[1]

---

[1] Many of the documents filed by the parties in connection with this action were designated confidential. Thus, redacted versions of the documents were filed on ECF after the dates they were first submitted to the Court. Further, the unredacted versions have been (or will be) filed by the parties under seal with the Clerk of Court.

For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART. The Court finds that Syntel failed to comply with Court Orders, such that sanctions are appropriate pursuant to Federal Rule of Civil Procedure 37(b). However, the Court finds that the sanctions sought by Defendants, including findings of fact, preclusion orders and adverse inferences, are not warranted. Instead, as set forth below, Plaintiffs and/or their counsel shall pay to Defendants reasonable expenses, including attorneys' fees, caused by Plaintiffs' failure to comply with the Court Orders enumerated below. The Court also will reopen discovery for certain limited purposes, at the expense of Plaintiffs and/or their counsel.

The Court finds that the other two issues raised by Defendants do not warrant additional sanctions. First, the Court finds that the Defendants waived any discovery dispute regarding the preservation of computer assets. Second, the Court finds that Defendants' motion with respect to non-custodial ESI properly is considered as a motion to compel in the first instance, rather than a motion for sanctions. Nonetheless, the Court will require Syntel to produce additional non-custodial ESI, as set forth herein.

## FACTUAL BACKGROUND[2]

TriZetto develops and licenses software products in the healthcare industry. Relevant to this action is FACETS, TriZetto's core software product geared specifically to health plan administration. TriZetto also provides consulting services, including a unit that customizes and integrates its own software into clients' existing systems. TriZetto hires contractors to perform some of this work, including, previously, Syntel.

---

[2] This section is largely taken from an earlier Opinion and Order by Magistrate Judge Ellis, to whom this case was previously assigned. *See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-CV-00211 (LGS) (RLE), 2016 WL 5338550, at *1-2 (S.D.N.Y. Sept. 23, 2016) (internal citations omitted).

Syntel and TriZetto were parties to a Master Services Agreement ("MSA") in which Syntel promised to supply TriZetto with appropriately qualified technical personnel to assist with software development, consulting and other customer projects. The MSA included a clause prohibiting each party from using the other's "Confidential Information" for its own benefit, including "TriZetto Data," defined as "all data and information to which [the parties to the contract] have access in connection with the provision of the Services under . . . the MSA." The MSA also contemplated that, in the event that one of Syntel's competitors, including Cognizant, acquired TriZetto, Syntel could elect to terminate the MSA, as long as Syntel continued to provide "Termination Assistance Services" for up to two years.

On September 15, 2014, Cognizant announced that it would acquire TriZetto. Syntel issued a notice of termination on November 20, 2014, which took effect on February 18, 2015. On January 12, 2015, Syntel filed this lawsuit, alleging claims for breach of contract, intentional interference with contractual relations and misappropriation of confidential information. (*See* Compl., ECF No. 1; Am. Compl., ECF No. 39.) Defendants then filed Counterclaims against Syntel, alleging, *inter alia*, breach of contract, breach of implied covenant of good faith and fair dealing, misappropriation of confidential information, misappropriation of trade secrets, unfair competition, tortious interference with prospective business relations and copyright infringement. (*See* Answer & Counterclaims, ECF No. 21; Amended Answer & Counterclaims, ECF Nos. 50, 215.)

In their Counterclaims, Defendants alleged that after issuing the notice of termination, Syntel "opportunistically undertook to sabotage TriZetto" and engaged in "an organized effort . . . to misappropriate . . . confidential files in order to effectively compete" against Defendants. (Answer & Counterclaims, ECF No. 21, ¶ 59.) Defendants also alleged that Syntel accessed and downloaded documents from TriZetto's Customer Exchange, a bank of confidential and proprietary information,

intended to be accessible through TriZetto's intranet and used by its contractors and clients to meet the needs of TriZetto's customers.

In particular, Defendants alleged that Syntel staffers downloaded approximately 1,500-1,600 documents between its notice of termination in September 2014 and the termination effective date the following February. Defendants also alleged that there were systematic downloads on or around staffers' last days on TriZetto projects, including some staffers forwarding documents to their personal email addresses. Defendants further alleged that Syntel then used the wrongly downloaded data to pitch consulting jobs in direct competition with Defendants, including for UnitedHealth Group ("UHG"), a major client of both TriZetto and Cognizant.

A central player relating to this motion, as well as this case generally is Ankur Chadha, who was the leader of Syntel's Health Care and Life Science Product Consulting Team ("PCT") during the relevant time. Syntel explained that, in this role, Mr. Chadha "oversaw a team of developers that were tasked with identifying and developing software solutions that facilitated and automated the work Syntel provided to its clients." (Pls.' Mem. L. Opp. Mot. For Sanctions, ECF No. 443 (hereinafter "Opp."), at 5 n.2).

**PROCEDURAL HISTORY**

The procedural history relevant to the disposition of the present motion is as follows:

**I.    The Parties' May 12, 2016 Joint Letter**

On May 12, 2016, the parties submitted a Joint Letter regarding various discovery disputes.[3] (5/12/16 Joint Letter, Ex. 6 to Defs.' Mot. For Sanctions, ECF No. 439-6.) Defendants sought "to compel

---

[3] Magistrate Judge Ellis held regular, monthly telephone conferences with the parties. Prior to each conference, the parties would submit a Joint Letter regarding any discovery disputes to be discussed during the conference. Those letters were not contemporaneously filed on ECF, but certain of them were filed as exhibits in connection with the pending motion.

Syntel to comply with its discovery obligations to (1) produce documents and information concerning Syntel's improper copying, appropriation, downloading, or dissemination of TriZetto's proprietary and confidential documents; (2) produce documents and information concerning Syntel's use of such information; and (3) supplement specific discovery responses and productions relating to such documents and information." (*Id.* at 22.)

In particular, Defendants sought three categories of discovery. First, Defendants sought to compel production of documents from a certain Network Attached Storage ("NAS") drive. (*Id.* at 23-24.) Defendants pointed to email evidence showing that Syntel employees downloaded TriZetto manuals related to FACETS from the NAS drive and sought to compel production of a forensic copy of the drive and related documents. (*Id.*)

Second, Defendants set forth several examples of what they asserted was "significant evidence" of Syntel's misappropriation of Defendants' proprietary information and asked the Court to compel Syntel to produce: (1) any and all "Platform Management Tools," including any code, automation scripts, and test cases referenced in the UHG proposal or in Mr. Chadha's third declaration, and any documents or communications relating thereto; (2) any code, automation scripts, or test cases acquired from TriZetto, the identities of any third-party to whom they were distributed, and any additional communications relating to them; and (3) any document that, in whole or in part, contains information derived directly or indirectly from TriZetto; the identities of each person who obtained, distributed, received or used any information contained in such documents, and any additional communications relating to them. (*Id.* at 25-28.) These three items were enumerated in bullet points on page 28 of the May 12, 2016 Joint Letter. (*Id.* at 28.)

Finally, Defendants argued that Syntel's responses to interrogatories seeking information about Syntel's alleged misappropriation were deficient and asked the Court to order Syntel to

supplement its responses to Defendants' First Set of Interrogatories Nos. 1–6 and Second Set of Interrogatories Nos. 7 and 9, without limiting its responses to the set of documents that TriZetto had previously identified as improperly downloaded.[4] (*Id.* at 29-30.) Defendants also stated that "[f]or the avoidance of doubt, Syntel's responses must include any documents or information derived directly or indirectly from TriZetto and which contain the words 'confidential,' 'proprietary' or any similar confidentiality legend, or which are attached to other documents or communications referencing the confidential or proprietary nature of TriZetto's information." (*Id.* at 30.)

## II.    June 29, 2016 Order

On June 21, 2016, Judge Ellis held the first of two conferences regarding the issues raised in the parties' May 12, 2016 Joint Letter. (6/21/16 Hr'g Tr., ECF No. 157.) During that conference, Judge Ellis indicated his intent to defer the discovery issues raised by TriZetto until Plaintiffs' response to Defendants' Motion to Amend.[5]

On June 29, 2016, Judge Ellis held a second telephone conference to address the remaining discovery issues raised in the May 12, 2016 Joint Letter. (6/29/16 Hr'g Tr., ECF No. 166.) Judge Ellis found that the information sought by TriZetto was fairly encompassed in Defendants' allegations, regardless of the Court's resolution of the Motion to Amend, and therefore granted the motion to compel. (*Id.* at 3.) There is no discussion on the record regarding the particular points raised in the

---

[4] Defendants previously produced a list of approximately 1,500-1,600 documents that they asserted in their Counterclaims were suspiciously downloaded by Syntel employees following Syntel's termination of the MSA. That list was stamped TZCG-00000095–173. However, in the supplemental interrogatory responses, Defendants' specifically sought information from Syntel regarding other TriZetto documents that may have been downloaded. (Mot. For Sanctions at 4; *see also* Defs.' 8/4/15 Mem. L. Enforce Discovery Order, ECF No. 108, at 3.)

[5] Defendants filed a Motion to Amend Counterclaims on June 13, 2016. (ECF No. 191.) Defendants sought to add new claims and allegations of copyright infringement; expanded allegations of misappropriation under New York law; new claims and allegations of trade secret theft under the Defend Trade Secrets Act; and expanded allegations of breach of contract. (*Id.*) Plaintiffs filed their opposition on June 28, 2016 (ECF No. 196), and Defendants replied on July 6, 2016. (ECF No. 194.)

Joint Letter. Following Judge Ellis's ruling, Plaintiffs asked for clarification on what exactly Plaintiffs were being ordered to produce and Judge Ellis noted that they had not discussed "the full scope of what would be entailed." (*Id.* at 5.) Judge Ellis also explained that he did not take into account burden, and, instead, it was his intention that the parties "would still have discussions concerning how much of the information or what limitations you would place on it such that the burdens that are built into Rule 26 would not come into play." (*Id.*) As an example, Judge Ellis said he "did not consider the question of whether or not if there were 20 other custodians that needed to be searched and the way they would be searched whether or not that would create a problem." (*Id.*)

Plaintiffs asked that Defendants be required to serve requests "delineating exactly what they are looking for." (*Id.* at 10.) Judge Ellis stated that he was not contemplating separate formal documents demands, but reiterated that he thought the parties should communicate. (*Id.*) Defendants responded that what they were asking for was contained in the bullet points in the Joint Letter, but offered to entertain discussions with Plaintiffs. (*See id.* at 12.) Judge Ellis concluded the conference by telling the parties that they should confer and if they did not agree, they should return to the Court "in short order." (*Id.* at 15.)

