UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
SYNTEL STERLING BEST SHORES                                   :
MAURITIUS LIMITED, ET AL.,                                    :
                              Plaintiffs,                     :   15 Civ. 211 (LGS)
                                                              :
              -against-                                       :   **AMENDED OPINION & ORDER**
                                                              :
THE TRIZETTO GROUP, ET AL.,                                   :
                              Defendants.                     :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

   The parties filed cross-motions for partial summary judgment in this dispute over their past business dealings. Plaintiffs Syntel Sterling Best Shores Mauritius Limited's ("Syntel Mauritius") and Syntel, Inc. (together, "Syntel") bring claims of breach of contract (Count I), intentional interference with contractual relations (Counts II and III), and misappropriation of confidential information (Count IV). Defendants The TriZetto Group ("TriZetto") and Cognizant Technology Solutions Corp. ("Cognizant") counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing (Counterclaim Counts I and II), misappropriation of trade secrets (Counterclaim Counts III and IV), unfair competition (Counterclaim Count V), tortious interference with prospective business relations (Counterclaim Count VI), and copyright infringement (Counterclaim Count VIII). Plaintiffs move for partial summary judgment on Defendants' copyright infringement counterclaim and on Plaintiffs' breach of contract claim based on a rebates provision (the "Transition Rebates Claim"). Defendants move for summary judgment on their trade secrets counterclaim and on all of Plaintiffs' claims, except the Transition Rebates Claim. The parties do not seek summary judgment on the remainder of Defendants' counterclaims.

On January 27, 2020, the Honorable Stewart D. Aaron issued a Report and Recommendation (the "Report"), which recommended denying Plaintiffs' partial motion for summary judgment and granting in part and denying in part Defendants' partial motion for summary judgment. The Report also denied Defendants' motion to strike portions of Plaintiffs' summary judgment filings. The parties timely filed objections. For the reasons below, the objections are overruled or deemed waived, and the Report is adopted in full.

I. **BACKGROUND**

Familiarity with the Report is assumed, and a brief summary of the facts relevant to the objections is summarized below.

Defendant TriZetto is a technology company that owns a software product called "Facets," a platform used by healthcare companies to manage and process healthcare claims. Because Facets must be customized for each user, Plaintiff Syntel and Defendant Cognizant provided customization and implementation services to Facets users. Syntel and Cognizant are competitors. On September 15, 2014, Defendant Cognizant announced that it was acquiring Defendant TriZetto.

Before the acquisition, Syntel had provided customization services to TriZetto's customers, under a Master Services Agreement ("MSA"), dated June 30, 2010, as amended August 17, 2012, to which Syntel Mauritius and TriZetto were parties. On February 18, 2015, the MSA was terminated, after Syntel exercised its right to terminate, in the event a competitor acquired TriZetto. The parties' dispute revolves around the alleged malfeasance following termination. As relevant to the objections here, Syntel alleges that (i) Defendants' breached Section 25.03 of the MSA (the "Non-Solicitation Provision") by poaching Syntel's employees, and (ii) Defendants misappropriated confidential information about Syntel's employees to

2

facilitate the poaching.  Defendants, in turn, allege that Syntel is infringing Defendants' copyright of their so-called "Data Dictionary" product.

In the portion of the Report to which the parties do not object, the Report recommends denying Defendants' affirmative motion on the trade secrets counterclaim, due to genuine disputes of fact over whether the Facets test cases and automation scripts at issue are trade secrets and whether Plaintiffs misappropriated them.  The Report recommends granting Defendants' motion on all of Plaintiffs' tortious interference claims, except for a claim based on Defendants' inducement of five Syntel employees to breach their employment agreements and to work for Defendants and except for a claim based on Cognizant's tortious interference with the MSA in relation to Section 19.01.  The Report further recommends denying Plaintiffs' affirmative motion as to the breach of contract claim due to genuine disputes of fact over whether Plaintiff adequately performed under the contract.  Finally, the Report denies Defendants' request to strike Plaintiffs' summary judgment filings.

