```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SYNTEL STERLING BEST SHORES                                 :
MAURITIUS LIMITED, et al.,                                  :
                                                            :       15 Civ. 211 (LGS)
             Plaintiffs/Counterclaim-Defendants,            :
                                                            :           ORDER
             -against-                                      :     (Defendants' MIL 6)
                                                            :
THE TRIZETTO GROUP, et al.,                                 :
                                                            :
             Defendants/Counterclaim-Plaintiffs.            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Defendants/Counterclaim-Plaintiffs The TriZetto Group, Inc. ("TriZetto") and Cognizant Technology Solutions Corp. (collectively, "Defendants") move *in limine* (Dkt. No. 710) to preclude Plaintiffs/Counterclaim-Defendants Syntel Sterling Best Shores Mauritius Limited and Syntel, Inc. (together, "Syntel") from introducing its own termination letter as purported evidence of its claims.

Syntel seeks to introduce the letter to prove the amount of its damages on its transaction rebates claim. The letter is from Syntel to TriZetto and provides notice of termination and demands reimbursement, pursuant to the Master Services Agreement, of $3,382,421, "the total amount of rebates [TriZetto] received" as set forth in the attached Appendix. The Appendix itemizes twenty-four invoices by date, invoice number, the dollar amount of the "Planned Transition Rebate," and the "Transition Rebate Received" and includes the total for rebates received, which matches the figure on the face of the letter and is the amount of Syntel's damages claim. The letter is signed by Daniel M. Moore, Syntel's Chief Administrative Officer, General Counsel and Secretary.

Defendants seek to preclude the letter on that ground that it is hearsay and does not satisfy the requirements of the business record exception to the hearsay rule -- (1) "the record was made at or near the time by . . . someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business"; (3) "making the record was a regular practice of that activity"; and (4) "all these conditions are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6)(A)-(D).  The parties do not dispute that the letter and attachment are hearsay, an out-of-court statement offered for the truth of the matter asserted -- *i.e.*, the amount of rebates that TriZetto actually received and is now contractually required to reimburse.

Syntel submits the Declaration of Mr. Moore to lay the foundation for admission.  (Dkt. 715-9).  In relevant part, he states that

> Appendix A includes a listing of invoices.  These invoices were relied upon, and prepared by, Syntel in the ordinary course of business.  In these invoices Syntel personnel who had knowledge of Syntel's accounting procedures provided Transition Rebates in the form of credits [to Trizetto].  TriZetto applied Transition Rebates in the amounts reflected in the "Transition Rebate Received" column.

He further states that "Syntel provided TriZetto, and TriZetto received from Syntel, the invoices reflected in the ordinary course of business."

First, it should be noted that the declaration purports to lay an evidentiary foundation only for the Appendix and/or the invoices.  It does not lay any foundation for the letter, which is also hearsay, as an out-of-court statement (*i.e.* a document) that asserts the amount that TriZetto purportedly owes Syntel for transition rebates.  It is doubtful that the letter could satisfy the business record requirement that "making the [letter] was a regular practice of Syntel's regularly conducted business activity."  "It is not a record made for the systematic conduct of the business as a business.  [The document] may affect that business in the sense that it affords information on

2

which the management may act [or as here, effectuates the end of a business relationship]. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." *Palmer v Hoffman*, 318 U.S. 109, 113 (1943). As in *Palmer*, the termination letter is not for the systematic conduct of Syntel as a business that provides software development and platform management services. "Unlike payrolls, accounts receivable, accounts payable, . . . and the like these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating," *id.* at 114, not in providing technology services. *Id.*

The letter relies on a second layer of hearsay, the Appendix, an out-of-court statement that asserts the amount that TriZetto purportedly owes. Similarly, the declaration does not lay any foundation for the Appendix, and it is unlikely that the Appendix is "a record made for the systematic conduct of" Syntel's business. *Id.* at 113.

The Appendix relies on a third layer of hearsay, the invoices. For the Appendix or the letter to be admissible, a basis for the hearsay exception would have to be provided for the invoices, as well as the letter/Appendix. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Although the declaration purports to lay the business record foundation for the invoices, it does not address the first two requirements -- that the invoices were contemporaneous, and that they were "kept in the course of a regularly conducted activity of a business." It seems unlikely that Syntel could establish this latter requirement since it apparently cannot find the invoices, and for that reason seeks to rely on the letter and Appendix.

The Appendix appears to rely on hearsay in addition to the invoices -- some document showing how much of the rebate TriZetto actually received. The critical part of the Appendix

for Syntel's damages claim is not on the amount invoiced ("Planned Transition Rebate"), but rather the amount received ("Transition Rebate Received").  It is unclear where the amounts in the Rebate Received column originated.  The declaration states that "Syntel personnel who had knowledge of Syntel's accounting procedures provided Transition Rebates in the form of credits [to TriZetto].  *TriZetto applied* Transition Rebates in the amounts reflected in the 'Transition Rebate Received' column." (emphasis added).  This statement suggests that documents showing the amount of TriZetto's payments (with some calculation showing the reduction in payment for the rebate amount) are the basis for the Rebate Received information in the Appendix.  In any event, these critical documents -- showing the amount of rebates TriZetto actually received, which is Syntel's damages claim -- are not identified, much less is there any business record foundation laid.

For these reasons, it is ORDERED that Defendants' motion *in limine* No. 6 is **RESERVED**.  No later than **October 6, 2020**, Syntel may (but need not) file a certification pursuant to Rule 803(6)(D) to provide the foundation for the admissibility of any document(s) showing the amount of transition rebates TriZetto received, consistent with the analysis set forth above.

Dated: September 30, 2020
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**