KARTSYN1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
SYNTEL STERLING BEST SHORES
MAURITIUS LIMITED, SYNTEL, INC.,

                    Plaintiffs,

            v.                        15 Civ. 211 (LGS)

THE TRIZETTO GROUP, INC., et al.,

                    Defendants.       Jury Trial
------------------------------x
                                      October 27, 2020
                                      9:30 a.m.


Before:

                    HON. LORNA G. SCHOFIELD,
                                      District Judge




                         APPEARANCES
KIRKLAND & ELLIS LLP
     Attorneys for Defendants/Counterclaim Plaintiffs
BY:  MICHAEL W. DE VRIES
     PATRICIA A. CARSON
     ADAM R. ALPER
     RYAN KANE

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
     Attorneys for Plaintiffs/Counterclaim Defendants
BY:  NICHOLAS GROOMBRIDGE
     JAREN JANGHORBANI
     CRYSTAL LOHMANN PARKER
     J. STEVEN BAUGHMAN

KARTSYN1

1          (Jury present)

2          THE COURT:  Good morning again, ladies and gentlemen.

3    Thank you for being prompt.

4          So today is the day we have all been waiting for.

5    You're about to begin your deliberations in the jury room.  You

6    are to conduct your duty as jurors in an atmosphere of complete

7    fairness and impartiality without bias or favor towards any

8    party.  You should not consider what the reaction of the

9    parties or the public may be to your verdict, or what will

10   happen as a result of your verdict, whether it will please

11   anyone or displease anyone, be popular or unpopular.

12         Any consideration outside of the case as it has been

13   presented to you in the courtroom you should not consider.  You

14   should find the facts from what you consider to be believable

15   and by the law as I gave it to you, and your verdict will be

16   determined by the conclusion you reach no matter who it might

17   help or hurt.  For the same reason, the personality and conduct

18   of any attorney should not be something that you consider.  If

19   you have formed opinions about anything like that, please don't

20   consider them.

21         The first thing you need to do when you go in the jury

22   room is to elect one member of the jury as your foreperson.

23   That person will preside over the deliberations and speak for

24   you here in open court.  The foreperson has no greater voice or

25   authority than any other juror.  The foreperson will send out

1    notes, and when the jury has reached a verdict, he or she will

2    notify the court security officer that you have reached a

3    verdict.

4         So you will have available in the jury room additional

5    copies of all of the exhibits admitted into evidence.  And I

6    should also tell you that there are a couple of computers that

7    have the source code for the Facets software on it.  Those are

8    actually in evidence.  I'm going to keep them out here, but if

9    you want to look at the source codes for the Facets software,

10   you can ask to see them and we can arrange to do that.

11        The exhibits are listed on an exhibit list.  That

12   should be available to you along with the exhibits digitally so

13   that you will be able to access them and identify them.  And

14   I'll leave it to you to figure out who on the jury is best able

15   to deal with the exhibits and access them.

16        Any communications or questions that you have for the

17   Court should be made to me in writing.  So what that means is

18   you write it on a note and the foreperson will sign it and date

19   it and put the time on it, and give it to the court security

20   officer who will be with you.  But one thing you should not do

21   is don't at any point write on your note how you stand in terms

22   of your views.  So don't say well, right now our vote is five

23   to two.  So don't tell me anything about your vote.  The only

24   thing I want to know about your vote is when you have reached a

25   unanimous verdict, which is what we need today.  I shouldn't

say today, it will be reached whenever you reach it.

The most important part of the case is the part that you as jurors are now about to play as you deliberate on the issues of fact.  It is for you and you alone to decide the facts.  I know that you will try the issues that have been presented to you according to the oath you took on the first day as jurors.  And in the oath you promised that you would well and truly try the issues joined in this case and a true verdict render.  It is your duty as jurors to consult with each other and talk to each other before you reach agreement, which is why I told you from time to time to keep an open mind, not to talk about the case.  Now is your opportunity to consult with each other and do that, and that is part of the deliberative process.

