UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SYNTEL STERLING BEST SHORES MAURITIUS LIMITED, and SYNTEL, INC., | 1:15-CV-00211 (LGS) (SDA) |
| Plaintiffs and Counterclaim-Defendants, | Hon. Lorna G. Schofield |
| v. | |
| THE TRIZETTO GROUP, INC. and COGNIZANT TECHNOLOGY SOLUTIONS CORP., | |
| Defendants and Counterclaim-Plaintiffs. | |

## TRIZETTO'S REPLY IN SUPPORT OF ITS MOTION FOR A PERMANENT INJUNCTION AND PRE- AND POST-JUDGMENT INTEREST

## TABLE OF CONTENTS

**Page**

I.  TriZetto's Request for an Injunction Should Be Granted.................................................... 1

    A.  Syntel's Misappropriation and Infringement Irreparably Harmed TriZetto ........... 1

    B.  Monetary Damages Do Not Adequately Compensate For These Harms ............... 4

    C.  The Balance of Hardships Favors an Injunction........................................................ 5

    D.  The Public Interest Favors an Injunction ................................................................. 5

    E.  The Proposed Injunction Is Specific and Narrowly Tailored ................................. 6

II.  TriZetto's Alternate Request for an Ongoing Royalty Is Proper ........................................ 8

III.  Pre- and Post-Judgment Interest Is Appropriate .................................................................. 9

IV.  Conclusion ................................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anacomp, Inc. v. Shell Knob Servs., Inc.*,
  1994 WL 9681 (S.D.N.Y. Jan. 10, 1994) ................................................................4

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)..............................................................................8

*AT&T Commc'ns v. Pac. Bell*,
  1996 WL 940836 (N.D. Cal. 1996) .........................................................................2

*Atl. Mut. Ins. Co. v. Napa Transp.*,
  399 F. Supp. 2d 523 (S.D.N.Y. 2005)...................................................................10

*Banff v. Express*,
  1996 WL 79867 (S.D.N.Y. Feb. 26, 1996)..............................................................9

*Bianco v. Globus Med., Inc.*,
  2017 WL 3895921 (E.D. Tex. Sept. 6, 2017)..........................................................6

*Bos. Sci. Corp. v. Cordis Corp.*,
  838 F. Supp. 2d 259 (D. Del. 2012), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013)........8

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  2013 WL 890126 (N.D. Cal. Jan. 23, 2013) ...........................................................4

*Capitol Records, v. MP3tunes*,
  2015 WL 13684546 (S.D.N.Y. Apr. 3, 2015)..........................................................9

*Chateau Hip, Inc. v. Gihuly*,
  1996 WL 437929 (S.D.N.Y. Aug. 2, 1996)..............................................................4

*Cioffi v. N.Y. Cmty. Bank*,
  465 F. Supp. 2d 202 (E.D.N.Y. 2006) ...................................................................10

*Complex Sys. v. ABN AMRO Bank*,
  2014 WL 1883474 (S.D.N.Y. May 9, 2014) ...........................................................3

*E.E.O.C. v. Erie Cty.*,
  751 F.2d 79 (2d Cir. 1984).....................................................................................10

*eBay Inc. v. MercExchange*,
  547 U.S. 388 (2006)................................................................................................1

*ExpertConnect v. Fowler,*
    2018 WL 11264885 (S.D.N.Y. Jul. 25, 2018) ..........................................................3

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
    559 F.3d 110 (2d Cir. 2009) ...................................................................................3

*Fendi Adele v. Burlington Coat Factory,*
    2010 WL 11586698 (S.D.N.Y. Aug. 9, 2010) .........................................................9

*In re FKF 3, LLC,*
    2018 WL 5292131 (S.D.N.Y. Oct. 24, 2018) ........................................................10

*Great Lakes Bus. Tr. v. M/T ORANGE SUN,*
    855 F. Supp. 2d 131 (S.D.N.Y. 2012) ..................................................................10

*Gutierrez v. Taxi Club Mgmt.,*
    2018 WL 3429903 (E.D.N.Y. July 16, 2018) .........................................................9