### III.   Objections To June 29, 2016 Order And District Judge Schofield's Affirmance

On July 13, 2016, Syntel filed objections to Judge Ellis's June 29, 2016 Order, pursuant to Federal Rule of Civil Procedure 72(a). (*See* ECF No. 450.)[6] Syntel's memorandum in support of its motion characterized the Order as requiring Syntel to "(1) produce Syntel's various health care-

---

[6] Prior to the Court's preparation of this Opinion and Order, this document, as well the documents filed at ECF Nos. 451 to 455, had not been filed on ECF. The Court filed these documents yesterday, but restricted access to Court users and case participants. The Court has instructed the parties to submit to the Court redacted versions of these documents to remove any confidential information, and to file unredacted versions under seal with the Clerk of Court, if they have not already done so. Once the Court receives those redacted versions, they will be substituted in place of the unredacted versions on ECF and will be available to the public.

related tools and code; (2) produce documents related to the remote 'NAS' drive set up by Syntel's third-party client, UnitedHealth Group (UHG), on an unrelated project; and (3) supplement Syntel's interrogatory responses." (Pls.' Mem. L., ECF No. 450, at 1.)

With respect to documents located on the NAS drive, Syntel argued that those documents came from UHG and not TriZetto, and therefore were unrelated to Defendants' misappropriation-based claims. (*Id.* at 15-16.) Next, Plaintiffs argued that Syntel's tools and codes were properly developed by Syntel and the Court's Order for Syntel to "produce the vast majority of Syntel's health care related intellectual property" allowed Defendants to engage in an inappropriate fishing expedition. (*Id.* at 16-18.) Finally, Plaintiffs argued that the requested supplemental interrogatory responses essentially redefined the definition of "Confidential Information" in the MSA and were generally "far broader" than Defendants interrogatories and the previously agreed-upon scope of those interrogatories. (*Id.* at 18.)

In opposition, Defendants argued that Judge Ellis's Order was correct; the discovery sought was within the scope of their discovery requests; and Syntel's objections were moot because Syntel claimed to have already complied with the Order. (Defs.' Opp. to Rule 72 Mot., ECF No. 452, at 2.) With respect to the Court's ruling on the production of documents, Defendants noted that Syntel had not objected to the ruling with regard to the documents ordered in the third bullet, namely "[a]ny document that, in whole or in part, contains information derived directly or indirectly from TriZetto; the identities of each person who obtained, distributed, received, or used any information contained in such documents; and any additional communications relating to them[,]" and thus asserted that that portion of the ruling remained undisturbed. (*Id.* at 14.) On July 27, 2016, Syntel filed its reply, asserting that its objections were not moot and reiterating its overarching contention that

Defendants' were shifting their theory of liability and seeking discovery beyond the claims contained in the pleadings. (Reply Mem., ECF No. 184, at 2-5.)

On July 28, 2016, Judge Schofield held a telephone conference regarding Plaintiffs' motion. (7/28/16 Hr'g Tr., ECF No. 451.) With respect to the documents on the NAS drive, Judge Schofield affirmed Judge Ellis's ruling. (*Id.* at 5.) Judge Schofield found that Syntel's arguments focused on the merits of TriZetto's counterclaims, as opposed to the relevance of the discovery under Rule 26. (*Id.*) She also found that TriZetto's counterclaims were not limited to specific downloaded documents, as Syntel had argued, and therefore, the requested discovery was relevant to that claim. (*Id.* at 5-6.) With respect to the code and tools, Judge Schofield again affirmed Judge Ellis's ruling for "essentially the same reason." (*Id.* at 8.) Judge Schofield recognized Syntel's concern regarding its intellectual property, but stated that it could be dealt with through restrictions on the dissemination of the information, including limiting the extent of what has to be produced, although not the scope, in the way that Judge Ellis suggested." (*Id.* at 8-9.)

Finally, Judge Schofield affirmed Judge Ellis's ruling with respect to the supplemental interrogatory responses. (*Id.* at 16.) She stated, "to the extent that the discovery that's requested is beyond the scope of what's in the actual interrogatories, it seems to me that the discovery is nonetheless relevant and appropriate and it's within Judge Ellis's power to order it." (*Id*.) On July 29, 2016, Judge Schofield entered a written Order affirming Judge Ellis's June 29, 2016 ruling "for the reasons stated during the conference." (7/29/16 Order, ECF No. 187.)

## IV.    Discovery Following June 29, 2016 Order

The day after filing its Rule 72(a) Motion, on July 14, 2016, Syntel filed a Letter-Motion asking Judge Ellis to stay compliance with the Court's June 29, 2016 Order until Judge Schofield ruled on its Rule 72(a) motion. (7/14/16 Letter Mot., ECF No. 169.) On July 20, 2016, not having received a ruling

on its motion to stay, Syntel made a production as required by the Court's June 29, 2016 Order. (*See, e.g.*, 7/20/16 Letter, Ex. 9 to Defs.' Opp. to Rule 72 Mot., ECF No. 452; Supp. Responses, Ex. 20 to Defs.' Opp. to Rule 72 Mot., ECF No. 452.) Plaintiffs produced 1,827 documents and identified an additional 675 documents to supplement its interrogatory responses. (Defs.' Mem. L. Opp. Rule 72 Mot., ECF No. 452, at 10.) In its Supplemental Responses, Syntel specifically noted that the documents it was producing included "information that Syntel received from third parties for whom Syntel performed TriZetto-related work[.]" (Supp. Responses at 5.)

On September 23, 2016, Judge Ellis issued an Opinion and Order granting Defendants' Motion to Amend and setting a date for the parties to file a joint status report explaining what fact and expert discovery remained and a proposed timeline for its completion. (9/23/16 Order, ECF No. 214.) On October 5, 2016, the parties filed a Joint Letter setting forth their positions as to remaining discovery. Among other things, Defendants stated that they had "several outstanding discovery issues with respect to Syntel's compliance with this Court's June 21 and June 29 Orders granting Defendants' motion to compel[,]" but that the parties were continuing to meet and confer and Defendants hoped to raise any remaining disputes with the Court in advance of the next hearing. (10/5/16 Joint Letter, ECF No. 223, at 2.)

In a November 22, 2016 Joint Letter to the Court, Defendants again raised Syntel's failure to comply with the Court's June 29, 2016 Order. (Ex. 46 to Opp., ECF No. 443-46, at 8-14.) However, the subsequent conferences with the Court focused instead on disputes regarding Syntel's failure to produce documents regarding its Platform Management Tools, test cases and automation scripts, and the need for a forensic examination. (*See, e.g.*, 11/19/6 Hr'g Tr., ECF No. 234; 12/16/16 Hr'g Tr., ECF No. 237.)

**V.      January 2017 Forensic Examination Order**

On January 27, 2017, the parties filed a Joint Motion for Entry of Order for Forensic Examination, which was granted by Judge Ellis on January 30, 2017. (Joint Mot., ECF No. 242; Order, ECF No. 243.) The purpose of the examination was to determine: (1) the likelihood of the existence, deletion, or destruction of documents, data, emails or information by four Syntel employees (including Ankur Chadha), relating to an email in which one employee instructed the others to delete certain emails relating to the MSA; (2) the downloading of any of the approximately 1,500-1,600 documents (identified in TZCG-00000095-173) from TriZetto's Customer Exchange server by any of 100 selected custodians, the dissemination of such documents within Syntel and to third parties, and the likelihood of deletion or destruction of such documents by Syntel; and (3) information regarding the volume and nature of the existence, deletion or destruction of documents and the extent to which some or all of those materials could be recovered. (1/30/17 Order, ECF No. 243, at 3.)

After the Forensic Examination Order was entered, but before the Forensic Examination Report was issued, Syntel changed law firms after Norman Ankers, who had been a partner at the law firm Honigman Miller Schwartz and Cohn, LLP ("Honigman"), moved to Foley & Lardner, LLP ("Foley"). On May 16, 2017, Ann Sekel and Todd Norbitz of Foley entered Notices of Appearance in this case. (*See* ECF Nos. 260, 261.)

**VI.      July 2017 Forensic Examination Report**

The forensic examination was completed in July 2017. (*See* Forensic Exam Rpt., ECF No. 317-9.) As relevant here, the report found copying of TriZetto files by Syntel, finding "[a]pproximately 2,000 files, consisting of 594 unique files, stored across 20 Syntel employee computers and/or email accounts and within nine (9) different network file server shares." (*Id*. at 15.) The report also stated that "[t]hree (3) USB devices were connected to Syntel computers shortly before TriZetto Information

files were copied to the same Syntel computers." (*Id.* at 3.) These USB devices were identified by the Forensic Examiner as connected to two of Mr. Chadha's computers around the time that TriZetto documents were copied to his computers. (*See* Defs.' 1/16/18 Letter, ECF No. 317, at 3.)

VII.     **October 30, 2017 Order**

On October 23, 2017, the parties submitted a Joint Letter to the Court regarding outstanding discovery issues. (Ex. 11 to Motion For Sanctions, ECF No. 439-11.) As part of this submission, TriZetto sought production of all non-privileged documents from Mr. Chadha's laptops and emails for the period August 1, 2014 through the present that hit upon any court-ordered search term. (*Id.* at 2-3.) Defendants explained that the Forensic Examiner had identified 127 files on Mr. Chadha's computers, along with 75 emails attaching these files, the "vast majority" of which Syntel had not previously produced, and argued that the requested production was appropriate because of Syntel's previous withholding of relevant documents. (*Id.* at 2-3.)

In opposition, Syntel argued that TriZetto's request was an unwarranted expansion of discovery and stated that it already had produced all relevant and responsive material from Mr. Chadha's files. (*Id.* at 6-7.) Syntel disputed any deficiency in its previous production from Mr. Chadha's files and maintained that it had properly excluded documents under the express terms of the ESI protocol, including the applicable date range. (*Id.* at 8-9.) Syntel also asserted that the mere fact that Mr. Chadha had TriZetto documents that had not been previously produced did not reveal any discovery deficiency because, among other reasons, he appropriately had access to TriZetto documents through Syntel's own customers. (*Id.* at 9-10.)

During a discovery conference with the parties on October 30, 2017, Judge Ellis stated that he understood Defendants' request to mean that Defendants' counsel would be permitted to do the "screening for materiality" instead of Plaintiffs' counsel and denied the request. (10/30/17 Hr'g Tr.,

ECF No. 290, at 47-48.) Defendants then raised the issue that they believed that at least one of Mr. Chadha's laptops and two USB drives identified by the Forensic Examiner never had been screened. (*Id.* at 49.) Judge Ellis ruled that to the extent that devices have been discovered that were associated with Mr. Chadha[,] "they need to be screened and I have no reason to doubt that [Plaintiffs' counsel Anne Sekel] won't do that and won't do what needs to be done after they've run the search terms." (*Id.*) Plaintiffs argued that requiring Syntel to search additional devices was a significant expansion of the ESI protocol, but Judge Ellis ordered that, even if that were the case, he found it "relevant to search the devices that interface[d]" with Mr. Chadha's laptop. (*Id.* at 50-51.)