Regarding the portions of the report to which the parties object, the Report recommends granting Defendants' motion as to Plaintiffs' Non-Solicitation Provision claim.  Although Section 25.03 of the MSA forbids TriZetto from "directly or indirectly hir[ing] any person who is then or who was during the previous six months an employee of Service Provider," the alleged poached employees do not qualify as "employee[s] of Service Provider."  The Report further recommends denying Defendants' motion for summary judgment as to Syntel's confidential information claims, given factual disputes over the confidential information at issue and resulting damages.  Finally, the Report recommends denying Syntel's summary judgment motion on the Data Dictionary counterclaim, due to factual disputes over the registration and protectability of the allegedly infringed work.

3

## II.     LEGAL STANDARDS

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection,' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b) (*citing Thomas v. Arn*, 474 U.S. 140, 149 (1985)). A district court need only satisfy itself that "no clear error is apparent from the face of the record." *See, e.g., Candelaria v. Saul*, No. 18 Civ. 11261, 2020 WL 996441, at *1 (S.D.N.Y. Mar. 2, 2020).

A district court must conduct a *de novo* review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. 28 U.S.C. § 636(b)(1); *accord United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). "When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error." *Espada v. Lee*, No. 13 Civ. 8408, 2016 WL 6810858, at *2 (S.D.N.Y. Nov. 16, 2016). A district court should not, however, entertain new grounds for relief or additional legal arguments that were not before the magistrate judge. *See Walker v. Stinson*, 205 F.3d 1327, 2000 WL 232295, at *2 (2d Cir. 2000) (holding that a district court did not abuse its discretion in refusing to consider an argument that a petitioner failed to raise before a magistrate judge); *accord Kriss v. Bayrock Grp.*, No. 10 Civ. 3959, 2015 WL 1305772, at *1 (S.D.N.Y. Mar. 23, 2015).

### III. DISCUSSION

The portions of the Report to which there are objections are reviewed *de novo,* and the remainder is reviewed for clear error.  Under this standard, the Report is adopted in full.

#### A. Non-Solicitation Provision Claim

Syntel objects to the Report's recommendation that the phrase "employee of Service Provider" in Section 25.03 of the MSA unambiguously means an employee of the defined "Service Provider," *i.e.* Syntel Mauritius.  This recommendation is fatal to Syntel's claim, because Syntel's theory is that Defendants breached Section 25.03 by poaching employees not of Syntel Mauritius, but of Syntel, Inc. and affiliates of Syntel.  Syntel makes two alternative arguments in its objections: (i) that the phrase "employee of Service Provider" unambiguously refers to the entire "pool of service professionals sent to work for TriZetto" under the MSA, *i.e.* the "agents, subcontractors and representatives" of Syntel Mauritius *and* the "Service Provider Party [a defined term referring to both Syntel Mauritius and Syntel, Inc.] employees," or (ii) that the phrase is ambiguous, and extrinsic evidence establishes that the parties both understood at contracting, and subsequently demonstrated in their course of conduct, that "employee of Service Provider" is not limited to Syntel Mauritius' employees.  Syntel further argues that the Report's construction of the phrase renders Section 25.03 and related phrases inoperable, because Syntel Mauritius has no employees.

The Report's conclusion is correct.  The phrase "employee of Service Provider" unambiguously means individuals employed by Syntel Mauritius, the entity defined as "Service Provider."  The Report correctly rejects Syntel's arguments of ambiguity: simply because the MSA overall contemplates that employees from various Syntel entities and affiliates will perform services does not render the term "employee of Service Provider" ambiguous.  Indeed, the MSA uses a defined phrase "Service Provider Party" to refer to both Syntel Mauritius and

5

Syntel, Inc. when necessary. As the Report explains, the heart of Plaintiff's argument is an issue *outside* the contract: "any ambiguity comes not from the language of the MSA itself, but from the fact that Syntel Mauritius does not have any employees." Citing *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992), the Report concludes that this external fact does not render Section 25.03 "superfluous or meaningless," because Syntel Mauritius "at any time could have hired employees." The Report correctly adopts the plain meaning of Section 25.03 and does not consider any extrinsic evidence.