Each of you must decide the case for yourself, but you should do so only after you speak with your fellow jurors.  Moreover, you should not hesitate to change your opinion if you become convinced that it is incorrect.  Every juror should be heard.  No one juror should monopolize the jury room.  No one juror should control or monopolize the deliberations.

As I said, your verdict must be unanimous, but you are not allowed to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions

dispassionately, without regard to sympathy, prejudice or

favor, and adopt the conclusion that you in your good

conscience believe to be in the performance of truth.

        Again, each of you must make your own decision about

the proper outcome of the case based on your consideration of

the evidence and your discussions with your fellow jurors.  No

juror should surrender his or her conscientious belief solely

for the purpose of returning a verdict.

        So in the papers, we're going to look at them right

now, on jury chair is your verdict form.  And I'm going to go

through the verdict form with you in just a moment.  The form

is to help us, meaning the Court, the attorneys and the

parties, understand your findings.

        You should not draw any inference from the way the

questions were worded.  Don't look at them yet, we'll go

through every single question together.

        No inference should be drawn from the way the

questions are worded as to what the answers should be.  You

should not try to read into them any indication of any opinion

that I may have, because I don't have any.  And you should

answer every question in order unless you're told to skip the

question.  And I promise you it makes no sense if you don't go

in order and follow directions.

        After you reached a verdict, the foreperson should

sign it and then each of you will sign it and then you should

notify the court marshal or security officer that you have

reached a verdict.  And you can put that in the note and say

you reached a verdict and then I will come with the attorneys

and take your verdict.

I will stress that each of you must be in agreement

with the verdict that's announced in court, and once it's

announced by the foreperson I will actually ask each of you:

Is that your verdict?  Once the verdict is announced and

officially recorded, it cannot be revoked.

So let's just look at the verdict form.  The cover

page is what it is.  And as I told you when I gave you the

directions, the directions are organized in the same way the

questions are.  The questions have the basically three parts.

the First part is the parties' claims, the second part is with

regard to damages and the third part are the defenses.

And so if you look on page 2, you'll see that the

questions on page 2 have to do with TriZetto's claims.  And

remember that they have three claims.  The first one is

misappropriation of trade secrets under federal law, the second

one is misappropriation of trade secrets under New York law,

and the third is copyright infringement.  And so you'll answer

each of those in order, and you'll see after each question

there's a direction of where to go next or what to do next.

If you look on page 3, those are the questions about

Syntel's claims.  And I won't read them all, but you can see

that each question basically asks whether Syntel has proved

that particular claim, and you answer it yes or no, and there's

a little direction at the end of each one that says what to do

next.

Then if you go to page 4, that's damages.  And the

damages questions have a direction at the beginning of them.

So the first one says:  Answer only if you answered yes to

Question 1.  And you'll remember, you'll go back and look, and

Question 1 is the federal trade secret claim that TriZetto

asserted.  So it says if you answered yes to that, what's the

dollar amount of damages?  Then it goes through and basically

follows each of the questions about the claim.  If you answered

yes to the claim, then insert the dollar amount of damages.

So the damages for TriZetto's claims, those questions

are on page 4.  Damages, if any.  And again, remember because I

asked you for damages doesn't mean I think there are damages,

it's only if you think there are damages you should fill it in.

But the questions on page 5 relate to compensatory

damages for Syntel's claims.  So again, if you answered yes to

the question about liability on the claim then it asks for the

the amount of damages.  Then on the bottom of page 5 you see a

question about punitive damages, and the questions about

punitive damages follow on to page 6.

And then you begin the last section, which is the

section relating to defenses.  as to each defense that has been

asserted you'll be asked to answer yes or no or yes for some

whether the party in question has proved that particular

defense.

        And then once you have reached the end of the verdict

form, you'll see on the last page a place for your signatures,

a place the foreperson to sign, the date, and you're at the end

of your work.  So that is what it is.

        The one thing I should have said is, as I said, you'll

have all the exhibits with you in the jury room and you'll have

the ability, if you want, to ask to have testimony read back to

you if you believe that you need to do that, if you, for

whatever reason, want to hear testimony, because, as you know,

we had a court reporter take taking down every word.  The one

thing you should bear in mind, though, is if you ask for

testimony, first we have to find it, and then the lawyers

either have to agree on what the appropriate parts are to show

you; if they disagree, then I have to rule on the disagreement,

and then we have to prepare it, bring you in here, and then

we'll present it to you.  So that process can take some time.