*Hansen Beverage Co. v. N2G Distrib. Inc.,*
    2008 WL 5427602 (S.D. Cal. Dec. 30, 2008) .........................................................5

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.,*
    2017 WL 4038884 (E.D. Tex. Sept. 13, 2017) .......................................................8

*Inventus Power, v. Shenzhen Ace Battery,*
    2020 WL 3960451 (N.D. Ill. July 13, 2020) ..........................................................8

*Motorola Credit Corp. v. Uzan,*
    561 F.3d 123 (2d Cir. 2009) ...................................................................................9

*PLC Trenching v. Newton,*
    2012 WL 1832150 (N.D.N.Y. May 18, 2012) .........................................................6

*RealPage, Inc. v. Enter. Risk Control, LLC,*
    2017 WL 3313729 (E.D. Tex. Aug. 3, 2017) ..........................................................6

*RMH Tech v. PMC Indus., Inc.,*
    352 F. Supp. 3d 164 (D. Conn. 2018) .....................................................................6

*Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1999) ...................................................................................2

*S.E.C. v. Drexel Burnham Lambert Inc.,*
    837 F. Supp. 587 (S.D.N.Y. 1993), *aff'd,* 16 F.3d 520 (2d Cir. 1994) ...............1, 10

*Sec. Ins. Co. v. Old Dominion Freight Line,*
    314 F. Supp. 2d 201 (S.D.N.Y. 2003) ..................................................................10

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*,
   228 F. Supp. 2d 455 (S.D.N.Y. 2002)........................................................................5

*T&S Brass and Bronze Works, Inc. v. Slanina*,
   2016 WL 11201768 (D.S.C. Dec. 20, 2016) ...........................................................7

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
   2014 WL 1457797 (D. Del. Apr. 14, 2014)................................................................8

*Ticor Title Ins. Co. v. Cohen*,
   173 F.3d 63 (2d Cir. 1999)........................................................................................4

*Trs. of the Local 813 I.B.T. Ins. Tr. Fund v. Chinatown Carting*,
   2008 WL 5111108 (E.D.N.Y. Dec. 4, 2008) .............................................................9

*UniRAM Tech. v. Taiwan Semiconductor*,
   2008 WL 11515597 (N.D. Cal. Apr. 17, 2008) ......................................................2, 7

*WesternGeco v. ION Geophysical*,
   138 S. Ct. 2129 (2018)...............................................................................................8

*WPIX, Inc. v. ivi, Inc.*,
   765 F. Supp. 2d 594, 619 (S.D.N.Y. 2011)................................................................5

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012).......................................................................................6

*XY, LLC v. Trans Ova Genetics*,
   890 F.3d 1282 (Fed. Cir. 2018)..................................................................................8

**Statutes**

17 U.S.C. § 502.................................................................................................................1

18 U.S.C. § 1836.......................................................................................................1, 7, 8

18 U.S.C. § 1837.............................................................................................................7

18 U.S.C. § 1839.............................................................................................................2

**Rules**

C.P.L.R. § 5001(a) ...........................................................................................................9

Although the jury found that Syntel misappropriated TriZetto's trade secrets and infringed its copyrights, Syntel shows no remorse or willingness to stop using the intellectual property it unlawfully took. To the contrary, Syntel plainly intends to continue misappropriating TriZetto's trade secrets, boldly stating that the jury's verdict "entitle[s]" Syntel to "use [the trade secrets] freely." Dkt. 966 ("Br.") 26. Syntel is wrong. The jury's $285 million award represents the amount of *money* Syntel *would have spent* to develop the trade secrets absent misappropriation. Tr. 396:7-12, 398:6-14. Syntel's misappropriation, however, will continue to irreparably harm TriZetto well beyond that figure absent a permanent injunction. Tr. 398:1-5. Syntel identifies no "exceptional circumstances" that would preclude entry of an injunction, and thus, it must be enjoined from continuing its misappropriation and infringement. 18 U.S.C. § 1836(b)(3)(A); 17 U.S.C. § 502.