## VIII.    Defendants' January 16, 2018 Letter-Motion For 30(b)(6) Witness

Following Judge Ellis's retirement, this case was reassigned to me on December 4, 2017. On January 16, 2018, Defendants filed a Letter-Motion seeking to compel Syntel to provide a witness to testify regarding: (1) Syntel's efforts to preserve 87 computers that it identified as unavailable during the forensic examination (Topic 5); (2) facts and circumstances relating to Syntel's document preservation, collection and production in this action (Topics 3 and 4); and (3) facts and circumstances relating to Syntel's efforts to collect and identify relevant documents from Mr. Chadha, including from the two USB devices identified by the Forensic Examiner (Topics 1 and 2). (1/16/18 Letter, ECF No. 317, at 1-3.)

With respect to Topics 1 and 2, TriZetto explained that, in response to Judge Ellis's October 30, 2017 Order, Syntel had produced only one email thread and one calendar invite. (*Id.* at 3.) Moreover, TriZetto claimed that Syntel refused to provide information regarding whether the USB devices identified by the Forensic Examiner were located and/or searched and, if so, the hit counts for those devices. (*Id.*) Syntel opposed Defendants' motion, contending that no further inquiry was warranted with respect to any of the topics raised by Defendants. (1/19/18 Letter, ECF No. 316, at 1-

3.) With respect Mr. Chadha's materials, Syntel stated that it had complied fully with the October 30, 2017 Order. (*Id.* at 3.)

Following oral argument, the Court ordered Syntel to provide a witness regarding the number of search term hits for each of Mr. Chadha's computers and USB devices referenced in the Forensic Examination Report, as well as facts and circumstances relating to Syntel's document collection and production and preservation efforts, and relating to the unavailability of the specific computers listed by the Forensic Examiner as missing or destroyed. (1/30/18 Order, ECF No. 324.) Based on Syntel's representation that all responsive documents had been produced, the Court did not require Syntel to produce a witness regarding the contents of Mr. Chadha's files or the facts and circumstances under which Mr. Chadha acquired any TriZetto documents, believing that to do so would require Syntel to prepare a witness to testify regarding non-responsive documents. (*Id.*)

Syntel designated Mr. Chadha as its 30(b)(6) witness for Topics 1 and 2; Chief Administrative Officer and General Counsel Daniel Moore as its 30(b)(6) witness for Topics 3 and 4; and Operations Manager Alex Philip as its 30(b)(6) witness for Topic 5. (Pls.' 2/6/18 Letter, ECF No. 329, at 2.) Mr. Chadha's deposition was held on February 20, 2018. (*See* 3/26/18 Joint Letter, ECF No. 374, at 3.)

## IX.     Cross-Motions For Sanctions Regarding Deposition Conduct

On February 5, 2018, Defendants filed a Letter-Motion seeking the Court's intervention regarding what it contended was Syntel's improper coaching of witnesses during depositions. (2/5/18 Letter, ECF No. 330, at 1-2.) Defendants cited to several speaking objections made by Syntel's counsel, Todd Norbitz, during two depositions of Syntel witnesses. (*Id.*) Syntel argued in response that its counsel acted appropriately in the face of Defendants' harassing questioning. (2/6/18 Letter, ECF No. 329, at 1-2.)

On February 6, 2018, the Court entered a Text Only Order stating, "counsel for Syntel shall refrain from making speaking objections when defending depositions." (2/6/18 Order.) The Court further ordered that: "Objections as to the form of the question shall be made by opposing counsel, who shall simply state, 'Objection.' The objecting counsel shall not speak any additional words concerning the basis of the objection unless a clarification is requested. Any clarification as to the basis of the objection shall be stated as succinctly as possible, such as, 'Argumentative,' or 'Ambiguous,' or 'Asked and Answered.' Any violations of these guidelines may lead to the imposition of sanctions." (*Id.*)

On February 27, 2018, Defendants submitted a letter to the Court stating that, since the Court's February 6, 2018 Order, counsel for Syntel had continued to make improper speaking objections, and seeking sanctions. (2/27/18 Letter, ECF No. 362, at 1.) On February 28, 2018, the Court ordered Syntel to show cause why it should not be sanctioned for what appeared to the Court to be violations of the February 6, 2018 Order. (2/28/18 Order, ECF No. 342.)

On March 5, 2018, Syntel filed its response to the Court's Order, arguing that its conduct was appropriate and sanctions were, therefore, unwarranted. (3/5/18 Mem. L., ECF No. 346.) In fact, Syntel denied that any of the "instances in which Syntel's counsel stated more than just objection on the record" constituted a speaking objection. (*Id.* at 11.) Regarding the particular objection made by Mr. Norbitz during the deposition of Syntel's witness Manish Mehta, Syntel argued that Defendants' counsel, Gianni Cutri, had made a "misstatement that appeared intentionally designed to mislead the witness[,]" and therefore, "Syntel's counsel was within his rights to note the misstatement on the record." (*Id.* at 8.)

The questions and answers at issue were as follows:

Q. [Referring to Mehta's Declaration] It says, "I am a client partner and engagement director of Syntel Inc., an affiliate of plaintiff Syntel Sterling Best Shores Mauritius Limited 'Syntel.'" Here you are defining "Syntel" as Syntel Sterling Best Shores Mauritius Limited. Right?

MR. NORBITZ: Objection. That is not what this says.

MR. CUTRI: Just "objection," sir.

MR. NORBITZ: Objection. You are not reading accurately the record. You are not reading what this is saying.

(Ex. A to Defs.' 2/27/18 Letter, ECF No. 362-1, at 82, lines 3-17.)

The Court held a conference on the issue of sanctions on March 13, 2018. (3/13/18 Hr'g Tr., ECF No. 372.) During the conference, the Court pointed out that Syntel's counsel attempted to justify Mr. Norbitz's speaking objection during Mr. Mehta's deposition by arguing that Mr. Cutri was misreading a document into the record. (*Id.* at 3.) However, the Court reviewed the document and the deposition transcript and determined that only difference was the word "an," the lack of which did not change the meaning of the sentence. (*Id.* at 3-4.) Mr. Norbitz responded that his objection focused on Mr. Cutri's use of the word "you" when referring to a definition in the MSA, namely Mr. Cutri's statement to Mr. Mehta: "Here you are defining Syntel as Syntel Sterling Best Shores Mauritius." (*Id.* at 8.) Mr. Norbitz argued that this statement improperly tried to impute that Mr. Mehta himself was defining the term Syntel as Syntel Sterling Best Shores Mauritius. (*Id.* at 8-13.) Mr. Norbitz refused to concede, however, that he had made a speaking objection.[7] (*Id.* at 13.)

---

[7] In addition, in the memorandum submitted by Syntel in opposition to the motion for sanctions relating to the speaking objections, which was signed by Ms. Sekel, Syntel repeatedly refused to acknowledge that Mr. Norbitz had violated the court order prohibiting speaking objections. (*See*, *e.g.*, Opp. Mem., ECF No. 346, at 1 ("every objection made by Syntel's counsel was entirely lawful and appropriate"), 9 ("it is clear that none of the instances of supposed 'speaking objections' identified by Defendants, nor any of the other instances in which Syntel's counsel stated more than just 'objection' on the record, constitute a speaking objection in violation of the 2/6/18 Order").)

On March 14, 2018, the Court entered an Order reserving decision on the pending cross-motions for sanctions[8] until after the close of fact discovery. (3/14/18 Order, ECF No. 361.)

## X.    Close Of Fact Discovery, Conference Before Judge Schofield And Remaining Disputes

Fact discovery closed on March 7, 2018. (*See* Stipulation, ECF No. 306.) On March 13, 2018, Judge Schofield held a conference with the parties regarding Syntel's objections to Magistrate Judge Ellis's August 25, 2017 Order precluding Syntel from offering or presenting certain evidence at trial. During the conference, Judge Schofield read into the record her oral opinion overruling Syntel's objections. (3/13/18 Tr., ECF No. 369.) Of significance to the pending motion, Judge Schofield articulated certain categories of discovery that were "compelled" by Judge Ellis's June 29, 2016 Order, which she previously upheld over Syntel's objection. Judge Schofield stated that the "compelled discovery" included: "any document that in whole or in part contains information derived directly or indirectly from TriZetto, the identities of each person who obtained, distributed, received or used any information contained in such documents, and any additional communications relating to them." (*Id*. at 6, lines 3-7.) This language was derived by Judge Schofield from one of the bullet points contained in the parties' May 12, 2016 Joint Letter that formed the basis for Judge Ellis's June 29, 2016 Order. Notably, Syntel's counsel did not raise any issue with Judge Schofield's articulation of the "compelled discovery."

Subsequently, the parties requested an extension of the fact discovery deadline in order to take additional deposition testimony and the Court ordered the parties to meet and confer regarding

---

[8] In addition to opposing Defendants' motion for sanctions regarding Syntel's counsel's speaking objections, Syntel filed a cross-motion alleging discovery misconduct by Defendants' counsel during depositions. As the Court noted during the hearing on March 13, 2018, it does not seem that Syntel would have filed its cross-motion if Defendants had not filed their motion for sanctions based upon Syntel's counsel's speaking objections. (3/13/18 Hr'g Tr., ECF No. 372, at 49-53.) The Court does not find Defendants' counsel's conduct sanctionable, and therefore, in its discretion, denies Plaintiffs' cross-motion.

a proposed resolution. (*See* 3/14/18 Order, ECF No. 361, ¶ 5.) On March 26, 2018, the parties submitted a Joint Letter raising disputes regarding Syntel's 30(b)(6) testimony, including Mr. Moore's testimony regarding Syntel's document collection, production and preservation; Mr. Chadha's preparedness to testify as to search term hits; and the designation of a witness for seven other topics broadly related to Syntel's alleged misappropriation of TriZetto's information.[9] (3/26/18 Joint Letter, ECF No. 374.)

Following a telephone conference with the parties on March 27, 2018, the Court ordered each party to file a letter on March 30, 2018 setting forth its position regarding any remaining discovery disputes. (3/27/18 Order, ECF No. 370.) The Court further ordered that any discovery dispute not raised in these letters, or subsequent responses, would be deemed waived. (*Id.* ¶ 3.)