### B. Confidential Information Claims

Defendants object to the Report's recommendation to deny summary judgment on Plaintiffs' two confidential information claims, which allege that (i) Defendants breached Section 19.01 of the MSA,[1] and (ii) that Defendants misappropriated Syntel's confidential information and used the information to hire away Syntel Employees. The Report concludes that Defendants are not entitled to summary judgment due to material disputes of fact. Contrary to Defendants' argument, Plaintiffs have sufficiently identified confidential information on which their claims are based. Plaintiffs have also presented sufficient evidence of damages at this stage. Defendants' objections to these findings are deemed waived or are overruled.

As to waiver, at summary judgment, Defendants only argued that Plaintiffs failed to *identify* any confidential information underlying their claims. They did not argue, but raise for the first time now, that the evidence fails to show as a matter of law that Defendants *used* the purported confidential information to hire away Syntel employees. As the Report expressly

---

[1] Section 19.01 of the MSA proscribes the contracting parties from using "Confidential Information" without the other party's written consent. Section 1.01(13) in turn defines "Confidential Information" broadly to include "all information (including information communicated orally) . . . whether disclosed to or accessed by [the parties] in connection with this Agreement . . . that a reasonable person would recognize as confidential."

6

states, however, "the only arguments Defendants make in support of their motion are that Plaintiffs have not adequately identified confidential information (that is not otherwise publicly available), and have not provided adequate evidence of damages." Defendants themselves furthermore state that their objections respond to Judge Aaron's findings and are not limited to their arguments raised below: "Judge Aaron set the stage for this Court to extend his rulings to their logical conclusions, by evaluating whether any of the Alleged Confidential Information is in fact confidential or relates to what Syntel sets forth as its misappropriation theory." This objection is waived. Defendants may, of course, raise the failure-to-use argument at trial.

To the extent Defendants object to the Report's finding that Plaintiffs' identified information is confidential, the Report is correct. The Report concludes only that: "Syntel specifically has identified at least some information, *such as* the salaries, particularized assignments, historical project data, evaluations, grade levels, billing rates and strategic placements for each employee, which does not appear to be included on the individuals' LinkedIn Profiles" (emphasis added). That is, information in the ▮▮▮▮ screenshots, testimony about information in ▮▮▮▮ and internal records of employee evaluations are not publicly available and do not appear in the employees' LinkedIn Profiles. Therefore, this information may form the basis of Plaintiffs' misappropriation claims. Defendants object that all the evidence on which the Report relies is flawed because the exhibits are Syntel-created, the testimony is self-serving, and many of the exhibits are hard to decipher, but these are credibility issues for the factfinder. Defendants also argue that Plaintiffs did not offer confidential information as to every alleged poached employee, but Syntel may, in theory, prove its claims, even without proving that Defendants poached every employee at issue using the confidential information. This argument bears on damages.

The Report also properly concludes that a reasonable jury could credit the damages analysis, thus creating an issue of fact.  Plaintiff's expert estimates Syntel's lost profits as a result of losing the employees at issue.  The Report concludes that this analysis provides a colorable "basis for damages tied to employees [Syntel] contends [were] hired away by Defendants" and in turn to the misappropriation of the confidential information about the employees.  Although Defendants argue that the analysis makes unreasonable assumptions about Syntel's revenue and performance, the factfinder may weigh the reliability of the expert opinion and the methodology.  Defendants also may raise challenges to expert opinions in their anticipated *Daubert* motions.

### C. Data Dictionary Counterclaim

Syntel objects to the Report's recommendation to deny summary judgment on Defendants' copyright counterclaim.  The Report concludes that there are material disputes of fact regarding (i) whether Data Dictionary is part of the Facets product, and therefore whether Syntel infringed the registered Facets copyright itself and (ii) in the alternative, whether Data Dictionary incorporates protected elements of Facets, and therefore whether Syntel infringed the copyright of an unregistered derivative work.  Syntel raises objections only to the latter theory.  Syntel argues that the Report relies improperly on inadmissible documents and testimony of a TriZetto executive and Rule 30(b)(6) witness, Chuck Sanders, in finding material disputes of fact.  Syntel also objects that Defendants have failed to produce evidence of the particular shared elements of Facets and Data Dictionary.  These objections are overruled.