If you ask for any testimony, don't just stop and say okay, now

we wait and hear the testimony, because it may be some time

before we're able to do that, and you should just keep going.

So those are my directions.  As I said, you need to decide

unanimously what your verdict is.

        And one final comment, and it's not because I think

KARTSYN1

1       it's necessary to say but because it's the custom in our

2       courthouse, and that is that, regardless of your views, you

3       should treat each other with courtesy and respect during your

4       deliberations.  All litigants stand equal in this room and all

5       litigants stand equal before the rule of justice.  Your duty is

6       to decide between and among the parties fairly and impartially

7       and to see that justice is done, all in accordance with your

8       oath.

9               So thank you.  Now it's time to go in and deliberate,

10      and you may go.

11              Actually, we should swear the court security officer.

12              Well, we won't swear the court security officer, you

13      can go begin your deliberations.

14              Let me say one other thing.  You'll return one copy of

15      the verdict form to me, so if you make mistakes or you want to

16      play around on another one or other copies of it, we have

17      plenty of copies.  Thank you.

18              (Jury retired to deliberate.  Time noted 9:49 a.m.)

19              (Jury not present)

20              THE COURT:  So ladies and gentlemen, if you just make

21      sure that Mr. Street has a cell phone number for one person on

22      each team, and stay close enough so that we can get you if the

23      jury has a question or we need you.  You don't have to stay in

24      the courtroom if you don't want to.

25              MR. DE VRIES:  Yes, your Honor, we have.

KARTSYN1

1          THE COURT:  Okay, thank you.

2          (Recess taken)

3          THE COURT:  Counsel, our court reporter is on the

4     phone, so state your name before you speak.

5          I have convened the parties in the Syntel case, which

6     is the trial that's been ongoing, because I have some the jury

7     notes.

8          So I have received various questions, and I didn't

9     bring you up for the first two because I didn't need to, but

10    let me just mark them for the record and tell you what they

11    are.  The first one is Court Exhibit 7, which was dated today,

12    and the time was 10:35 a.m.  And they said:  We would like to

13    review the exhibits labeled P, but we can only see the D

14    exhibits.  Could you let us know how to access?  Thank you.

15    And it was signed by Susan Jones, who is the jury foreperson.

16         And the reason I didn't call you is because we could

17    resolve that issue because the exhibits were still downloading,

18    and so the issue was resolved and I didn't need to make you all

19    come back.

20         The second note I'm not even going to mark as a Court

21    exhibit because it's not signed by the foreperson, it's in

22    different handwriting and it says "Pepsi" and nothing else.  So

23    I'm not going to mark that one.

24         And the next one I will mark as Exhibit 8, and it is

25    at 11:13 a.m.  And it says:  Could you direct us to the

KARTSYN1

document prepared by Thomas Britven regarding damages?  We
cannot find it in the log.

We'll talk about this when I finish reading it.  And
the second says:  Also, may we review the closing statement
presentations?  Thank you.  Again, signed by Ms. Jones.

So as to the first document, are you able to tell me
the document prepared by Mr. Britven regarding damages?  To me
there were a lot, but you tell me.

MR. DE VRIES:  The answer is I believe I would want to
consult with Ms. Carson.  My belief is that as part of his
presentation she put in certain spreadsheets or documents that
contain his damages numbers, but Ms. Carson will need to
correct me if I'm wrong about that.

MS. CARSON:  Your Honor, there may be numbers in the
spreadsheets.  I'm just not sure how easily they're going to be
to understand because they're pretty extensive spreadsheets.  I
would have to go back and look at the exhibits.

THE COURT:  So here's what I suggest you do, we'll
take a break in just a minute so the court reporter can come
up.  Maybe you could identify a document or documents that are
responsive.  I fear what they're referring to are demonstrative
aids.

MR. DE VRIES:  I think that's probably what they're
asking for.