Syntel also argues that awarding prejudgment interest would be inequitable. Br. 36. A willful and malicious misappropriator should not be permitted to maintain its unjust enrichment by appealing to the equities. Syntel saved $285 million through its misappropriation, and it should be required to pay interest on that amount to serve the critical purpose of the DTSA to "deprive[] the [defendants] of their ill-gotten gains and prevent[] unjust enrichment." *S.E.C. v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 612-13 (S.D.N.Y. 1993), *aff'd*, 16 F.3d 520 (2d Cir. 1994). Accordingly, prejudgment interest should be awarded at the prime rate, compounded quarterly, based on the jury's DTSA award.

## I.     TriZetto's Request for an Injunction Should Be Granted

### A.     Syntel's Misappropriation and Infringement Irreparably Harmed TriZetto

TriZetto does not dispute that it bears the burden of proving that it will suffer irreparable harm absent an injunction. While it is not enough to "simply presume" irreparable harm, after a trial, irreparable harm must be assessed in light of what was proven at trial, not "an entirely clean slate." *eBay Inc. v. MercExchange*, 547 U.S. 388, 395 (2006). Here, the evidence presented at trial,

1

including the evidence cited in TriZetto's motion for a permanent injunction and here, demonstrate the irreparable harm to TriZetto.[1] Dkt. 963 § IX.A.

To argue otherwise, Syntel asserts there is no evidence it disseminated TriZetto's trade secrets or will in the future. Br. 27. But TriZetto derives substantial value from the fact that its tools, including its test cases and automation scripts, are not shared across customers, and the evidence showed that Syntel had no respect or concern for the confidentiality of TriZetto's trade secrets. Syntel regularly obtained trade secrets from one customer for use with another, DTX-104, and placed TriZetto trade secrets into a Syntel shared drive for use with any potential customer.[2] DTX-100; *see also* Tr. 124:15-128:4, 618:3-9 (Syntel's General Counsel testifying that he did not know whether Syntel ever transferred or disclosed TriZetto's confidential information). Disclosure of the trade secrets outside the bounds of TriZetto's confidentiality agreements and requirements eliminates one of TriZetto's significant "measures to keep [its trade secret information] secret," thereby impairing the value of the trade secrets and potentially destroying their trade secret status. 18 U.S.C. § 1839(3); *see, e.g.*, Tr. 174:15-175:3; PTX-848.

Moreover, despite the verdict, Syntel has made clear that it believes it can continue to use TriZetto's trade secrets for any purpose whatsoever (*see* Br. 26), and nowhere confirms that it intends to maintain the confidentiality of those trade secrets. *See UniRAM Tech. v. Taiwan Semiconductor*, 2008 WL 11515597, at *6 (N.D. Cal. Apr. 17, 2008) (loss of control over who receives trade secrets and the terms of such disclosures, "is itself an irreparable harm."); *see also AT&T Commc'ns v. Pac. Bell*, 1996 WL 940836, at *10 (N.D. Cal. 1996). While Syntel attempts

---

[1] Syntel asserts that a permanent injunction may not enter without "a clear showing of likely ***and imminent*** irreparable harm." Br. 27. "[T]he 'imminent' aspect of the harm[, however,] is not crucial to granting a permanent injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999).

[2] That Facets as a whole may be more valuable than it was before is beside the point. If Syntel discloses the trade secrets in its possession, the value of Facets would undeniably be reduced.

to diminish the value of TriZetto's trade secrets by calling them "obsolete," that makes Syntel unlike the misappropriator in *Faiveley*, who sought a competitive advantage with the trade secrets. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009). Thus, without an injunction, there is no guarantee that Syntel will restrict its disclosure of TriZetto's trade secrets.