## XI.    Defendants' March 30, 2018 Letter-Motion

In their March 30, 2018 Letter-Motion, Defendants argued that Mr. Moore and Mr. Chadha were not adequately prepared as 30(b)(6) witnesses and sought to compel Syntel to provide an adequately prepared witness on the topics for which they had been designated. (Defs.' 3/30/18 Letter-Motion, ECF No. 376, at 5.) Defendants also sought sanctions pursuant to Federal Rule of Civil Procedure 37. (*Id.*) Regarding the other 30(b)(6) topics, Defendants argued that Syntel refused to provide a witness and sought various preclusion orders prohibiting Syntel from introducing evidence regarding, for example, its acquisition from or disclosure to any third party regarding any information, documents, or files related to FACETS. (Proposed Order, Ex. Y to Defs.' 3/30/18 Letter-Motion, ECF No. 376-25, ¶¶ 4-10.)

Syntel opposed, arguing that Mr. Moore was adequately prepared; no additional testimony

---

[9] These topics included, among other things, information, documents or files related to FACETS that Syntel acquired from or disclosed to any third party, including UHG. (3/26/18 Joint Letter, at 3-4; Ex. A at 10.)

was warranted regarding search terms; and Syntel had timely challenged the remaining seven 30(b)(6) topics.[10] (Pls.' 4/5/18 Letter, ECF No. 378.) Syntel also asserted that the number of search term hits was only within the knowledge of counsel and, therefore, protected by the work product privilege. (*Id.* at 3.)

Following oral argument on April 10, 2018, the Court entered an Order on April 17, 2018 on what should have been the final disputes pertaining to fact discovery. (4/17/18 Order, ECF No. 383.) With respect to search term hits, the Court found that Syntel had failed to comply with the January 30, 2018 Order. (*Id.* at 2.) However, instead of requiring additional deposition testimony, the Court ordered Syntel to provide the number of search term hits to Defendants. (*Id.* at 3-4.) Further, the Court agreed with Defendants that Mr. Moore was not adequately prepared, and ordered Syntel to produce him for an additional two hours of testimony. (*Id.* at 4.) The Court also ordered Syntel to provide a witness to testify with respect to six of the other seven 30(b)(6) topics requested by Defendants, as modified by the Court to reduce the burden on Syntel. (*Id.* at 8-12.) On April 24, 2018, Syntel provided Defendants with the search term hits for each of Mr. Chadha's devices listed in the Forensic Examination Report. (Ex. B to Pls.' 5/24/2018 Letter, ECF No. 400-2.)

## XII.    Defendants' May 22, 2018 Letter-Motion

On May 22, 2018, Defendants filed a Letter-Motion seeking to compel production of documents that hit on the search terms from Mr. Chadha's devices based on the large number of hits. (Defs.' 5/22/18 Letter, ECF No. 393.) Defendants reiterated that Judge Ellis ordered Syntel to produce "any documents or information derived directly or indirectly from TriZetto and which contain the words 'confidential,' 'proprietary' or any similar confidentiality legend, or which are attached to other

---

[10] Syntel separately moved to vacate these topics pursuant to Rule 26(b)(2)(C), arguing that they were not relevant or proportional and were overbroad. (*See* Pls.' 3/30/18 Letter-Motion, ECF No. 377, at 5-6.)

documents or communications referencing the confidential or proprietary nature of TriZetto's information[,]" but that despite this Order, the Forensic Examiner had found materials in Mr. Chadha's devices with a TriZetto copyright disclaimer that Syntel had never produced. (*Id.* at 2; Ex. 6.)

Defendants then argued that the large number of search term hits on Mr. Chadha's devices undermined Syntel's claim that it had produced all relevant documents. (*Id.* at 3.) Defendants pointed out that the search term "TriZetto" resulted in 24,900 hits, of which 1,801 documents had been produced; the search term "TZ" resulted in 11,578 hits, of which 1,150 had been produced; the search term "FACETS" resulted in 136,770 hits, of which 3,511 documents had been produced; and the search term "Customer Exchange" (run, according to Syntel, as customer AND exchange) resulted in 409 hits, of which 119 documents had been produced.[11] (*See id*; *see also* Ex. 7 to Defs.' 5/22/18 Letter, at 7.) Defendants asked the Court to order Syntel to produce (or log for privilege) the documents that hit on any of these four key search terms. (*Id.* at 4.)

In response, Syntel argued that search term hits could not be used as a proxy for responsiveness. (Pls.' 5/24/18 Letter, ECF No. 394, at 2.) Moreover, Syntel disputed Defendants' contention that responsive materials had been improperly withheld from production. (*Id.* at 3 n.4.) Syntel asserted that "[s]ince the Forensic Examiner searched for certain 'unique identifiers' drawn from specific TriZetto files – which search terms were not identical to those agreed-upon as part of the ESI protocol – it is not surprising or indicative of any discovery failing on Syntel's part that the

---

[11] On June 7, 2018, Syntel filed a letter informing the Court that the search term hits provided to Defendants in April 2018 were incorrect for Mr. Chadha's L430 laptop for two of the relevant search terms: TriZetto and TZ. (Pls.' 6/7/18 Letter, ECF No. 399.) Syntel explained that, due to a coding error by its vendor, the search terms were not properly applied, but that it had corrected the problem and Syntel's production in response to the Court's May 25, 2018 Order was not affected. This correction brought the search term hits for TriZetto across all of Mr. Chadha's devices from 24,900 to 43,723 and the total search term hits for TZ from 11,578 to 15,152.

Examiner identified documents that were not required to be produced earlier." *Id.*

Defendants replied and stated that one of their main theories of misappropriation was that "Mr. Chadha, who had no authorized access to TriZetto's confidential, trade secret information, improperly utilized Syntel's access to TriZetto's materials, including via TriZetto's customers, to download and utilize TriZetto documents[,]" and that "Mr. Chadha used his laptop as the storehouse for many of the TriZetto documents that Syntel misappropriated, but ha[d] actively tried to conceal these materials from production." (Defs.' 5/25/18 Reply, ECF No. 395, at 1.)

On May 25, 2018, the Court held a telephone conference regarding the issues raised in Defendants' letter. (5/25/18 Hr'g Tr., ECF No. 396.) The Court first asked Plaintiffs to articulate what responsiveness standard they used with respect to documents that hit on TriZetto, TZ, FACETS and Customer Exchange and why, given Defendants theory of misappropriation, documents containing those search terms that were found on Mr. Chadha's computers were not, by their very existence, responsive. (*Id.* at 4-6.) Plaintiffs' counsel did not articulate a particular standard, but instead explained why a search term hit was not indicative of responsiveness. For example, Ms. Sekel explained that the terms "customer" and "exchange" were run such that any documents containing both terms were returned and, therefore, those terms could be in a document that had nothing to do with TriZetto. (*Id.* at 6.)

Similarly, Ms. Sekel argued that "facets" is a word that has another meaning in the English language, and therefore "does not mean anything with respect to responsiveness." (*Id.*) Finally, with respect to TriZetto and TZ, Ms. Sekel stated "that there are any number of references to TriZetto and to TZ that would have to do only with internal administration" and "would have nothing to do with any TriZetto confidential material, any [ ] misappropriation of TriZetto material, absolutely nothing to do with the facts underlying this case." (*Id.* at 7.) Ms. Sekel reiterated that "the Court made certain

orders about what was to be produced, and that's what has been done here[.]" (*Id.* at 8.) As an example, she confirmed that Syntel produced "documents that hit on the word TriZetto and also contained a confidentiality legend." (*Id.*)

In a follow-up inquiry, the Court asked if Ms. Sekel was saying that none of the documents that hit on the term TriZetto or TZ emanated from TriZetto. (*Id.* at 11-12.) Ms. Sekel responded "I can confirm that what we have produced from Mr. Chadha's files are the documents that are both relevant and responsive to the discovery demands in this case." (*Id.* at 12.) The Court again asked if any of the documents that had not been produced emanated from TriZetto, to which Ms. Sekel responded, "to the best of my knowledge they do not emanate from TriZetto . . . and they are not responsive to the requests in this case." (*Id.*)

Syntel did not agree that the fact that there were TriZetto documents on Mr. Chadha's devices was itself relevant, and instead expressed concern that such a standard, which in Syntel's view was "not clearly defined," was an expansion of the agreed-upon ESI protocol. (*Id.* at 12-14, 21-29.) However, the Court found that the disparity between the hit counts from the devices and the hit counts in the documents that had been produced was great enough to call into question whether or not the appropriate standard of review was applied. (*Id.* at 33.) As such, the Court ordered Syntel to produce all of the non-privileged documents that hit on the search term "TriZetto." (5/25/18 Order, ECF No. 392.)  If Defendants could then make a showing that a substantial number of documents should have been produced during discovery, the Court authorized Defendants to make an application for further relief. (*Id.*)

## XIII.   Defendants' June 11, 2018 Letter-Motion

On June 11, 2018, Defendants filed a Letter-Motion regarding the documents Syntel produced in response to the Court's May 25, 2018 Order. (Defs.' 6/11/18 Letter-Motion, ECF No. 408.)

Defendants stated that, in response to the Court's May 25, 2018 Order, Syntel produced 11,772 documents, 7,533 of which had not been produced previously. (*Id.* at 1.) Defendants highlighted four sets of documents (emails plus attachments) that they contended should have been produced based on the fact that they contained the words "confidential," "proprietary" or a similar confidentiality legend, or which were attached to other documents or communications referencing the confidential or proprietary nature of TriZetto's information. (*Id.* at 2-5.)

In response, Syntel consented to produce documents that hit on the remaining three search terms (TZ, FACETS and Customer Exchange) and stated that "[i]n so far as Defendants claim[ed] that Syntel's recent production of material reflect[ed] documents that should previously have been produced, the fulsome production made on June 4, 2018 of over 86,000 pages (and the subsequent productions that Syntel [ ] committed to make) address[ed] and remed[ied] any good faith disagreement between the parties regarding the scope of production required from Mr. Chadha's files." (Pls.' 6/14/18 Letter, ECF No. 404, at 2.) In their Reply, Defendants pointed out that Syntel had not offered any explanation for its failure to produce documents during the discovery period. (Defs.' 6/15/18 Reply, ECF No. 407, at 1-4.) Defendants also identified additional documents that they contended should have been produced and asked the Court to set a briefing schedule regarding sanctions. (*Id.*)

The Court held a telephone conference with the parties on June 18, 2018. (6/18/18 Hr'g Tr., ECF No. 412.) To start, the Court asked Ms. Sekel to explain the basis for her statement during the May 25, 2018 conference that she believed that all documents that emanated from TriZetto had been produced. (*Id.* at 4.) Ms. Sekel stated that it was not until the May 2018 conference that Syntel understood that if there was any TriZetto material, whether directly or indirectly received, in Mr. Chadha's files, that such material was relevant and should be produced. (*Id.* at 6.) She explained that

the basis for her belief that all documents that emanated from TriZetto has been produced "was the fact that documents that were provided to Syntel from TriZetto in the context of – in the context of Syntel's work for TriZetto and which arguably were marked confidential or proprietary and were responsive and relevant in this matter had been produced." (*Id.* at 9.)