The Report correctly concludes that a reasonable jury could decide that Data Dictionary and Facets have shared protected elements, based on Mr. Sanders' testimony and standard customer documents describing Data Dictionary -- *i.e.* the "Facets® Release 5.01 Physical Package Document" and "Facets® Data Dictionary Guide."  Customers receive Data Dictionary as part of the delivery of the Facets software.  Data Dictionary helps customers implement and

8

build out the Facets system to suit their needs.  The Sanders Declaration explains, citing the customer documents, that Data Dictionary is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬ provides ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ available in Facets, and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ This evidence raises at least an issue of fact regarding whether Data Dictionary incorporates protected elements of Facets itself.

      Syntel incorrectly argues that the customer documents are inadmissible hearsay.  They are admissible as business records under Federal Rule of Evidence 803(6).  Defendants regularly created these standard documents at the time of a Facets release, and maintained copies to deliver to Facets customers.  The documents seem to provide reliable descriptions of Data Dictionary because customers actually used them as how-to guides.  Even if these documents were not admissible, Plaintiffs' expert may rely on them in forming an opinion, if experts in the same field would reasonably rely on such documents.  *See* Fed. R. Evid. 703.

      Syntel also objects that Mr. Sanders has no personal knowledge to testify about the relationship between Data Dictionary and Facets because he is not an engineer and did not compare the programming code in the two products.  As a 30(b)(6) witness, Mr. Sanders testified, however, that his statements were based on his personal review of relevant TriZetto documents.  He is informed about the types of products TriZetto offers, even if he did not engineer them himself, as the Vice President of Corporate Development and Strategic Alliances.  Therefore, the Report's recommendation to deny summary judgment on the claim of copyright infringement of a derivative work is justified.

### D. Remaining Report

As to the remainder of the Report to which the parties did not object, the Court finds no clear error on the face of the record. Accordingly, these portions are adopted in full. *See* 28 U.S.C. § 636(b)(1) (In reviewing a magistrate judge's recommendations, a District Judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); Fed. R. Civ. P. 72(b), Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *accord Niles v. O'Donnell*, No. 17 Civ. 1437, 2019 WL 1409443, at *1 (S.D.N.Y. Mar. 28, 2019).

## IV. Conclusion

For the reasons above, the Report is adopted in full.

Defendants' motion for summary judgment is granted in part and denied in part. Specifically, summary judgment is granted to Defendants on: (1) the breach of contract claim based on the Non-Solicitation Provision and on (2) the tortious interference claims, except as to the five employment agreements. Summary judgment is denied to Defendant on (1) the confidential information claims and (2) Defendants' trade secrets counterclaim.

Plaintiffs' motion for summary judgment is denied, specifically as to: (1) the breach of contract claim based on Transition Rebates and (2) Defendants' copyright infringement counterclaim.

For clarity, the surviving claims and counterclaims are:

- Count I: Breach of Contract, based on Sections 19.01 (Confidentiality) and 23.02 (Transition Rebates), as to Defendant TriZetto;
- Count II: Tortious Interference, based on the five employment agreements only, as to Defendant TriZetto;

- Count III: Tortious Interference, based on the five employment agreements and Section 19.01 of the MSA, as to Defendant Cognizant;

- Count IV: Misappropriation of Confidential Information, as to both Defendants;

- Counterclaim Counts I and II: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing, as to Plaintiff Syntel Mauritius;

- Counterclaim Counts III and IV: Misappropriation of Trade Secrets, as to both Plaintiffs;

- Counterclaim Count V: Unfair Competition, as to both Plaintiffs;

- Counterclaim Count VI: Tortious Interference, as to both Plaintiffs;

- Counterclaim VIII: Copyright Infringement, as to both Plaintiffs.

SO ORDERED.

Dated: April 20, 2020
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**