THE COURT:  It's not my practice to send

KARTSYN1

demonstratives into the jury room, but at their request I will

usually allow them to see demonstrative aids they ask to see in

the courtroom.  So what I would like you to do is pull what you

think are the relevant exhibits as well as the relevant

demonstrative aids so you can show them to counsel for Syntel

and we can go from there.

MR. DE VRIES:  Your Honor, we may need to consult

about that.  I know we have had this come up before.  And so

why don't we do that.  And then one thing that we ended up

doing last time was essentially writing a question back that

said what information are you looking at, because I know that

that in terms of sending demonstrative aids or providing that,

I know there's some rules around that which is what I wanted to

consult on.  But one thing that we might be able to do is to

ask if there's a piece of information that they're looking for

that I don't think implicates those, but in the meantime we'll

look for those documents.

THE COURT:  So I'm just curious, in terms of asking

for a piece -- asking if there's any information, how is that

handled in terms of giving them the information?  I mean I

suppose we certainly could read from the transcript, but that's

not a very efficient way or user friendly way of doing it.

MR. DE VRIES:  The last time that we did this earlier

this year, I will just recount this in case it's helpful, we

had a request from the jury, it seemed clear that it was

looking for the demonstrative slides, and I think there was a

conclusion from the parties that that wasn't going to be a good

way to go about it.  So we wrote back and said we need like a

more specificity, and then they came back and they said we're

looking for the dollar amount of X., and then we were able to

reach agreement with the other party to just respond.  Now

that, to be clear, took several rounds to get there, and I

don't mean to guess at what they might be looking for, but that

is what we did in that case.

            THE COURT:  Okay.  And so they have also asked for the

closing statement presentations.  I suspect, again, they're

looking for demonstratives, and I would not hand wholesale the

demonstration demonstratives over to them.

            So here's what I suggest, I think we should take a

break and Ms. Carson can find the specific document or

documents that are requested, perhaps the two trial teams can

talk to each other and see if you can figure out how you want

to deal with this.  My suspicion is that they're just going

through everything in order.  This is not a one-sided request,

and so it's going to affect everyone eventually.  So if we

could figure out a way to deal with it, I think that would be

good.

            So let's take a break now and we'll let Mr. McDaniel

come up here and you'll let Mr. Street know when you are done

talking to each other and you want me back.  Thank you.

KARTSYN1

1          MR. DE VRIES:  Thank you, your Honor.

2          (Recess taken)

3          THE COURT:  Mr. Street brought me your joint proposal.

4    So he just typed it up and I'm going to send it back to the

5    jury room and sign it.

6          But in your view, does that cover both the request for

7    Mr. Britven's document as well as the more general request for

8    the summation slide?

9          MR. DE VRIES:  For TriZetto we certainly do, and I

10   don't want to speak for Syntel, but I believe they do as well.

11         MR. GROOMBRIDGE:  Yes, your Honor.

12         THE COURT:  So I will sign it.  It says we cannot

13   provide the demonstrative slide decks we believe you have

14   requested.  Please let us know what information you are

15   specifically looking for.

16         MR. DE VRIES:  Yes, your Honor.

17         THE COURT:  I'll be back when we hear from them.

18         (Recess taken)

19         THE COURT:  I have a response from the jury, which I

20   will mark as Court Exhibit 10.  I will tell you in substance

21   what it says first.  In substance, it says never mind.

22         So it says:  We wanted to see the demonstrative slides

23   to find out the exact damage figure presented by Mr. Britven.

24   In reading your directions, we have seen we do not need

25   mathematical precision.  We no longer need the document.  Thank

1    you.  Signed by the foreperson.

2              As long as I have you, this is either the first or one

3    of the first civil jury trials to be conducted by this Court

4    during the pandemic, and people have spent a lot of time trying

5    to figure out how we can function and still have trials

6    continue.  And the committee that has been working on that has

7    requested any granular feedback which you can give about what

8    you think is working well, what could be improved on and how,

9    whether protocols that seem to be in place were actually

10   enforced, whether things seemed to slip through the cracks,

11   anything of relevance to the modifications to usual procedures

12   relating to the pandemic.