Syntel also attempts to brush aside TriZetto's market share loss and reputational harm by claiming they are irrelevant absent a risk of dissemination to the public. *See* Br. 28 n. 24. As explained above, that risk exists; but in any event, loss of market share, and harm to goodwill and reputation, are recognized forms of irreparable harm independent of any trade secret dissemination. *See ExpertConnect v. Fowler*, 2018 WL 11264885, at *2 (S.D.N.Y. Jul. 25, 2018) (separately considering dissemination and impaired goodwill and reputation). Although Syntel suggests these harms are speculative, Syntel does not dispute that its misappropriation caused TriZetto to lose market share or that TriZetto will continue losing market share in the future absent an injunction in this case. This *is* irreparable harm. *Complex Sys. v. ABN AMRO Bank*, 2014 WL 1883474, at *12-13 (S.D.N.Y. May 9, 2014) ("well-established that … loss of current or future market share may constitute irreparable harm.").[3] The challenges in quantifying the harm are exacerbated by Syntel's unabashed refusal to produce its financials. Dkt. 963 at 59-60. Despite having failed to produce updated financials for nearly three years, Syntel claims "TriZetto offers no evidence Syntel understated use, revenues, or profits." Br. 29. Syntel has not merely "understated" this information—it has not provided it at all, and then argued that these deliberately-incomplete records shows a low degree of harm.

In addition, Syntel skipped the more than a decade of time, effort, and resources it took

---

[3] Syntel incorrectly suggests that in *Complex Systems*, the court granted an injunction solely because damages were difficult to quantify. Br. 28, n. 25. The court recognized many irreparable harms (lost sales, lost market share, and reputational harm), which were independent of the difficulty in calculating damages. *Complex Sys.*, 2014 WL 1883474, at *13. Both irreparable harm and difficulties calculating monetary damages are present here.

3

TriZetto to develop the trade secrets and leap-frogged directly to forcing TriZetto to compete with its own stolen trade secrets. *See* Tr. 385:16-20, 387:1-13; DTX-149. Not unlike a false advertising case, Syntel held out TriZetto's trade secret materials as its own when pursuing competitive business, which diminished TriZetto's reputation with customers as an innovator, at a time when Syntel should have been lawfully working to develop the technologies it stole. Dkt. 963 at 27 n. 17; *Anacomp, Inc. v. Shell Knob Servs., Inc.*, 1994 WL 9681, at *5 (S.D.N.Y. Jan. 10, 1994) ("loss of the advantage of being the pioneer in [a] field and [a] market leader, may constitute irreparable harm."). Accordingly, TriZetto has established irreparable harm.

### B.   Monetary Damages Do Not Adequately Compensate For These Harms

Syntel contends monetary damages should be sufficient to address the ongoing irreparable harms to TriZetto because (i) Mr. Britven calculated damages at trial, and (ii) the jury's award already reflected Syntel's total avoided costs. Br. 29. Syntel again is incorrect. The $285 million does not account for the full damage to TriZetto that resulted from Syntel's theft, nor was all of the damage caused by Syntel's head start calculable. Tr. 384:24-385:1; Dkt. 963 § IX.A; Dkt. 964-7 ¶¶ 8-15. Moreover, Syntel ***continues*** to benefit from its head start, and does not dispute it was incapable of developing the trade secrets as of today even if they actually incurred the costs they avoided through misappropriation. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 890126, at *8-*9 (N.D. Cal. Jan. 23, 2013). This is future, not past, harm.[4] Syntel's claims that TriZetto's trade secrets are obsolete (which the jury rejected) cannot be squared with its claims that its business would be seriously harmed without use of these trade secrets. Br. 30–31. Because Syntel confirms it intends to continue using TriZetto's trade secrets to solicit business from TriZetto's customers, that will likely result in loss of at least some of TriZetto's customers. *Ticor*

---

[4] As a result, Syntel's reliance on *Chateau Hip, Inc. v. Gihuly*, in which plaintiff's allegations "all concern[ed] past acts" does not support its position.  1996 WL 437929, at *2 (S.D.N.Y. Aug. 2, 1996).

*Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (irreparable injury where loss of customer "would produce an indeterminate amount of business in years to come."). Because the extent of Syntel's future intended use of TriZetto's trade secrets and copyrights is not entirely certain, an injunction is all the more necessary and monetary damages are therefore inadequate. *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 466 (S.D.N.Y. 2002).[5]

### C.    The Balance of Hardships Favors an Injunction

Syntel asserts TriZetto will face no hardship in the absence of an injunction because other Facets service providers exist. Br. 31. But TriZetto is not asserting that fair competition with those service providers, who did not steal TriZetto's trade secrets or infringe its copyright, is a hardship. TriZetto is asserting that unfair competition—forcing TriZetto to compete with a willful and malicious misappropriator and infringer—is a hardship that warrants an injunction. *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 619 (S.D.N.Y. 2011) ("Defendants cannot seriously argue that" legitimate use of IP by others means "*illegal* and uncompensated use does not irreparably harm plaintiffs."). Any alleged harm to Syntel's relationship with BSC and CDPHP (allegedly its only remaining Facets customers) does not tip the balance in its favor.[6] This work amounts to less than 1% of its revenues, and Syntel's desire to continue business-as-usual is not a hardship that weighs against an injunction.[7] *See WPIX*, 765 F. Supp. 2d at 621.

### D.    The Public Interest Favors an Injunction

Syntel does not deny that the public interest supports trade secrets law's encouragement of

---

[5] Syntel suggests no injunction was entered in *Shred-It*. Not so: while defendant's service of current customers could continue, the Court enjoined future "unfair competition." 228 F. Supp. 2d at 466.

[6] In *Hansen Beverage Co. v. N2G Distrib. Inc.*, Syntel's only cited case in support of its purported harm, the court denied a *preliminary* injunction where it found disputes of fact as to plaintiff's likelihood of success on the merits and the balance of equities "disfavor[ed] the injunction *without further factual development*." 2008 WL 5427602, at *4-*6 (S.D. Cal. Dec. 30, 2008). Here, TriZetto prevailed on the merits and the jury resoundingly found in its favor.

[7] Syntel also quibbles with the scope of the injunction, asserting it would cover "lawful" activity. Br. 30. As explained in § I.E., *infra*, Syntel's complaints can be addressed with minor modifications and thus work no hardship on Syntel.

innovation through protection of trade secrets. Dkt. 963 § IX.C. Instead, Syntel claims that an injunction is contrary to the public interest because it would create a "Facets services monopoly." Br. 31. That simply is not credible: just one paragraph earlier, Syntel argued the exact opposite, *i.e.*, that TriZetto "currently faces services competition from companies **besides Syntel**." *Id.*; Tr. 570:10-17 (Infosys, Optum, Emids service Facets). Those other competitors would still be in the market because, to TriZetto's knowledge, they did not steal TriZetto's trade secrets or infringe its copyrights. Nor would an injunction stop Syntel from lawfully competing with TriZetto. But allowing Syntel to continue its theft would benefit thieves to the detriment of the innovators by strongly discouraging the years and hundreds of millions of dollars spent to develop trade secret technologies. That is contrary to the public interest. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012); *see also RMH Tech v. PMC Indus., Inc.*, 352 F. Supp. 3d 164, 203-204 (D. Conn. 2018). Especially because TriZetto can meet the needs of Syntel's remaining Facets customers if Syntel is enjoined, Dkt. 964, Ex. 11 ¶¶ 4-6, an injunction here greatly favors the public interest.

### E.   The Proposed Injunction Is Specific and Narrowly Tailored

Syntel raises three objections to TriZetto's proposed injunction.[8] *First*, Syntel argues the proposed injunction does not "identify with specificity any trade secrets" and includes "anything TriZetto may in the future assert is 'confidential.'" Br. 32-33. Although Syntel knows what it stole, TriZetto has revised its proposal to define "Trade Secret Information" as the 104 trade secrets Syntel misappropriated. Ex. 14. This is more than sufficient.[9] *See PLC Trenching v. Newton*, 2012

---

[8] Other than with respect to the geographical scope of the injunction, Syntel does not object to the copyright-related provisions of the injunction. Other than with respect to the definition of Trade Secret Information, Syntel also does not object to the removal and quarantine proposal (§ II) or TriZetto's audit rights proposal (§ III).