Ms. Sekel again represented that "to the extent there were relevant and responsive documents that emanated from TriZetto and were confidential – beared a [legend] that said confidential and proprietary [ ] those were in fact produced." (*Id.*) She also represented that if there was something that was called for by a document request or called for by a Court Order as being responsive, Syntel did not "overlay on top of that a concept of relevance so as to reduce the population of documents produced based upon notions of relevance." (*Id.* at 10.)

However, when the Court asked Ms. Sekel about Exhibit 6 to Defendants' Letter-Motion, showing a spreadsheet with a TriZetto confidentiality legend, which on one tab had been edited to remove the word TriZetto and replace it with "yyyyyy[,]" she responded that a reviewer would not have tagged that document as responsive because "on its face this document is just between two people whose job it is to create solutions for FACETS, and so a reviewer looking at this document would say this is just two people in the usual course of business working on the work that they are designing – they are asked to do in order to facilitate TriZetto's using TriZetto's platform[.]" (*Id.* at 14-15.) Ms. Sekel further explained that "based on the discovery demands that were served by Defendants in the case and in light of the scope of relevance given the claims and the defenses in the case, attorneys would review this document, see it as one that reflected only usual course of business communications and use of spreadsheets, and then deem it to be not responsive to any discovery demand in the case[.]" (*Id.* at 15.)

Near the end of the telephone conference, the Court directed Defendants to file their

sanctions motion regarding Syntel's discovery misconduct after Defendants had reviewed the additional documents that the Court was ordering to be produced by Syntel.[12] (*Id*. at 58.) The Court asked Defendants to be specific about the Court Orders that they claim were violated by Syntel. (*Id*. at 59.) The Court also instructed Syntel that, if it claimed there was no violation of a Court Order, it needed to articulate the reason why there was no violation. (*Id.*) In addition, the Court asked Syntel to explain why certain documents that emanated from TriZetto (*e.g.*, the "yyyyyy" document) were not produced. (*See id*. ("is it the Honigman firm [Syntel's prior law firm] that did the review and made the call, was it your law firm [Foley], was it the client?").)

## XIV.    Defendants' Motion For Sanctions

Defendants filed their Motion for Sanctions on July 30, 2018. Defendants asserted that Syntel violated the June 29, 2016 Order and the October 30, 2017 Order by failing to produce responsive documents from Mr. Chadha. (Mot. For Sanctions at 2-9.) Defendants also asserted that Syntel failed to preserve its "live inventory" of computer assets in violation of the January 30, 2017 Forensic Examination Order. (*Id*. at 2, 11-13.) Finally, Defendants asserted that Syntel failed to search all non-custodial ESI in violation of its discovery obligations. (*Id*. at 2, 9-11.)

Syntel filed its opposition on August 17, 2018.  At the outset, Syntel categorically denied that it had engaged in any discovery misconduct, stating "Syntel has violated no order; made no misrepresentations; and flouted no Federal Rule. To the contrary, throughout the extensive course of discovery in this matter, Syntel, in utmost good faith, has expended significant resources in its effort

---

[12] On the same day as the telephone conference, the Court entered an Order requiring Syntel to produce all non-privileged documents from Mr. Chadha's devices that hit on any of the following search terms: "TriZetto," "TZ," "Facets," and "Customer Exchange." (6/18/18 Order, ECF No. 405, ¶ 1.) The Court also set a schedule for briefing, as well as an August 28, 2018 in-person hearing, regarding Defendants' motion for sanctions. (Id. at ¶ 5.)

to comply with its discovery obligations." (Opp. at 1.) Syntel asserted that it fully complied with all of Defendants' discovery requests and the Court's Orders. (Opp. at 5-22.) With respect to the specific documents identified by Defendants in their motion, Syntel argued that only four documents should have been produced, and for those documents the "key element," *i.e.*, the "confidentiality legend," was found in a hidden document header visible only in native format, and therefore were simply "missed by Syntel's document reviewers." (Opp. at 20.) Syntel did not address whether this was due to action or inaction by the Honigman firm, Syntel's current counsel (Foley) or Syntel itself.

Further, Syntel asserted that it did not violate the Forensic Examination Order since it was diligent in seeking to identify the computers that were assigned to the 16 (out of nearly 100) custodians whose computers could not be located. (*Id*. at 23-24.) Finally, with respect to non-custodial ESI, Syntel asserted that it acted properly in only searching the non-custodial drive for the Syntel/TriZetto team and a special drive established for the purpose of gathering litigation material. (*Id*. at 33.) Defendants filed their Reply on August 25, 2018. (ECF No. 440.)

**XV.     Lead-Up To Oral Argument On Sanctions Motion**

On August 23, 2018, the Court entered an Order requiring the parties to "each provide to the Court by letter filed on ECF an estimated number of documents produced by Plaintiffs pursuant to the Court's June 18, 2018 Order (ECF No. 405) that in whole or in part contain information derived directly or indirectly from The TriZetto Group, and any additional communications relating to them." (8/23/18 Order, ECF No. 421.)  The same day, Syntel sent a letter to the Court asking for a conference "to obtain from the Court clarification of the [August 23, 2018] Order and to address certain questions regarding the Order's requirements." (Pls.' 8/23/18 Letter, ECF No. 422.)

The Court held a telephone conference with the parties on Friday, August 24, 2018. During the conference, the Court explained to the parties that the wording of the August 23, 2018 Order

26

"came from the March 13, 2018, transcript of proceedings before Judge Schofield, ECF 369, lines 3 to 7." (8/24/18 Tr., ECF No. 433, at 3.) Those transcript lines provide that the discovery "compelled" by Judge Ellis includes "any document that in whole or in part contains information derived directly or indirectly from TriZetto . . . and any additional communications relating to them." (3/13/18 Tr. at 6.) Syntel's counsel then for the first time suggested that Judge Schofield "got that some small point wrong," and that the abbreviated language contained in Judge Schofield's July 29, 2016 Order (ECF No. 187) affirming Judge Ellis's June 29, 2016 Order is what "governs the situation and governs the parties' production here." (8/24/18 Tr. at 12.)

In summarizing the June 29, 2016 Order that she was affirming, Judge Schofield had described that Order as requiring Syntel to "(1) produce various health care-related tools and code; (2) produce documents related to a remote drive; and (3) supplement their interrogatory responses." (7/29/16 Order, ECF No. 187, at 1.) Judge Schofield did not expressly refer to the bullet points contained in the parties' May 29, 2016 Joint Letter on which Judge Ellis's June 29, 2016 Order was based, and Ms. Sekel seemed to suggest that this contributed to "general confusion."[13] (*See* 8/24/18 Tr. at 12.)

In accordance with the Court's August 23, 2018 letter, the parties submitted letters to the Court on August 27, 2018, the day before oral argument on the Defendants' sanctions motion. Defendants in their letter stated that "[b]ased on TriZetto's review, there are at least 1,592 documents [produced pursuant to the June 18, 2018 Order] 'that in whole or in part contain information derived directly or indirectly from The TriZetto Group, and any additional communications relating to them.'" (Defs.' 8/27/18 Letter, ECF No. 427, at 1.) Defendants also stated

---

[13] Notably, as discussed above, Syntel did not address Defendants request for documents emanating from TriZetto when it objected to Judge Ellis's June 29, 2016 Order. Thus, it is not surprising that Judge Schofield's July 29, 2016 Order did not specifically reference that bullet point. *See supra*, Procedural History, Section III.

that there were 57 documents "derived directly or indirectly from TriZetto and which contain the words 'confidential,' 'proprietary' or any similar confidentiality legend, or which are attached to other documents or communications referencing the confidential or proprietary nature of TriZetto's information.'" (*Id*. at 2.)

In its letter, Syntel stated that "Syntel's document productions pursuant to the Court's June 18 Order contain approximately 100 documents with information that appears to be derived from The TriZetto Group." (Pls.' 8/27/18 Letter, ECF No. 426, at 3.) Syntel again articulated its view of its document production obligations under the prior Court Orders. Syntel stated that the "information and material [that Syntel was required to produce] in response to Interrogatories Nos. 1-6, included confidential TriZetto information, as well as TriZetto material received in the context of the parties' contractual relationship. Rightfully, however, it did not include every single instance of TriZetto information that is otherwise non-confidential and was received from Syntel's third party clients – like United Health Group – to whom Syntel provided services directly and not pursuant to the Master Services Agreement." (*Id*. at 2.)

## XVI.    **Oral Argument On Sanctions Motion**

The Court held oral argument on August 28, 2018. (8/28/18 Hr'g Tr., ECF No. 453.) During oral argument, the Court again asked Ms. Sekel whether she thought the "yyyyyy" document was responsive. She responded that a reviewer "would not have looked at this document and immediately said, this is something that needs to be produced." (*Id*. at 57-58.) When the Court asked why that would have been the case, given that the document has a confidentiality stamp, Ms. Sekel responded that "[i]f a document was a TriZetto-derived document or a document that contained TriZetto information and was stamped with a confidentiality legend, yes, that is one hundred percent our position, that that is a document that was responsive to the interrogatory requests and should have

been produced and, in fact, was produced." (*Id.* at 58-59.) The Court then asked whether a fulsome production was made of documents that came to Syntel indirectly through UHG or other customers. (*Id.* at 67-68.) Ms. Sekel said it would depend on whether it was "TriZetto Data" as defined in the MSA, but clarified that "[t]here's twofold documents that are referred to in interrogatories Nos. 1 through 6. The first is TriZetto material that had the confidentiality legend, and the second is TriZetto data as defined under the MSA as materials that is received in the context of the TriZetto-Syntel contractual relationship." (*Id.* at 70.)

With respect to the October 30, 2017 Order, Ms. Sekel explained that documents from Mr. Chadha's original laptop, which previously had been reviewed for production, were compared to the documents on the second (L430) laptop and only the new documents were reviewed. (*Id.* at 72-73.) Ms. Sekel stated that the standard of relevance was whether a document had been requested in the litigation or compelled by any Court Order. (*Id.* at 73.) She explained that USB devices identified in the Forensic Examination Report were also searched, but "there was nothing on the USB devices to produce." (*Id.*)

In connection with the non-custodial ESI point, Mr. Cutri on behalf of Defendants noted that one of the drives that Syntel did not search to produce documents in this case was the drive used by the PCT team that Mr. Chadha led. This was despite the fact that the Forensic Examination Report stated that there was relevant data on that drive. (*See id*. at 115-25.) As for Syntel's alleged failure to preserve the live inventory of computer assets and inform the Forensic Examiner that certain computers were located in a storeroom in India, the Court first asked Defendants to address the issue of whether this dispute had been waived. (*Id.* at 139.) Defendants responded that they considered it be an ongoing discovery issue, which also tied in to Mr. Moore's second deposition in May 2018. (*Id.* at 141.)