13             And you can give it to me in any way you want.  You

14   can do it anonymously, you can scribble it on a piece of paper,

15   you can email the chambers email, I don't care, but we very

16   much appreciate your thoughts.  And I have seen comments from

17   the first criminal trial, for example, and they were as

18   specific as we couldn't see through the glare of the screen to

19   see juror whatever.  So be as specific as you like, thank you.

20             MR. DE VRIES:  Yes, your Honor, we'll do that.

21             (Recess taken)

22             THE COURT:  So I have a jury note which I am marking

23   as Court Exhibit 11.  12:48 p.m.  We reached a verdict.

24             (Jury present)

25             (Time noted 1:00 p.m.)

KARTSYN1

1          THE COURT:  Ladies and gentlemen, I understand you've

2     reached a verdict, and I also understand Ms. Jones is your

3     foreperson.  Is it correct, that you reached a verdict?

4          THE FOREPERSON:  Yes.

5          THE COURT:  Could you hand the signed verdict form to

6     Mr. Street, please.

7          So I will read it into the record.

8          1.  Has TriZetto proved that it possessed one or more

9     trade secrets that was or were misappropriated by Syntel in

10     violation of federal law (Defend Trade Secrets Act) for the

11     period May 11, 2016 to October 18, 2020?

12          Answer:  Yes.

13          2.  Has TriZetto proved that it possessed one or more

14     trade secrets that was or were misappropriated by Syntel in

15     violation of New York law for the period January 1, 2012 to

16     October 18, 2020?

17          Answer:  Yes.

18          3.  Has TriZetto proved that Syntel infringed one or

19     more of TriZetto's copyrights?

20          Answer:  Yes.

21          4.  Has Syntel Mauritius proved that TriZetto breached

22     the Master Services Agreement?

23          Answer:  No.

24          5.  Has Syntel Mauritius proved that TriZetto or

25     Cognizant misappropriated Syntel Mauritius's confidential

KARTSYN1

1  information?

2          Answer:  No.

3          They seem to be missing an answer for number 6.

4          THE FOREPERSON:  Your Honor --

5          THE COURT:  You're right, it says answer only if you

6  answered yes to question 4, and it does not, so no answer to

7  number 6.  Thank you.

8          7.  Did TriZetto or Cognizant intentionally interfere

9  with Syntel, Inc.'s contractual relationship with the provided

10 named employees?

11         Answer:  No.

12         On the damages case, compensatory damages for

13 TriZetto's claims.

14         8.  What is the dollar amount of compensatory damages,

15 if any, TriZetto is entitled to receive from Syntel for the

16 misappropriation of trade secrets under federal law, which

17 permits recovery of avoided costs?

18         Answer:  $284,855,192.

19         9.  What is the dollar amount of compensatory damages,

20 if any, TriZetto is entitled to receive from Syntel for the

21 misappropriation of trade secrets under New York law, which

22 does not permit recovery of avoided costs?

23         Answer:  $142,427,596.

24         10.  What is the dollar amount of compensatory

25 damages, if any, TriZetto is entitled to receive from Syntel

for copyright infringement?

        Answer:  $59,100,000.

        11.  Being mindful of not awarding damages that result
in double or multiple recovery for the same injury, what is the
total amount of compensatory damages, if any, TriZetto is
entitled to receive from Syntel in light of your answers to the
previous three questions?

        Answer:  $284,855,192.

        So questions 12, 13 and 14 are not answered.

        Question 15, the answer is:  Zero.

        And now on to punitive damages, number 16.  Do you
find that TriZetto is entitled to receive punitive damages?

        Answer:  Yes.

        17.  What is the dollar amount of punitive damages
TriZetto is entitled to receive from Syntel?

        $569,710,384.

        18 is not answered.

        19 is not answered.

        Affirmative defenses.  Number 20.  Latches.  For any
trade secrets that you find Syntel misappropriated, has Syntel
proved its affirmative defense of latches?

        Answer:  No.