[9]  To be clear, the injunction must cover Syntel's use of documents and source code derived from these trade secrets and copyrights, in addition to exact copies of the documents and source code themselves. *Bianco v. Globus Med., Inc.*, 2017 WL 3895921, at *2 n.1 (E.D. Tex. Sept. 6, 2017) (collecting cases imposing injunctions or running royalties on "products that are not colorably different from [adjudicated] products"). Without that limitation, Syntel may seek to evade the injunction by arguing it can continue using the D2 Data Generator or the test cases and automation scripts because Syntel has rebranded those TriZetto trade secrets as its own. Tr. 271:23-273:12, 281:4-10; *RealPage, Inc. v.*

WL 1832150, at \*4-\*5 (N.D.N.Y. May 18, 2012); *UniRAM*, 2008 WL 11515597, at \*4-\*6.

*Second*, Syntel contends the injunction covers "lawful activity" based on the CDPHP TPAA and its claim that "TriZetto authorizes some Facets customers to share its Confidential Information with service providers without restrictions." Br. 33. Yet Syntel has provided no assurance that any TriZetto trade secrets it may have properly obtained are, in fact, being used or maintained in a proper way. D.I. 957 at 4-5. Syntel devised its misappropriation strategy around so-called "properly" obtained documents, which were then improperly used.[10] Nonetheless, to limit disputes before the Court, if Syntel believes it is in lawful possession of a TriZetto trade secret and is going to lawfully use that trade secret, it should notify TriZetto and identify the material (and its source) so TriZetto can confirm. 18 U.S.C. § 1836(b)(3)(A)(ii) (court may "requir[e] affirmative actions … to protect the trade secret"); *T&S Brass and Bronze Works, Inc. v. Slanina*, 2016 WL 11201768, at \*6 (D.S.C. Dec. 20, 2016). Due to Syntel's claim that its Facets-related work is limited, any burden on it to comply with such a provision should be low.

*Finally*, Syntel asserts TriZetto must now chase it with litigations around the world because Syntel insists the presumption of extraterritoriality precludes entry of a worldwide injunction here. Br. 34. Syntel ignores that the DTSA rebuts this presumption and "applies to conduct occurring outside the United States if … the offender is … an organization under the laws of the United States" or "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837. Syntel does not dispute it is a U.S. corporation or the acts of furtherance TriZetto described in its brief. Dkt. 963 § IX.D. Even if the Court disagrees the presumption of extraterritoriality is rebutted, Syntel does not dispute that the misappropriation and infringement (i) are the focus of the DTSA and Copyright Act's injunction provisions, or (ii) occurred here. *Id.* Thus, a worldwide

---

*Enter. Risk Control, LLC*, 2017 WL 3313729, at \*12, \*14 (E.D. Tex. Aug. 3, 2017).
[10]  DTX-84 at 11; DTX-5; DTX-36; DTX-100; DTX-101; DTX-95; Tr. 514:1–5, 579:10–14.

injunction to halt that misappropriation and infringement is a permissible, domestic application of the DTSA and Copyright Act. *See WesternGeco v. ION Geophysical*, 138 S. Ct. 2129, 2137 (2018); *Inventus Power, v. Shenzhen Ace Battery*, 2020 WL 3960451, at *7 (N.D. Ill. July 13, 2020).

## II.   TriZetto's Alternate Request for an Ongoing Royalty Is Proper

Syntel argues that, even absent an injunction, no royalty should be awarded for its ongoing use of TriZetto's trade secrets and copyrights. Br. 34–35. This argument rests on the misconception that the jury award fully compensates for Syntel's ongoing misappropriation. It does not. *See* § I.B, *supra*; Dkt. 964-7 ¶¶ 8-15. In these circumstances, § 1836 ***requires*** that an ongoing royalty be awarded if an injunction is not entered. 18 U.S.C. § 1836(b)(3)(A)(iii).

Syntel also raises two disagreements with the royalty itself. *First*, Syntel disputes TriZetto's royalty because it is purportedly higher than royalties awarded in other cases.[11] Br. 34 & n.28. But in those cases, the ongoing royalty was calculated based on the jury award, a recognized method for calculating ongoing royalties and what TriZetto did here.[12] *Second*, Syntel argues the royalty could only be "tethered to actual use" of the trade secrets by imposing the 10% Duff & Phelps royalty to "any revenue at issue." Br. 34–35. The jury, however, rejected this very damages model at trial, Tr. 444:9-448:11, 462:14-463:16, and imposing that rejected royalty post-trial "essentially amounts to undoing a jury finding." *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (reversing ongoing royalty award based on theory jury rejected). Syntel also identifies no reason it would be entitled to a lower royalty now that it has been adjudicated a willful and malicious misappropriator. *See id.*; *Arctic Cat Inc. v. Bombardier*

---

[11] Syntel's dispute with the jury award, Br. 34, fails for the reasons in TriZetto's opposition. Dkt. 963 §§V–VII.