**XVII.** <u>**Post-Oral Argument Submissions**</u>

On August 29, 2018, the Court entered an Order requiring certain supplemental submissions from the parties. (8/29/18 Order, ECF No. 428.) First, the Court required the parties to "provide the Court with hard copies of all documents derived directly or indirectly from TriZetto and which contain the words 'confidential,' 'proprietary' or any similar confidentiality legend, or which are attached to other documents or communications referencing the confidential or proprietary nature of TriZetto's information." (*Id*. ¶ 1.) The Order also directed the parties to "confer regarding whether or not they agree as to the number of such documents and/or which [of] such documents are duplicates." (*Id*.) In addition, the Order required Syntel to "run the search terms 'TriZetto,' 'TZ,' 'Customer Exchange' and 'FACETS' against the Forensic Examiner's copy of the PCT drive for the date range January 1, 2013 through the date the drive was collected, and provide the hit counts to Defendants and the Court." (*Id*. ¶ 3.)

On September 14, 2018, the parties submitted a Joint Letter in response to paragraph 1 of the August 29, 2018 Order. (9/14/18 Joint Letter, ECF No. 454.) In that letter, Defendants assert that there are 60 documents derived directly or indirectly from TriZetto and which contain the words "confidential," "proprietary" or any similar confidentiality legend, or which are attached to other documents or communications referencing the confidential or proprietary nature of TriZetto's information. (*Id*. at 1.) By contrast, Syntel asserts that there are only four. (*Id*.)

At the Court's request, the parties provided the Court with hard copies of all the documents referenced in the Joint Letter. Syntel also submitted its own letter, dated September 13, 2018, in response to paragraph 3 of the August 29, 2018 Order. In that letter, Syntel provides the following hit

counts for the search terms on the PCT drive:

| Term | Number of Hits |
|---|---|
| TriZetto | 1,291 |
| TZ | 241 |
| FACETS | 14,816 |
| "Customer Exchange" | 48 |

(Pls.' 9/13/18 Letter, ECF No. 455, at 1-2.)

**DISCUSSION**

I.    **Legal Standards**

    A.    **The Court's Authority**

Pretrial matters "not dispositive of a party's claim or defense" may be referred to a Magistrate Judge for hearing and decision, subject to review by the District Judge on a "clearly erroneous" or "contrary to law" standard if a party files timely objections. Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Motions for dispositive relief may be referred to a Magistrate Judge for report and recommendation, subject to *de novo* review by the District Judge. Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1)(B).

Motions seeking Rule 37(b) sanctions for noncompliance with the Court's discovery orders "are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction employed disposes of a claim." *Seena Int'l Inc. v. One Step Up, Ltd*., No. 15-CV-01095 (PKC)(BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (internal quotation and citation omitted). "The critical issue . . . is what sanction the magistrate judge actually imposes," not what sanction the moving party seeks. 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3068.2, at 383 (Thomson Reuters 2014). Thus, "If a moving party requests a

dispositive sanction, but the magistrate judge declines to impose it, the judge's decision is governed by Rule 72(a)," and may be modified or set aside only if "clearly erroneous or contrary to law." *Steele v. Costco Wholesale Corp.*, No. 03-CV-0713 (NG) (MDG), 2005 WL 1068137, at *2 (E.D.N.Y. May 6, 2005).

Because the sanctions I find appropriate do not dispose of any claim or defense in the action, I have the authority to impose them pursuant to Rule 72(a) and § 636(b)(1)(A).

### B. <u>Attorney Obligations Generally</u>

"An attorney is an officer of the court and owes the court fiduciary duties and loyalty." *RCI HV, Inc. v. Transtec (RC) Inc.*, No. 02-CV-04307 (CSH), 2004 WL 1197246, at *11 (S.D.N.Y. May 28, 2004) (internal citation omitted). Judge Cardozo famously articulated the standard for fiduciary duties as follows: "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928). Moreover, attorneys owe an ethical duty of candor in all of their dealings with the Court. *See, e.g.*, *Mason Agency Ltd. v. Eastwind Hellas SA*, No. 09-CV-06474 (DLC), 2009 WL 3169567, at *2 (S.D.N.Y. Sept. 29, 2009) ("The rules of professional responsibility . . . impose upon attorneys a duty of candor in all representations they make before a tribunal."). In order for the Court to conduct proceedings properly, it must be able to rely upon representations made on the record by attorneys licensed to practice before it. *Accord Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015) ("'the discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention, and . . . [the] Rules rely on the honesty and good faith of counsel in dealing with adversaries.'") (quoting *Hopei Garments (Hong Kong), Ltd. v. Oslo Trading Co., Inc.*, No. 87-CV-00932 (MBM), 1988 WL 25139, at *3 (S.D.N.Y. March 8, 1988)).

**C.      Rule 37(b) – Failure To Comply With A Court Order**

Rule 37(b) states, in relevant part, that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A); s*ee also Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.").

Sanctions available under Rule 37(b) include directing that certain facts be taken as established, precluding the party from supporting its claims or introducing certain matters in evidence, striking the party's pleadings or portions of its pleadings, staying the action pending compliance, dismissing the party's claims in whole or in part, rendering a default judgment against the party, or holding the party in contempt. *Id.* Rule 37(b) further provides that, "[i]nstead of or in addition to [any other sanction], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The party seeking sanctions bears the initial burden of demonstrating non-compliance with a Court Order. *See Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*, No. 11-CV-01237 (LGS) (JCF), 2013 WL 3056805, at *3 (S.D.N.Y. June 19, 2013).

**D.      Preclusion As Discovery Sanction**

"[B]ecause of the harshness of the sanction of preclusion, such a sanction has been held to be justified only in 'rare situations' evincing culpable conduct by the party against whom the sanction is to be imposed." *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-CV-02275 (JGK) (DF), 2016 WL 11271874, at *33 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 605303

(S.D.N.Y. Feb. 15, 2017) (citation omitted). Therefore, "before precluding a party from introducing relevant evidence because of a discovery violation, a court should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Id.* (internal quotation and citation omitted). In determining whether preclusion is appropriate, courts should consider, *inter alia*: "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Id.* (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).

### E.    Adverse Inference As Discovery Sanction

Although adverse inference instructions typically are used in cases involving spoliation of evidence, a court also may grant an adverse inference instruction for the non-production of evidence upon a showing "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the . . . claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense." *Scantibodies Lab., Inc.*, 2016 WL 11271874, at *35 (internal quotation and citation omitted).

### F.    Striking Pleadings As Discovery Sanction

A sanction for failure to obey a discovery order may include "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii). "Striking an answer, like dismissal or entry of default, is a drastic remedy generally to be used only when the district judge has considered lesser alternatives . . . and it is only appropriate if failure to comply with discovery orders was due to willfulness, bad faith, or any fault of the party sanctioned." *Pelgrift v. 355 W. 51st Tavern Inc.*, No. 14-CV-08934 (AJN), 2016 WL

817470, at *2 (S.D.N.Y. Feb. 23, 2016) (internal quotations and citations omitted).

**G.**     **Determination Of Appropriate Sanctions**

"It is well settled that the court has broad discretion to determine the type of sanction to impose upon a party, based on all the facts of the case." *Scantibodies Lab., Inc.* 2016 WL 11271874, at *18. Rule 37(b)(2) itself "contains two standards—one general and one specific—that limit a district court's discretion in determining which sanctions are appropriate." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 220 (S.D.N.Y. 2013) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." (*Id.*) "Thus, the Court must select sanctions that are commensurate with the non-compliance such that they restore the prejudiced party, as nearly as possible, to the position it would have occupied had the discovery been produced and the evidence disclosed." *Id.* (internal quotation and citation omitted).

Moreover, the Second Circuit has endorsed four factors for a district court to consider in exercising its discretion to impose sanctions pursuant to Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). However, these factors are not exclusive and they need not each be resolved against the sanctioned party. *Id.* Prejudice to the moving party is also a relevant factor, although the Second Circuit has consistently rejected a "no harm, no foul" standard for evaluating discovery sanctions. *Id.* at 148. Thus, a showing of prejudice is not required. A district court is also free to consider "the full record in the case in order to select the appropriate sanction." *Id.* at 144.

## II.    Analysis

### A.    Syntel Failed To Comply With Court Orders Regarding Documents From Mr. Chadha's Devices

Defendants assert that Plaintiffs failed to produce all documents "that, in whole or in part, contain[] information derived directly or indirectly from TriZetto; the identities of each person who obtained, distributed, received, or used any information contained in such documents; and any additional communications relating to them." (Mot. For Sanctions at 4.) After a thorough review of the record, the Court agrees with Defendants that that this provision was encompassed by the Court's June 29, 2016 Order. However, the Court recognizes that there *may* have been some confusion as to the full scope of Judge Ellis's Order.[14] Yet, whatever confusion may have existed with respect to the requirement to produce all documents that contained information derived directly or indirectly from TriZetto, there can be no dispute that Syntel was ordered to produce documents or information derived directly or indirectly from TriZetto and that also contained a confidentiality or proprietary legend. Indeed, this portion of the Order (unlike the broader request for production of documents derived directly or indirectly from TriZetto) was contested by Syntel as part of its appeal of Judge Ellis's Order, and subsequently affirmed by Judge Schofield. (7/29/16 Order, ECF No. 187.) Thus, when considering Syntel's compliance with the Court's discovery Orders, the Court will focus on that narrower requirement.

Defendants have identified approximately sixty documents that they believe were improperly

---

[14] With regard to the issue of Syntel's confusion, the Court notes that Syntel could have sought clarification as to the scope of the June 29, 2016 Order from Judge Ellis or, later, from Judge Schofield, either when she affirmed the Order in July 2016 or in March 2018 when she articulated the scope of what discovery was "compelled." Syntel did not do so, but later expressed surprise by the scope of discovery articulated by this Court. (*See* Pls.' 8/23/18 Letter, ECF No. 422 (seeking clarification as to the Court's request for an estimated number of documents that contained information derived directly or indirectly from TriZetto, and any additional communications relating to them).)

withheld during discovery. (9/14/18 Joint Letter, ECF No. 454, at 1-2.) Syntel contends that there are only eight (four documents plus the corresponding parent emails). (*Id.*) From the Court's review of the documents, as well as the exhibits to the Joint Letter provided by the parties, it seems that Syntel is taking a very narrow view that a document must contain a legend with the word "confidential" or "proprietary" in order for it to fall within the scope of the June 29, 2016 Order. The documents over which the parties disagree broadly fall into three categories: (1) documents with a TriZetto copyright notice or legend; (2) documents marked with a confidentiality legend referencing both TriZetto and Syntel; and (3) documents where the confidentiality legend was in the header or footer of the document.