        21.  For any copyrights that you find Syntel
infringed, has Syntel proved its affirmative defense of
latches?

KARTSYN1

1               Answer:  No.

2               22.  For any trade secrets that you find Syntel

3      misappropriated under federal law, has Syntel proved its

4      affirmative defense of waiver by a preponderance of the

5      evidence?

6               Answer:  No.

7               23.  For any trade secrets that you find Syntel

8      misappropriated under state law, has Syntel proved its

9      affirmative of defense of waiver by clear proof?

10              Answer:  No.

11              24.  For any copyrights that you find Syntel

12     infringed, has Syntel proved its affirmative defense of waiver?

13              Answer:  No.

14              25.  For any trade secrets that you find Syntel

15     misappropriated under federal law, has Syntel proved its

16     affirmative defense of estoppel?

17              Answer:  No.

18              26.  For any trade secrets that you find Syntel

19     misappropriated under state law, has Syntel proved its

20     affirmative defense of estoppel by clear and convincing

21     evidence?

22              Answer:  No.

23              27.  For any copyrights that you find Syntel

24     infringed, has Syntel proved its affirmative defense of

25     estoppel?

KARTSYN1

1                  Answer:  No.

2                  28.  Has Syntel proved the defense of unclean hands?

3                  Answer:  No.

4                  29.  Has TriZetto/Cognizant proved the defense of

5        unclean hands?

6                  Answer:  Yes.

7                  And that is the end of the verdict form.  And now I

8        will poll the jury.  And first, let me start in the front row,

9        Ms. Smith, is that your verdict?

10                 JUROR:  Yes.

11                 THE COURT:  Mr. Villena, is that your verdict?

12                 JUROR:  Yes.

13                 THE COURT:  Mr. Molina, is that verdict?

14                 JUROR:  Yes.

15                 THE COURT:  Ms. Jones, is that your verdict?

16                 JUROR:  Yes.

17                 THE COURT:  Ms. Weiss, is that your verdict?

18                 JUROR:  Yes.

19                 THE COURT:  Ms. Jimenez, is that your verdict?

20                 JUROR:  Yes.

21                 THE COURT:  Ms. Donner, is that your verdict?

22                 JUROR:  Yes.

23                 THE COURT:  Ladies and gentlemen, thank you so much.

24       I know this has been a difficult experience for so many

25       reasons.  As I told you on the first day, in some ways this is

1    a historic event.  We have been without jury trials for so long

2    and I know it's not easy to come out of the confinement of your

3    homes to come here in a public place and meet with people you

4    don't know for days on end and then to undertake a task that is

5    really so difficult.  I know that it's been complicated, I know

6    that at times it's been tedious, I know that some of you have

7    had to travel a long distance every day.  And on behalf of

8    myself and the lawyers and the parties, we all really are so

9    appreciative and want to thank you for your service.

10           So what I would like to do now is you are discharged,

11   but if you would go into the jury room I will come back there

12   and I would like to thank you each personally before you leave.

13   Thank you again.

14           I will mark the verdict form as Court Exhibit 12.

15           (Jury not present)

16           THE COURT:  Okay.  So I am going to go talk to the

17   jury and thank them personally, shake all their hands.  I want

18   to thank counsel.  I know it's been just as hard for you all

19   for all the same reasons and more.  I know that it's been

20   difficult to get your witnesses here, to get you all here, and

21   I also want to thank you for the quality of lawyering on both

22   sides and for the civilized way that you have treated each

23   other and comported yourselves.  It made it a real pleasure to

24   preside over the trial.  If you don't mind, I will shake all

25   your hands before I shake the jurors'.

KARTSYN1

1              I can't shake hands, it's Covid.  Okay, well, I won't
2        even try to.
3              Thank you, everybody, individually and collectively
4        also.  I know the lawyers worked incredibly hard.  Also, thanks
5        to your teams who must be in your offices toiling away.  I know
6        how this works, and I know that they have spent a lot of late
7        nights, so please give them my thanks.
8              MR. DE VRIES:  Thank you very much, your Honor.
9              MR. GROOMBRIDGE:  Thank you, your Honor.
10             (Trial concluded)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25