[12] *See Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 275–76 (D. Del. 2012) (awarding "effective damages rate" based on verdict), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2017 WL 4038884, at *2 (E.D. Tex. Sept. 13, 2017) (basing ongoing royalty on the jury's implied royalty award); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 2014 WL 1457797, at *3-5 (D. Del. Apr. 14, 2014) (similar).

*Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) (royalty calculus "markedly different" once liability is found). TriZetto's proposed royalty of at least $14 million/year for Syntel's continued use, which is based on the jury's royalty award and relates specifically to the trade secrets Syntel misappropriated, is thus what should be awarded if no injunction is entered.

## III.   Pre- and Post-Judgment Interest Is Appropriate[13]

Syntel contends that prejudgment interest should not be awarded *regardless* of the ultimate damages award because the DTSA provides for punitive damages (which TriZetto is not seeking prejudgment interest on) in addition to compensatory damages. Br. 36. Syntel cites no authority for displacing Second Circuit's discretionary prejudgment interest analysis with its desired rule, which would contravene the remedial purpose of the DTSA to prevent misappropriator's from retaining their unjust enrichment.[14] Dkt. 963 § X. Indeed, allowing Syntel to benefit from its position as a willful and malicious misappropriator violates the basic tenet that one with unclean hands cannot seek relief in equity.[15] *See Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009); *Trs. of the Local 813 I.B.T. Ins. Tr. Fund v. Chinatown Carting*, 2008 WL 5111108, at *5 (E.D.N.Y. Dec. 4, 2008) (prejudgment interest awarded where defendant's actions "flagrant").

Syntel also claims prejudgment interest is not warranted because TriZetto has been fully compensated. Again, TriZetto has not, § I.B., *supra*, and Syntel's argument ignores that damages in this case were based on how **Syntel** benefitted from its theft. Although Syntel argues the avoided

---

[13] Syntel does not dispute (i) post-judgment interest should be awarded; (ii) pre-judgment interest, if awarded, should be compounded quarterly; or (iii) TriZetto's interest calculation under New York law. While Syntel suggests the Court could ignore the mandatory nature of C.P.L.R. § 5001(a), its only cited authority (*EJ Brooks*) questioned whether that was proper. In addition, to minimize disputes before the Court, TriZetto will agree that prejudgment interest for its DTSA claim begins on May 11, 2016 and would amount to $60.9M. Br. 37 (citing Ex. 6 ¶ 5).

[14] Awarding prejudgment interest on the compensatory portion of an award is appropriate, even where punitive damages are awarded. *Gutierrez v. Taxi Club Mgmt.*, 2018 WL 3429903, at *1 (E.D.N.Y. July 16, 2018); *Fendi Adele v. Burlington Coat Factory*, 2010 WL 11586698, at *16 (S.D.N.Y. Aug. 9, 2010) (acknowledging propriety of same).

[15] Syntel's repeated discovery misconduct (*see, e.g.*, D.I. 243; D.I. 276; D.I. 342; D.I. 428; D.I. 456) should likewise preclude it from invoking "equity" for its benefit and demonstrates Syntel's cases are inapposite. *Capitol Records, v. MP3tunes*, 2015 WL 13684546, at *2, *4 (S.D.N.Y. Apr. 3, 2015) (no prejudgment interest where both parties responsible for "protracted litigation"); *Banff v. Express*, 1996 WL 79867, at *1 (S.D.N.Y. Feb. 26, 1996) (similar).