First, Syntel does not agree that documents bearing a copyright legend for TriZetto (*i.e.*, Copyright (c) 1997-2011 The TriZetto Group, Inc.) fall within the scope of the Order. (*See*, *e.g.*, SYNSUPP-0148167, referenced in Ex. 2 to 9/14/18 Joint Letter, ECF No. 454.) Syntel takes the position that "copyrighted material may be, but is not necessarily confidential," and that the copyrighted documents identified in Defendants' motion "are not marked confidential." Thus, according to Syntel, its failure to produce material that bears a TriZetto copyright in response to the June 29, 2016 Order "is not evidence of a violation of that Order." (Opp. at 20 n.29.)

The Court disagrees. "Proprietary" means "[m]ade and marketed by a person or persons having the exclusive right to manufacture and sell such." *Black's Law Dictionary*, at 1097 (5th ed. 1979). "Copyright" means "[a]n intangible, incorporeal right granted by statute to the author or originator of certain literary or artistic productions, whereby he is invested, for a limited period, with the sole and exclusive privilege of multiplying copies of the same and publishing and selling them." *Id.* at 304. Thus, Copyrighted materials, by definition, are proprietary in nature. Moreover, in the Court's view, the words "Copyright (c) 1997-2011 The TriZetto Group, Inc.," which are included on

documents that Syntel disputes, constitute a "similar confidentiality legend." *Accord Nartron Corp. v. Quantum Research Grp., Ltd.*, 473 F. Supp. 2d 790, 793 (E.D. Mich. 2007) (referring to copyright "legend"); *First Am. Artificial Flowers, Inc. v. Joseph Markovits Inc.*, 342 F. Supp. 178, 181 (S.D.N.Y. 1972) (same). Similarly, the Court finds that documents with a confidentiality legend that referenced both TriZetto and Syntel should have been produced. (*See, e.g.*, SYNSUPP-0128389, referenced in Ex. 2 to 9/14/18 Joint Letter, ECF No. 454.) The Federal Rules of Civil Procedure do not require the use of "magic words" to obtain clearly relevant discovery.[15] *See Younes*, 312 F.R.D. at 709. Thus, a party taking a fair-minded approach to discovery would have produced these documents.

As for Syntel's contention that their document reviewers simply missed some documents because, for example, the confidentiality legend was in the header or footer of the document (*see, e.g.*, SYNSUPP-0145245, referenced in Ex. 2 to 9/14/18 Joint Letter, ECF No. 454, at 5), that argument is undermined by Syntel's inconsistent representations regarding the standard of responsiveness it applied and refusal to admit that certain documents are responsive, even though they are marked confidential. The starkest examples are Syntel's representations regarding the "yyyyyy" document. During the June 18, 2018 conference, Syntel disputed that this document would be responsive, despite the confidentiality stamp, because documents it received in the "usual course of business" were not responsive. (*See* 6/18/18 Hr'g Tr. at 14-15.) At the same time, Syntel continued to represent that it had fully complied with the Court's Orders. (*Id.* at 9.) During oral argument on the pending motion for sanctions, Syntel again disputed the responsiveness of the "yyyyyy" document, while at the same time arguing that it fully complied with the Court's Orders. (*See* 8/28/18 Hr'g Tr. at 57-58.)

---

[15] The Court notes that the First Amended Counterclaims, filed on September 30, 2016, allege that "[d]uring the term of the MSA and thereafter, Syntel engaged in a coordinated, systematic, willful and unlawful effort to abuse its access to TriZetto's restricted repositories of confidential, proprietary, trade secret, and copyrighted materials[.]" (Answer & Am. Counterclaims, ECF No. 215, ¶ 3.)

The Court is unable to reconcile these representations. If Syntel fully complied with the Court's Order to produce documents or information derived directly or indirectly from TriZetto and which contain the words "confidential," "proprietary" or any similar confidentiality legend without overlaying any additional concept of relevance (such as that the document was, in Syntel's view, properly obtained from a third party) the Court does not see how Syntel also can contend that documents in Mr. Chadha's files that contain a TriZetto confidentiality legend would not be responsive. However, if Syntel was applying its own standard of relevance based on what documents it believed Syntel was authorized to possess, its repeated representations to the Court that it had produced all responsive documents from Mr. Chadha's devices were, at best, misleading.[16] Therefore, the Court is not persuaded that Syntel's failure to produce documents is the result of simple human error. Instead, Syntel's failure to produce certain documents appears to have been a deliberate choice to limit the scope of discovery.

Indeed, when considering the overall picture of Syntel's conduct during discovery in this action, it appears to the Court that Syntel has approached discovery with the view that it should narrowly construe Defendants' discovery demands in order to withhold materials. Going as far back as May 2016, Syntel has argued for a restricted view of what documents are responsive based on its theory that Syntel employees were authorized to access TriZetto materials and data. In addition, while Syntel may be correct as to the merits of that argument as it relates to Defendants' misappropriation theory, it is not an appropriate consideration during discovery and it has been repeatedly rejected by this Court.

---

[16] Even if Syntel's counsel's representations were merely negligent, Rule 37 sanctions still would be appropriate. *See Jindan Wu v. Seoul Garden, Inc.*, No. 16-CV-03613 (ARR) (ST), 2018 WL 507315, at *13 (E.D.N.Y. Jan. 22, 2018) ("Defendants' negligent conduct during discovery, however, is still sanctionable under Rule 37.").

Syntel recognized this during the June 29, 2016 conference when its then counsel, Matthew Mrkonic of the Honigman firm, stated that Syntel understood "the Court's ruling that information that Syntel received from third parties is relevant[.]" (6/29/16 Hr'g Tr. at 8.) While Mr. Mrkonic made that statement in the context of discussing Syntel's production of documents from the NAS drive, Syntel also acknowledged, more broadly, that it could not limit its production to information defined as confidential under the MSA, *i.e.* "information that Syntel received from TriZetto." (*Id.*) Judge Schofield affirmed, finding that Syntel's arguments were really arguments on the merits and that the discovery sought by TriZetto was relevant to its counterclaims. (7/28/16 Hr'g Tr. at 5-8.) Thus, Syntel knew in July 2016 that it could not withhold documents on the ground that they had not come directly from TriZetto.

Yet, in October 2017, when Defendants pointed out that the Forensic Examiner had found TriZetto documents on Mr. Chadha's computer that had not been produced, Syntel continued to defend its conduct on the ground that Mr. Chadha "appropriately had access to TriZetto documents through Syntel's own customers." (10/23/17 Joint Letter, Ex. 11 to Mot. For Sanctions, ECF No. 439-11, at 9-10.) At the same time, Syntel represented that it had produced all relevant and responsive material from Mr. Chadha. (*Id.* at 6-7.) Thus, in responding to the Court's October 30, 2017 Order, Syntel reviewed only new documents on Mr. Chadha's devices, despite Defendants repeated assertions that Syntel's previous productions failed to comply with the Court's June 29, 2016 Order. Because Syntel applied the same narrow standard in responding to the October 30, 2017 Order that it had applied in responding to the June 29, 2016 Order, the Court finds that it violated that Order as well.

In sum, it is clear to the Court that Syntel did not conduct discovery in compliance with either the letter or the spirit of the Federal Rules. Instead of repeatedly contesting the relevance or

responsiveness of TriZetto documents found on Mr. Chadha's computers, and elsewhere,[17] Syntel should have produced all relevant information and saved its arguments regarding how and why Syntel possessed the documents for trial. *See Bear, Stearns Funding, Inc. v. Interface Group–Nevada, Inc.*, No. 03-CV-08259 (CSH) (AJP), 2007 WL 4051179, at *2 (S.D.N.Y. Nov. 9, 2007) ("By requiring disclosure of all relevant information, the discovery rules allow ultimate resolution of disputed facts to be based on full and accurate understanding of true facts."). Instead, Syntel resisted discovery at every turn, undermining the integrity of the discovery process, which "rests on the faithfulness of parties and counsel to the rules—both the spirit and the letter." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 507 (D. Md. 2000); *see also Younes*, 312 F.R.D. at 708-09 ("Discovery is not a 'gotcha' game" and "the obligation on parties and counsel to come forward with relevant documents requested during discovery is absolute.") (internal citations and quotations omitted).

For these reasons, the Court finds that sanctions are appropriate.

### B.     The Sanctions Sought By Defendants Are Not Warranted

Despite Syntel's conduct, the Court finds that the sanctions of findings of fact, preclusion or adverse inferences sought by Defendants are not commensurate with the failure to comply. *See In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14-CV-07990, 2018 WL 1353261, at *2 (S.D.N.Y. Mar. 15, 2018) ("A court must consider the extent to which the prevailing party has been prejudiced by the defaulting party's noncompliance and must ensure that any sanction imposed is just and commensurate with the failure to comply.") (internal citation omitted).

First, it does not appear to the Court that Defendants were significantly prejudiced by

---

[17] The Court is mindful that, while the present motion focuses on discovery from Mr. Chadha, Syntel presumably applied the same restrictive standard in its review of documents from other custodians and non-custodial sources.

Plaintiffs' failure to produce certain documents. Instead, it appears that many of the documents that Defendants assert should have been produced are similar to documents that were timely produced. (*See generally* Ex. 1 to Opp., ECF No. 443-1; Ex. 2 to 9/14/18 Joint Letter, ECF No. 454.) While this fact does not excuse Syntel's failure to produce these documents, it does weigh against imposing the harsh sanctions that Defendants seek.

Further, the findings of fact and other sanctions that Defendants are seeking are not, in the Court's view, congruous with the misconduct at issue. *See Shanghai Weiyi Int'l Trade Co.*, No. 15-CV-03533 (CM) (BCM), 2017 WL 2840279, at *16 (S.D.N.Y. Jun. 27, 2017) ("Discovery sanctions must be specifically related to the claims at issue in the order that was disobeyed.") (internal citation omitted). For example, Defendants seek a finding of fact that TriZetto documents marked confidential and not previously produced were misappropriated by Syntel. (Mot. For Sanctions at 15.)  However, whether Syntel properly possessed these documents is a key issue in the case and the fact that Syntel failed to produce some (though certainly not all) TriZetto documents marked confidential does not itself support Defendants' misappropriation theory.

Thus, in light of the well-settled preference in this Circuit for courts to resolve litigation disputes on their merits rather than through discovery sanctions, the Court will not impose sanctions that preclude Syntel from defending TriZetto's misappropriation claim on the merits. *See, e.g.*, *Scantibodies Lab., Inc.*, 2016 WL 11271874, at *18 (citations omitted); *see also Black v. Bowes*, No. 05-CV-00108 (GEL), 2006 WL 3771097, at *7 (S.D.N.Y. Dec. 21, 2006) ("[I]t is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery sanctions.").