R&D was not "money in Syntel's bank account," Br. 36 & n.30, Syntel got to decide how, if at all, to spend the $285 million it saved by not taking the lawful path of investing in necessary R&D to develop the trade secrets. [16] Syntel identifies no "sound reason to deny prejudgment interest," and awarding prejudgment interest in this case would serve the critical purpose of the DTSA to "deprive[] the [defendants] of their ill-gotten gains and prevent[] unjust enrichment." *In re FKF 3, LLC*, 2018 WL 5292131, at *12 (S.D.N.Y. Oct. 24, 2018); *Drexel*, 837 F. Supp. at 612-13.

With respect to the rate itself, Syntel argues for the post-judgment interest rate simply because it is lower than the prime rate. Br. 37. The cases Syntel cites awarding interest based on the post-judgment rate (without considering, let alone rejecting, the prime rate) imposed rates ranging from about 2.1% to 5%, which are 16X to 38X higher than the rate Syntel now asks the Court to impose.[17] Relying on an "artificially low" post-judgment interest rate would "not be adequate." *Great Lakes Bus. Tr. v. M/T ORANGE SUN*, 855 F. Supp. 2d 131, 156 (S.D.N.Y. 2012) (rejecting use of 0.12% post-judgment interest rate, similar to today). "[S]ince the adjusted prime rate has been adopted as a good indicator of the value of the use of money," and Syntel had use of the money it avoided spending to developed the trade secrets it stole, awarding interest based on the prime rate is appropriate here. *E.E.O.C. v. Erie Cty.*, 751 F.2d 79, 82 (2d Cir. 1984).

## IV.   Conclusion

For the foregoing reasons, and those in TriZetto's opening brief (Dkt. 963), TriZetto's request for a permanent injunction and pre- and post-judgment interest should be granted.

---

[16] Syntel mischaracterizes Mr. Britven's testimony to suggest he agreed that the $285 million was not "money in Syntel's bank account." Br. 36 n.30. Mr. Britven was asked whether Syntel "got" the $285 million, i.e., whether someone gave Syntel the $285 million. Tr. 417:23–418:18. He answered that is not what happened, because the $285 million is the amount that Syntel avoided spending, i.e, it saved that money. *Id*; *see also id*. 398:6–14.

[17] *Atl. Mut. Ins. Co. v. Napa Transp.*, 399 F. Supp. 2d 523, 527 (S.D.N.Y. 2005) (T-Bill rate: 2.10%). *Sec. Ins. Co. v. Old Dominion Freight Line*, 314 F. Supp. 2d 201, 204 (S.D.N.Y. 2003) (T-Bill rate: 4.96%); *Cioffi v. N.Y. Cmty. Bank*, 465 F. Supp. 2d 202, 222 (E.D.N.Y. 2006) (T-Bill rate: 4.95%). The rate in *Old Dominion* was the 1-year T-Bill rate on July 20, 1999, and the rate in *Cioffi* was the average 1-year T-Bill rate for the week preceding judgment. Ex. 15.

Dated: February 9, 2021

*/s/ Gianni Cutri* /
Michael W. De Vries
Justin Singh
Benjamin A. Herbert
Andrew Morrill
Samuel Blake
Gavin Moler
KIRKLAND & ELLIS LLP
555 S. Flower St.
Los Angeles, CA 90071
Tel: (213) 680-8400
Fax: (213) 680-8500
michael.devries@kirkland.com
justin.singh@kirkland.com
benjamin.herbert@kirkland.com
drew.morrill@kirkland.com
gavin.moler@kirkland.com

Adam R. Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400
Fax: (415) 439-1500
aalper@kirkland.com

Gianni Cutri
Adam M. Kaufmann
Kyle Kantarek
Jake Rambeau
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
gianni.cutri@kirkland.com
adam.kaufmann@kirkland.com
kyle.kantarek@kirkland.com
jake.rambeau@kirkland.com

Patricia Carson
Leslie M. Schmidt
Joshua L. Simmons
Ryan Kane
KIRKLAND & ELLIS LLP
601 Lexington Ave.

New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
patricia.carson@kirkland.com
leslie.schmidt@kirkland.com
joshua.simmons@kirkland.com
ryan.kane@kirkland.com

*Attorneys for Defendants and Counterclaim-Plaintiffs The TriZetto Group, Inc. and Cognizant Technology Solutions Corp.*