### C.  Monetary Sanctions Are Appropriate Pursuant To Rule 37(b)

Under Rule 37(b), the Court "must" order Syntel to pay the reasonable expenses, including attorneys' fees, caused by its failure to comply with the Court's Orders, unless the failure was

substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C). In light of Syntel's inconsistent, and therefore unreliable, statements regarding the responsiveness standard it applied during discovery, the Court cannot find that Syntel's failure to comply with the Court's Orders was substantially justified. Nor does it find that such an award is unjust.

During the May 25, 2018 conference regarding the motion to compel made by Defendants, in an effort to dissuade this Court from ordering the production of documents that appeared to have been called for by the prior Orders of Magistrate Judge Ellis (affirmed by District Judge Schofield), Syntel's counsel represented that to the best of her knowledge the documents that had not yet been produced from the Chadha devices were non-responsive and did not need to be produced. (5/25/18 Hr'g Tr. at 12.) In articulating her opposition, Ms. Sekel represented, for example, that "facets is a word that has another meaning in the English language, you know, the facets of a project. And so, again, the fact that there is a hit for facets, it does not mean anything with respect to responsiveness." (*Id.* at 6.) Yet, it is clear from the face of the documents produced in June and July 2018 that Syntel had not previously produced all responsive documents, including documents referring to TriZetto's proprietary software program, FACETS—not the word facets more generally. Thus, Ms. Sekel's representation that the presence of such terms in documents from Mr. Chadha's devices would "not mean anything with respect to responsiveness" was highly disingenuous. Ms. Sekel's representations, taken together with Mr. Norbitz's speaking objections at a deposition in direct violation of a prior Court Order (and strident defense of such obvious speaking objections),[18] as well as Syntel's overall

---

[18] The Court had reserved decision on whether to impose sanctions for Syntel's counsel's speaking objections at deposition. The Court in its discretion now declines to separately sanction Syntel's counsel for the speaking objections, but will do so if any speaking objections are made during the upcoming expert depositions.

approach to discovery, display a far less than punctilious, and more akin to cavalier, adherence to discovery rules and Court Orders.

The Court finds that monetary sanctions are appropriate both to deter Syntel from similar conduct in the future and to compensate Defendants for the expenses they incurred to obtain the discovery to which they were entitled. *Accord Fendi Adele S.R.L. v. Filene's Basement, Inc.*, No. 06-CV-00244 (RMB) (MHD), 2009 WL 855955, at *5 (S.D.N.Y. Mar. 24, 2009) ("[E]ven if the discovering party ultimately obtains, through Herculean and expensive effort, the discovery to which it was entitled, that does not preclude it from being awarded appropriate relief to remedy the injury, including monetary relief, that it has suffered."). And while monetary sanctions are considered among the "mildest" sanctions for discovery misconduct, *see Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979), the Court expects that the costs of obtaining compliance here have been significant and thus finds that the sanctions will serve their intended purpose.[19] *See Grammar v. Sharinn & Lipshie, P.C.*, No. 14-CV-06774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) ("A court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future.").

The sanctions the Court is awarding under Rule 37(b)(2)(C) are the fees caused by Syntel's failure to obey certain Court Orders, *i.e.*, the June 29, 2016 Order and the October 30, 2017 Order. In its discretion, the Court finds that a just result requires Syntel to pay the reasonable attorneys' fees and expenses incurred by Defendants in connection with (a) preparing their May 22, 2018 Letter-Motion and their June 11, 2018 Letter-Motion, and only that portion of their July 30, 2018 Motion for

---

[19] In reaching its decision on the instant motion, the Court is also mindful of the fact that Judge Ellis has already imposed discovery sanctions against Syntel in the form of a preclusion order (ECF No. 276) that Judge Schofield affirmed. (ECF No. 360).

Sanctions that related to the production of documents from Mr. Chadha; and (b) preparing for and participating in the court proceedings relating to these submissions.

The Court has discretion to apportion liability between Syntel and its counsel. *See Shanghai Weiyi Int'l Trade Co.*, 2017 WL 2840279, at \*11 (court has wide discretion to apportion sanctions between a party and its counsel). During the June 18, 2018 telephone conference, the Court instructed Syntel to advise the Court who was responsible among the Honigman firm, the Foley firm or the client for the failure to produce responsive documents. (*See* 6/18/18 Hr'g Tr. at 59.) Plaintiffs' submission did not address that topic. When asked during oral argument, Ms. Sekel could not say for certain which law firm conducted the review of documents in response to the June 29, 2016 Order. (8/28/18 Hr'g Tr., ECF No. 453, at 102-03.). Thus, the Court is unable to discern, on the record before it, whether Syntel's failure to comply with the Court's Orders stems primarily from the actions of Syntel or its counsel.[20] For these reasons, the Court, in its discretion, finds that joint and several liability is appropriate here. That is, the sanctions awarded herein shall be paid by Syntel and/or Foley.

### D. The Court Will Reopen Fact Discovery At Plaintiffs' Expense

The Court also finds that reopening discovery at Plaintiffs' expense is appropriate to allow Defendants to obtain additional discovery regarding the newly produced documents. *See Scantibodies Lab., Inc.*, 2016 WL 11271874, at \*1 (reopening discovery when party's improper conduct caused, *inter alia*, other party to lose opportunity to place relevant documents before witnesses in deposition). Syntel shall produce a witness to testify in a deposition pursuant to Rule 30(b)(6), lasting no more than seven hours, regarding up to fifty documents produced by Syntel from Mr. Chadha's devices or produced by Syntel from the PCT drive (which production is ordered below).

---

[20] Since the Court is only awarding fees and expenses for the period that the Foley was counsel of record, Honigman is not responsible for the payment of any fees or expenses.

Defendants shall identify such documents at least seven days prior to the deposition such that Syntel can prepare its designated witness to testify about the identified documents.

The cost of this deposition, up to a cap of $15,000 in attorneys' fees, plus reasonable expenses, shall be shifted to Syntel and its counsel, jointly and severally. Reimbursable expenses shall include court reporter fees, as well as other reasonable costs.

### E.    Defendants Remaining Issues Do Not Warrant Sanctions

#### 1.    Syntel Must Produce Additional Non-Custodial ESI

Defendants also seek sanctions for Syntel's alleged failure to search and produce non-custodial ESI. (Mot. For Sanctions at 9-11.) Because Defendants have not previously sought to compel the production of any non-custodial ESI, the Court finds that sanctions are not appropriate, but will instead treat this aspect of Defendants' motion as a motion to compel.

Defendants assert that Syntel "knew that relevant information would be found elsewhere[,]" because it identified nine shared drives to be searched by the Forensic Examiner and the Examiner found TriZetto documents on each of those drives. (*Id.*) Defendants contend that this issue could not have been raised sooner because it was not until Mr. Moore's follow-up deposition on May 24, 2018 that it became clear that Syntel had only searched two shared drives. (*Id.* at 10.)

In opposition, Syntel asserts that it properly searched the sources of non-custodial ESI that were most likely to contain relevant material in compliance with Federal Rule of Civil Procedure 26. (Opp. at 32-33.) During oral argument, Syntel represented that documents were only found on four of the drives, three of which were designated for specific clients and one of which was for Syntel's PCT Team. (8/28/18 Hr'g Tr. at 135-36.) Notably, Mr. Chadha led the PCT team, which was tasked with identifying and developing software solutions that facilitated and automated the work Syntel provided to its clients. (Opp. at 5 n. 2). Following oral argument, the Court ordered Syntel to run the

search terms "TriZetto," "TZ," "Customer Exchange" and "FACETS" against the PCT drive and provide

a hit count on those terms. On September 13, 2018, Syntel reported the hit counts that are recounted

in the Procedural History Section above. Notably, there were close to 15,000 hits on the term

"FACETS," which was TriZetto's proprietary software program.

Based on the foregoing, the Court finds that the PCT drive is an appropriate source of

discovery, as it is likely to contain relevant information. Thus, Syntel shall produce all non-privileged

documents from the PCT drive that hit on any of the foregoing search terms, subject to an "attorneys'

eyes only" designation.

### 2. Defendants Waived Any Discovery Dispute Regarding Preservation Of Computer Assets

Finally, Defendants contend that Syntel failed to preserve relevant information, including a

"live inventory" of computer assets, and failed to inform the Forensic Examiner that certain

computers were available for review. (Mot. For Sanctions at 11-13.) Defendants contend that Syntel's

conduct amounts to spoliation under Rule 37(e). (*Id.* at 25-30.) In support of their motion, Defendants

rely on testimony of Syntel's 30(b)(6) witness Alex Philip from February 16, 2018. (*Id.* at 11-13.) The

Court finds that Defendants waived this issue by failing to raise it in their March 30, 2018 Letter-

Motion. (*See* 3/27/18 Order, ECF No. 370, ¶ 3 (indicating that any issues not raised would be waived).)

However, Defendants are not precluded from seeking further relief, such as through a request for a

jury instruction or motion *in limine*, at the appropriate time. *See Watkins v. New York City Transit

Auth.*, No. 16-CV-04161, 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018) ("Defendant's motion for

spoliation sanctions is denied without prejudice to Defendant's renewal on a pre-trial motion *in

limine*, specifically addressing the requirements of Rule 37(e).").

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Sanctions (ECF No. 439) is GRANTED IN PART and DENIED IN PART. The parties' earlier cross-motions for sanctions are DENIED. (*See* ECF No. 361). It is hereby ORDERED, as follows:

1. Within forty-five days of the date of this Opinion and Order, Syntel and/or its counsel shall reimburse Defendants for the reasonable attorneys' fees and expenses that they incurred in connection with (a) preparing their May 22, 2018 Letter-Motion and their June 11, 2018 Letter-Motion, and only that portion of their July 30, 2018 Motion for Sanctions that related to the production of documents from Mr. Chadha; and (b) preparing for and participating in the court proceedings relating to these submissions. If Syntel and its counsel dispute the reasonableness of Defendants' fees and expenses with respect to Defendants' identified motions, then Defendants shall submit a fee application to this Court for resolution.

2. Defendants are granted leave to take a Rule 30(b)(6) deposition of a Syntel witness, to be taken no later than November 9, 2018, within the parameters set forth above. Plaintiffs shall pay the attorneys' fees (up to a maximum of $15,000) and reasonable expenses of such deposition no later seven days following the conclusion of the deposition.

3. Syntel shall produce to Defendants all non-privileged documents from the PCT drive that hit on any of the search terms set forth above. Syntel shall produce the documents on a rolling basis beginning no later than seven days from the date of this Opinion and Order and concluding no later than twenty-one days thereafter.

**SO ORDERED.**

DATED:     New York, New York
             September 19, 2018

_____
STEWART D. AARON
United States Magistrate Judge