UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                        :

SYNTEL STERLING BEST SHORES       :
MAURITIUS LIMITED, et al.,          :

                                         :              15 Civ. 211 (LGS)

        Plaintiffs and Counterclaim-Defendants, :

                                         :           <u>OPINION AND ORDER</u>

                       -against-              :

                                         :

THE TRIZETTO GROUP, INC., et al.,    :

                                         :

        Defendants and Counterclaim-     :
        Plaintiffs.                       :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       This decision follows a six-day jury trial held in October 2020.  The jury found in favor

of The TriZetto Group, Inc. and Cognizant Technology Solutions Corporation (collectively,

"TriZetto") on all claims and counterclaims that were tried.  These included TriZetto's claims for

trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and New York law,

and a copyright infringement claim against Syntel Sterling Best Shores Mauritius Limited and

Syntel Inc. (collectively, "Syntel").  The jury also considered claims that Syntel brought against

TriZetto.  The jury awarded TriZetto $284,855,192 in compensatory damages and $569,710,384

in punitive damages.

       This Opinion addresses several motions.  Before the case was submitted to the jury, both

Syntel and TriZetto moved for judgment as a matter of law on all claims and counterclaims

under Federal Rule of Civil Procedure ("Rule") 50(a).  The Court reserved ruling on the motions.

After the jury's verdict, Syntel renewed its motion for judgment as a matter of law under Rule

50(b), or in the alternative, a new trial or remittitur under Rule 59.  TriZetto moved for a

permanent injunction and pre- and post-judgment interest on the jury award.

For the reasons that follow, Syntel's motions are denied except its request for a new trial or remittitur on punitive damages. TriZetto's motion for permanent injunction and post-judgment interest is granted, and the motion for pre-judgment interest is denied. TriZetto's Rule 50(a) motion is denied as moot.

## I.    BACKGROUND

TriZetto develops software used by large health insurance companies. One software product is Facets, a healthcare administrative platform, which manages and automates processes for such companies, including the processing of claims. Installing, upgrading and customizing the software can take a significant amount of time and personnel. TriZetto created software tools to facilitate and improve Facets installation, customization and upgrade processes. As a part of its business, TriZetto also provides Facets customization and implementation consulting services to clients.

Syntel provides information technology services. In 2010, Syntel and TriZetto entered into a Master Services Agreement ("MSA"), under which Syntel agreed to provide software development, consulting services and other support to TriZetto's Facets customers, including Facets platform customization and management. In 2012, the parties amended the MSA and, among other things, deleted a provision that barred Syntel from competing with TriZetto. In 2014, TriZetto was acquired by Cognizant, a competitor of Syntel, and Syntel and TriZetto terminated the MSA and their relationship.

Syntel commenced this action on January 12, 2015, asserting breach of contract and other claims. TriZetto asserted counterclaims. Discovery was protracted. On January 31, 2017, the Court ordered a neutral forensic examination of Syntel's digital electronic devices and files. On August 25, 2017, the Court entered a preclusion order to sanction Syntel for continued discovery

misconduct (the "Preclusion Order"). The Preclusion Order barred Syntel from (1) "offering or presenting any evidence that it did not misappropriate and unlawfully copy TriZetto's Facets test cases and automation scripts" and (2) "offering or presenting any evidence that it independently developed any of the Platform Management Tools at issue in this case."

## II.   SYNTEL'S RULE 50 AND 59 MOTIONS

Syntel moves for judgment as a matter of law under Rule 50(b) on TriZetto's copyright infringement claim and trade secret claims under both the DTSA and New York law, and challenges the jury's damages award. Syntel alternatively moves for a new trial under Rule 59. As to damages, Syntel also asks the Court for remittitur or a new trial. Syntel's arguments regarding liability are addressed before damages.

### A.   LEGAL STANDARDS

Judgment as a matter of law under Rule 50(b) is appropriate "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019) (emphasis in original) (internal quotation marks omitted). "The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (internal quotation marks omitted). A Rule 50 motion may be granted only if "there exists such a complete absence of evidence supporting the verdict, that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir. 2016) (alterations in original) (quoting *SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014)).

Under Rule 59, "[a] trial court should not grant a motion for a new trial unless it is convinced that the jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (internal quotation marks omitted). "Remittiturs are a common procedure used by the courts to, in effect, reduce the amount of a damage award that the court concludes is impermissibly high." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 167 (2d Cir. 2014). Through this procedure, a court "compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 51 (2d Cir. 2015) (internal quotation marks omitted).

## B.    LIABILITY

Syntel seeks judgment as a matter of law or a new trial on the trade secret misappropriation and/or the copyright claims based on four arguments: (1) Syntel did not misappropriate 102 of the 104 asserted trade secrets because it was contractually authorized to use them; (2) TriZetto waived its rights to, and/or is estopped from, bringing trade secret misappropriation and copyright infringement claims; (3) the asserted trade secrets were inadequately specified as a matter of law and no reasonable jury could have determined whether any of them qualified as trade secrets; and (4) no reasonable jury could have found that Syntel engaged in trade secret misappropriation after May 11, 2016, the effective date of the DTSA. Under the rigorous standards of Rule 50(b) and Rule 59, these challenges are rejected.

### 1.    2012 Amendment

Syntel argues that it was authorized to use the 102 trade secrets not subject to the Preclusion Order -- *i.e.*, all but two of the trade secrets in this case -- following the 2012 Amendment to the parties' MSA. Specifically, Syntel argues that the amendment's deletion of

4

the MSA's non-competition provision authorized Syntel to use TriZetto's confidential information.  The jury heard the same argument at trial and rejected it.  The jury's conclusion was not seriously erroneous or contrary to overwhelming evidence.

Syntel styles its argument as construction of an unambiguous contract, raising a question of law for the Court, and thus bypassing the jury.  *Compare Banos v. Rhea*, 33 N.E.3d 471, 475 (N.Y. 2015) ("Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous."), *with Rhoda v. Rhoda*, 110 N.Y.S.3d 35, 37 (2d Dep't 2019) ("The resolution of an ambiguous provision, for which extrinsic evidence may be used, is for the trier of fact.").[1]  Syntel presumably makes this argument now because Syntel, represented by new counsel at trial, did not raise this issue at summary judgment.  Syntel cites no case law in support of this novel approach, and post-trial motions pursuant to Rule 50 and Rule 59 focus on the sufficiency of the evidence supporting the jury's verdict.  Whether viewed as a question of law for the Court, or the sufficiency of the evidence before the jury, Syntel's argument provides no basis to overturn the jury's findings that Syntel misappropriated TriZetto's trade secrets.

The MSA restricted Syntel's use of TriZetto's "Confidential Information."  The MSA's non-competition provision, section 29.17, separately prohibited Syntel from competing with TriZetto under certain circumstances "to prevent any misuse or disclosure of Confidential Information."  PTX-27 at 62 (§ 29.17 ("Noncompetition")).  In 2012, the parties agreed to amend the MSA to delete its non-competition provision and "any other provision in the [MSA] related to [Syntel] being restricted from competing with TriZetto."  PTX-162 at 2.  The deletion of the non-competition provision did not authorize Syntel to use TriZetto's asserted trade secrets in

---

[1] New York law applies pursuant to the MSA.

connection with providing competing services.  The 2012 Amendment left undisturbed the

MSA's confidentiality provisions, sections 13.01 and 19.01, which unambiguously require that

"TriZetto Data" not be used "[w]ithout TriZetto's approval . . . other than in connection with

[Syntel's] providing the Services," PTX-27 at 35 (§ 13.01), and also that Syntel "hold any such

Confidential Information as confidential."  PTX-27 at 42 (§ 19.01).  The 2012 Amendment did

not amend the definition of "Services," which in substance means services to be provided by

Syntel pursuant to the MSA.  PTX-27 at 8 (§ 1.01(99)).  As amended in 2012, the MSA is

unambiguous -- as a matter of law -- that Syntel was free to compete with TriZetto but that

Syntel was still obligated by the MSA's confidentiality provisions.

At trial, Syntel made the same argument to the jury -- that Syntel was authorized by the

2012 Amendment to compete with TriZetto's confidential information.  Syntel relied on the

MSA and the 2012 Amendment, as well as extrinsic evidence, including the 2013 Third-Party

Access Agreement ("TPAA") that TriZetto signed as part of Syntel's provision of Facets

services to Capital District Physicians' Health Plan ("CDPHP").  The jury evidently rejected

Syntel's interpretation of the 2012 Amendment and the TPAA.  The jury found on the verdict

sheet that Syntel had misappropriated TriZetto's trade secrets in violation of federal and state

law.  Based on a plain reading of the MSA, including the 2012 Amendment, the jury's

conclusion was not seriously erroneous or contrary to overwhelming evidence.

### 2.    Waiver and Estoppel

Syntel argues that the trade secret misappropriation and copyright infringement claims

are barred by its affirmative defenses of waiver and estoppel, reprising its interpretation of the

2012 Amendment and the TPAA discussed above.  Both defenses were presented to the jury for

binding verdict pursuant to the parties' agreement, even though these equitable defenses

otherwise would have been decided by the Court.   The jury on the verdict sheet expressly

rejected each defense as to each claim.  For the same reasons as discussed above, the jury's findings were not seriously erroneous or contrary to overwhelming evidence.

Syntel makes the additional argument that, even if it was not authorized to use TriZetto's information while servicing third parties, Syntel reasonably assumed that it could, and TriZetto's failure to alert Syntel "was an act of concealment" sufficient to support an estoppel defense. *See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 136 (2d Cir. 2014) (stating that under federal law, the defense of equitable estoppel requires *inter alia* a showing that the estopped party knowingly concealed or made a misrepresentation); *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (same under New York law, citing *Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*, 436 N.E.2d 1265, 1269 (N.Y. 1982)). Syntel points to trial testimony that TriZetto was aware that Syntel bid against TriZetto to service CDPHP, that TriZetto congratulated Syntel following the successful bid and that the parties subsequently signed the CDPHP TPAA, which authorized Syntel to use TriZetto Confidential Information to service CDPHP.  The jury reasonably rejected Syntel's interpretation of events. The same facts reasonably support the contrary inference that TriZetto was unaware that Syntel intended to use TriZetto's trade secrets without authorization -- *i.e.*, including using trade secrets from the CDPHP project for *other* clients -- and therefore TriZetto concealed nothing.  The jury's rejection of the estoppel defense was supported by ample evidence, even under Syntel's concealment theory.

Syntel makes the related argument that if TriZetto were estopped from bringing misappropriation claims involving TriZetto materials provided by and used for CDPHP, then a new trial is required on the misappropriation claims based on the general verdict rule.  The general verdict rule requires a new trial where "there is no way to know that [an] invalid

7

claim . . . was not the sole basis for [a] verdict." *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 50 (2d Cir. 2014) (internal quotation marks omitted).  Syntel's argument is factually incorrect as the use of materials provided by CDPHP to service CDPHP was not "presented as adequate to prove liability" for trade secret misappropriation.  *Morse v. Fusto*, 804 F.3d 538, 551 (2d Cir. 2015) (quoting *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec., LLC*, 386 F. App'x 5, 7 (2d Cir. 2010) (summary order)).  Instead, TriZetto offered testimony suggesting that Syntel misappropriated TriZetto trade secrets from the CDPHP project for use with other customers.[2]

### 3.    Sufficiency of Trade Secret Identification

Syntel seeks judgment as a matter of law on the ground that no reasonable jury could have found for TriZetto on the trade secret misappropriation claims, because TriZetto failed to identify any of the 104 asserted trade secrets with the specificity required under the DTSA and New York law.  This argument fails because Syntel has not shown a "complete absence of evidence" supporting the verdict and "that the jury's findings could only have been the result of sheer surmise and conjecture."  *Warren*, 823 F.3d at 139.

"[T]he Second Circuit has not squarely articulated the precise contours of the specificity requirement in the context of trade secrets."  *Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 n.3 (2d Cir. 2018) (summary order).  Courts in this District have required a trade secret to be described specifically enough, not only so that "the defendant can defend [itself] adequately against claims of trade secret misappropriation," but also "so that a jury can render a

---

[2] This Opinion does not address Syntel's remaining arguments that the general verdict rule requires a new trial on the misappropriation claims, because they are based on the premise that the trade secrets should not have been submitted to the jury either because (1) use of the trade secrets were authorized or (2) the trade secrets were not adequately specified.  Because all of the asserted trade secrets were properly submitted to the jury -- as the Court rejects Syntel's authorization and trade-secret specification arguments -- the general verdict rule does not apply.

verdict based on a discriminating analysis of the evidence of disclosure and misappropriation." *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292, 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008); *accord Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 17 Civ. 589, 2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021).  TriZetto identified its trade secrets with enough specificity that the jury could assess the evidence of disclosure and misappropriation.

At trial, TriZetto asserted that 104 items constituted trade secrets, grouping them into three categories as software, guides and manuals, and tools.  For each of the 104 asserted trade secrets, TriZetto linked the asserted trade secret to particular documents or source code alleged to be trade secrets and additionally identified the alleged trade secrets in connection with evidence of Syntel's use.  TriZetto's witnesses, including its fact witness Mr. Noonan and technical expert Dr. Bergeron, provided extensive testimony identifying and describing the trade secrets.  For the software and tools trade secrets, the jury heard testimony explaining the technology in detail.  For the remaining asserted guides and manuals trade secrets, the jury heard testimony explaining that each contained material content regarding Facets data, configuration, user interface aspects or processing and heard in-depth testimony regarding one of the asserted guide trade secrets.  There was limited cross-examination on the identification of the trade secrets.  Moreover, the jury was expressly instructed on the requirement that TriZetto was required to prove what each trade secret is, and was provided a court exhibit -- jointly submitted by the parties -- which listed each asserted trade secret.  The documents or source code tied to the asserted trade secrets were in evidence, and there were no objections to their admission.  The jury ultimately returned a verdict finding that TriZetto "possessed one or more trade secrets" that Syntel misappropriated.  TriZetto thus proffered sufficient evidence to support the jury's verdict.

Syntel largely argues that the software trade secrets and guides and manual trade secrets

were insufficiently specified based on the magnitude of source code and pages, respectively, and because these materials included public information.  Similarly, Syntel contends that TriZetto did not identify the "actual" trade secrets within the asserted trade secrets.  Syntel made these arguments in their summation, and the jury rejected them.  Whether the volume of material encompassing an asserted trade secret or the inclusion of public material in such material means a trade secret has been vaguely defined is context dependent.  *See Motorola, Inc. v. Lemko Corp.*, No. 08 Civ. 5427, 2012 WL 74319, at *18 (N.D. Ill. Jan. 10, 2012) (applying Illinois Trade Secrets Act and denying summary judgment because "[a]lthough [the plaintiff] ha[d] identified a large number of items, it ha[d] referred to particular documents, files, inventions, and aspects of its technology, not simply general methods or areas of its business"); *compare PaySys Int'l, Inc. v. Atos Se*, No. 14 Civ. 10105, 2016 WL 7116132, at *10-11 (S.D.N.Y. Dec. 5, 2016) (finding inadequate specification of a trade secret where it was implausible that the entire software could be a trade secret because it was comprised of millions of source code, and substantial portions were made public over thirty years of licensing), *with Harbor Software, Inc. v. Applied Sys., Inc.*, 887 F. Supp. 86, 89-90 (S.D.N.Y. 1995) (a software trade secret may exist in the "unique combination" of individual components that are publicly available); *Next Commc'ns, Inc.*, 758 F. App'x at 48 ("[C]omputer software programs that *contain* components that are generally not known by outsiders have received judicial recognition as trade secrets." (emphasis added)). Based on the evidence adduced at trial, a reasonable juror could apply the relevant legal tests to each asserted trade secret, which as explained above, were named, described and tied to particular documents.  Based on these identifications a juror could have reasonably determined the asserted trade secrets were in fact trade secrets even if they included public material. Syntel's argument that the trade secrets were insufficiently specified is rejected.

### 4.     Trade Secret Misappropriation After May 11, 2016

Syntel argues that judgment should be granted in its favor on the DTSA claim, arguing that TriZetto failed to identify any misappropriation after May 11, 2016, the DTSA's effective date.  *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376, 376-382.  The evidence presented at trial was sufficient to support the DTSA verdict.

The DTSA applies to pre-enactment conduct if the misappropriation continues after the enactment date.  *See Zirvi v. Flatley*, 433 F. Supp. 3d 448, 463 n.9 (S.D.N.Y. 2020), *aff'd*, 2020 WL 7294559 (2d Cir. Dec. 11, 2020) (collecting cases).  The jury heard evidence from which it could reasonably conclude that Syntel continued to use TriZetto's asserted trade secrets after May 11, 2016.  The evidence showed that Syntel used TriZetto's trade secrets in connection with its Facets consulting business and that this work continued from June 2012 to at least June 2018.  The evidence showed that Syntel used TriZetto's confidential information to upgrade the Facets software of its client UnitedHealth Group ("UHG") and that the upgrade occurred in November 2016.  One of TriZetto's experts testified that, based on his review of the record, he did not see any evidence that Syntel ever attempted to get rid of TriZetto's trade secrets in its possession.

In support of its motion Syntel attempts to refute this evidence -- as it did with the jury -- arguing that the evidence does not show misappropriation after May 11, 2016.  The jury reasonably rejected these arguments.  For example, Syntel highlights that trial testimony established that Facets was frequently upgraded, test cases and automation scripts were not reusable and that different versions of manuals were produced over time.  The jury heard this testimony and reasonably could have determined that the particular versions at issue at trial were still in use after 2016 based primarily on the testimony of TriZetto's expert Dr. Bergeron and findings in the forensic examination report in evidence.  The jury was instructed for the DTSA

claim to consider acts of misappropriation that occurred or continued on or after May 11, 2016. On the verdict form, the jury answered "yes" that TriZetto had proved that it possessed trade secrets that were misappropriated by Syntel in violation of the DTSA "for the period May 11, 2016, to October 18, 2020." The evidence was sufficient to support this verdict.

Syntel's Rule 50 motion as to liability is rejected because Syntel has not shown "a complete absence of evidence supporting the verdict." *See Warren*, 823 F.3d at 139. Syntel's alternative request for a new trial on liability pursuant to Rule 59 is also denied because Syntel has not shown that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice.

## C.   DAMAGES

The jury determined that TriZetto is entitled to $284,855,192 for the DTSA misappropriation claim, $142,427,596 for the New York trade secret misappropriation claim and $59,100,000 for copyright infringement. The jury was asked to award a single compensatory damages figure that would not result in multiple recoveries for the same injury and awarded $284,855,192 in compensatory damages total. The jury also awarded punitive damages of $569,710,384, double the amount of compensatory damages. Syntel challenges each part of the damages award, seeking judgment as a matter of law under Rule 50(b).[3] Syntel alternatively seeks remittitur or a new trial under Rule 59 on both the DTSA damages and punitive damages.

---

[3] The jury's awards on the New York trade secret misappropriation claim and the copyright claim were based on TriZetto's damages theory of awarding a reasonable royalty. Although the parties addressed the propriety of these awards in their motion papers, they are not addressed here since the jury, to avoid double counting, did not factor them into their total compensatory damages, and relied exclusively on the $284,855,192 damages in avoided costs for the DTSA claim.

### 1.    Avoided Costs

At trial, TriZetto sought $284,855,192 in damages on the DTSA misappropriation claim. TriZetto argued that Syntel was unjustly enriched by this amount because Syntel avoided expending this amount in development costs by stealing and using TriZetto's trade secrets instead of incurring the cost of developing the trade secrets on its own.  The jury accepted this argument and awarded $284,855,192 in compensatory damages.  Syntel argues that (1) avoided cost damages are an impermissible measure of damages as a matter of law and (2) no reasonable jury could find that the awarded damages are causally related to the misappropriation under the DTSA.  Both arguments are rejected.

### a)    Avoided Costs Are a Proper Measure of Damages

The DTSA expressly permits unjust enrichment as damages.  The DTSA permits a plaintiff to seek:

> damages for actual loss caused by the misappropriation; and . . . *damages for any unjust enrichment* caused by the misappropriation . . . that is not addressed in computing damages for actual loss; or . . .  in lieu of damages measured by [those] methods, the damages . . . measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B) (emphasis added).  Unjust enrichment damages include what the parties call "avoided costs" -- *i.e.* the development costs that Syntel avoided incurring when it misappropriated TriZetto's trade secrets.  These avoided costs are recoverable as damages for unjust enrichment under the DTSA and its state law counterparts derived from the Uniform Trade Secrets Act ("UTSA") (Unif. Law Comm'n 1985).  *See, e.g.*, *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1130 (7th Cir. 2020) (affirming avoided cost damages awarded under the Wisconsin UTSA as "head start" unjust enrichment damages); *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 866 (8th Cir. 2004) (construing identical language under the Minnesota UTSA, and upholding a jury award where the evidence showed

that defendants "accelerated their entry into the market by using [Plaintiff's] information");

*Motorola Sols., Inc. v. Hytera Comm'cns Corp.*, 2020 WL 6554645, at *12-15 (N.D. Ill. Oct. 19,

2020) (ratifying jury's award of defendant's avoided research and development costs as unjust

enrichment under the DTSA); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 2172502, at *6

(E.D. Va. May 10, 2018) (explaining that avoided costs are "appropriately considered" a part of

the trade secret plaintiff's "unjust enrichment damages" recoverable under the DTSA); *see*

*generally* Restatement (Third) of Unfair Competition ("Restatement") § 45 cmt. c (1995) ("In

some situations the defendant's enrichment is represented by profits from sales made possible by

the appropriation; in others, by savings achieved through the use of the trade secret in the

defendant's business.").

      Syntel argues that a claimant is not entitled to recover the total value of a trade secret

when the secret still has value to the claimant.  While this proposition may be correct, *see Softel,*

*Inc. v. Dragon Med. & Sci. Comm'cns, Inc.*, 118 F.3d 955, 969 (2d Cir. 1997) (construing New

York law), it misconstrues the damages awarded here.  As an initial matter, the DTSA expressly

permits recovery of the loss to a claimant and/or the unjust enrichment to a wrongdoer, as long as

there is no double counting.  Damages characterized as the total value of the trade secret belong

in the former category -- loss to a claimant -- and logically could not be awarded if the value in

fact is not lost.  However, avoided costs damages are in the latter category of unjust enrichment

and represent the wrongful gain to the party that misappropriated the trade secret.  There is no

legal or conceptual limitation on these damages based on the continuing value of the trade secret

to the claimant.  Unjust enrichment damages derive from a policy of preventing wrongdoers

from keeping ill-gotten gains, and therefore do not require a corresponding loss to the plaintiff.

*See Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1021 (10th Cir. 2008) (construing identical

damages language in the Utah UTSA and rejecting the view that unjust enrichment damages require the defendant to compete with the plaintiff because they allegedly serve as a proxy for the plaintiff's lost profits, as unjust enrichment damages instead reflect the "legislature's desire to ensure that misappropriators are not allowed to keep ill-gotten gains from their unlawful acts of misappropriation"); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) ("[T]he risk of defendants' venture, using the misappropriated secret, should not be placed on the injured plaintiff, but rather the defendants must bear the risk of failure themselves.").  Here, TriZetto did not seek the total value of the secret to TriZetto.  Rather, TriZetto sought the amount that Syntel saved in development costs and used TriZetto's actual development costs as a proxy, which is a common way to determine a wrongdoer's avoided costs.  *See GlobeRanger Corp. v. Software AG United States of Am., Inc*., 836 F.3d 477, 499 (5th Cir. 2016) ("The costs a plaintiff spent in development . . . can be a proxy for the costs that the defendant saved.").

Syntel separately argues that avoided costs should not be awarded when TriZetto's actual loss -- in the form of lost profits -- and Syntel's unjust enrichment -- in the form of increased revenues -- can be easily measured.  This argument is incorrect.  First, that TriZetto's actual loss can be quantified does not preclude unjust enrichment damages.  The DTSA expressly permits the award of both actual loss and unjust enrichment, as long as there is no double counting.  *See* 18 U.S.C. § 1836(b)(3)(B).  The award of one does not preclude the other.  *See, e.g.*, *Lightning Box Games Pty, Ltd. v. Plaor, Inc.*, 2017 WL 7310782, at *11 (N.D. Cal. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 3069296 (N.D. Cal. Feb. 27, 2018) (awarding both actual losses and unjust enrichment under the California UTSA and explaining that the DTSA authorizes the same damages but such award would result in double recovery); *LexMac Energy,*

*L.P. v. Macquarie Bank Ltd.*, 2014 WL 12669718, at *38 (D.N.D. Feb. 19, 2014), *aff'd sub nom. Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926 (8th Cir. 2015) (concluding that the trade secret plaintiff could recover both actual losses and unjust enrichment per the damages provision of the UTSA, and explaining that "[c]ourts applying identical language from the uniform acts of other states have allowed for the recovery of damages for both actual loss and unjust enrichment to the extent that those damages are not duplicative").

Second, that Syntel's revenue from the misappropriation can be determined also does not preclude avoided costs as a measure of damages.  Both are a form of unjust enrichment, but avoided costs may be a more appropriate measure of damages when the wrongdoer made only a modest profit -- as Syntel did here -- or no profit from the use of the trade secrets; the wrongdoer, not the aggrieved party, should bear the business risk that the wrongdoer's use of purloined trade secrets will not be profitable.  *See GlobeRanger*, 836 F.3d at 500 (affirming an award based on defendant's cost savings; "the wrongdoer should not benefit from hindsight perspective that its gamble of misappropriating the trade secret turned out not to be so profitable."); Restatement § 45 cmt. f ("If the benefit derived by the defendant consists primarily of cost savings, [damages] based on the savings achieved through the use of the trade secret may be the most appropriate measure of relief.").

Avoided costs damages are proper under the DTSA as a matter of law.

<b>b)    The Evidence Was Sufficient for the Award of Avoided Costs</b>

The DTSA allows "damages for any unjust enrichment caused by the misappropriation." 18 U.S.C. § 1836(b)(3)(B).  Syntel argues that no reasonable jury could find that the avoided costs were causally related to the misappropriation giving rise to liability under the DTSA.  This argument is incorrect.

As discussed above, the evidence supports a DTSA violation by showing that Syntel used the trade secrets on the UHG upgrade after the DTSA effective date of May 11, 2016. Dr. Bergeron testified that an upgrade like the one Syntel conducted for UHG required the use of TriZetto trade secrets. He explained that the "upgrade was actually done in November 2016" and would require "all three [software trade secrets] . . . going from that early version to a later version is going to require two versions of Facets, also both versions of that upgrade tool, the database build tools as well as the upgrade framework tool." Tr. 306:21-307:3.

Viewing the evidence in the light most favorable to TriZetto, the jury had a sufficient basis to determine that Syntel gained an unfair advantage by misappropriating TriZetto's trade secrets -- Syntel could and did compete immediately with TriZetto to provide complex consulting services, including by performing the UHG upgrade. The jury heard Mr. Britven's testimony that by using the TriZetto trade secrets, Syntel was able to go "right to market with the associated products," which was "very advantageous." Tr. 385:9-20. A reasonable juror could determine based on this testimony that Syntel gained an advantage by being able to enter the complex consulting market without having had to develop the necessary trade secrets required for such services. The jury saw an email that suggested that the UHG project was the "first kill" in entering the Facets consulting market and could infer from the same that Syntel was concerned it would not have access to TriZetto product documentation and manuals and would need to "[b]uild[] Syntel capabilities very strong around TriZetto products." DTX-5. There was circumstantial evidence from which a jury could determine that Syntel determined to enter the market with a plan to misappropriate TriZetto trade secret tools. A reasonable jury could therefore determine that through its misappropriation, Syntel benefited in the form of avoided costs.

### 2.     Punitive Damages

The DTSA permits the recovery of punitive damages "if the trade secret is willfully and maliciously misappropriated," and "in an amount not more than 2 times the amount of the [compensatory] damages awarded under subparagraph (B)."  18 U.S.C. § 1836(b)(3)(C).  The jury awarded $569,710,384 in punitive damages, twice the award of compensatory damages. Syntel argues that the jury's punitive damages award violated due process, and the verdict should be reduced as a matter of law pursuant to Rule 50.[4]  Alternatively, if not constitutionally excessive, Syntel seeks remittitur, which offers the awardee a choice between a reduced award and a new trial.  The Court finds that the punitive damages award is excessive -- warranting a new trial unless TriZetto accepts a lesser amount -- and that the constitutional question of whether it violated due process need not be reached.

An award of punitive damages must be fair, reasonable, predictable and proportionate. *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013) (quotation marks omitted).  Under federal common law, a jury verdict is excessive when the award is "so high as to shock the judicial conscience and constitute a denial of justice."  *Id.* at 96 (quotation marks omitted).  A jury award violates the Due Process Clause of the Fourteenth Amendment when the award is "grossly excessive."  *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-17 (2003).  An excessive jury award may be overturned and warrant remittitur as a matter of federal common law,[5] even if the award is not

---

[4] The Second Circuit has not yet decided whether a constitutionally excessive punitive award can be directly reduced by the Court rather than using remittitur.  *Turley*, 774 F.3d at 168.

[5] Syntel was found liable under both federal law and New York law.  The jury's award covered all claims without distinction.  A federal court in a case governed by state law must apply the state law standard for appropriateness of remittitur.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 429-30 (1996); *Restivo v. Hessemann*, 846 F.3d 547, 587 (2d Cir. 2017).  Neither

so grossly excessive as to violate due process. *See Payne*, 711 F.3d at 97, 100. "The Supreme

Court has articulated three 'guideposts' for reviewing punitive damages awards" for

excessiveness. *Turley*, 774 F.3d at 165. The guideposts are: "(1) 'the degree of reprehensibility'

associated with [the wrongdoer's] actions; (2) 'the disparity between the harm or potential harm

suffered' and the size of the punitive award; and (3) the difference between the remedy in this

case and the penalties imposed in comparable cases." *Id.* (quoting *Gore*, 517 U.S. at 575).

### a)      First Guidepost: Degree of Reprehensibility

The first guidepost -- reprehensibility of the conduct -- is the most important. *See Gore*,

517 U.S. at 575. Five factors are relevant to this assessment: whether "[1] the harm caused was

physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless

disregard of the health or safety of others; [3] the target of the conduct had financial

vulnerability; [4] involved repeated actions or was an isolated incident; and [5] the harm was the

result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.

"The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient

to sustain a punitive damages award; and the absence of all of them renders any award suspect."

*Id.* The parties agree that the first three "reprehensibility" factors do not apply here. Syntel's

conduct did not physically harm or kill anyone, and TriZetto -- acquired in 2014 by Cognizant

for $2.7 billion -- was not a financially vulnerable target.

The fourth factor -- repeated actions or an isolated incident -- weighs in favor of finding

---

party asserts that the state standard should apply. The award is reviewed under the federal
standard, because "the successful plaintiff [should] be paid under the theory of liability that
provides the most complete recovery." *Singleton v. City of N.Y.*, 496 F.Supp.2d 390, 393
(S.D.N.Y. 2007) (quoting *Magee v. U.S. Lines, Inc.*, 976 F.2d 821, 822 (2d Cir. 1992)), *aff'd*,
308 F. App'x 521 (2d Cir. 2009). The applicable state standard, as compared to the federal
standard, is less deferential to a jury verdict and requires a more stringent review. *See Duarte v.
St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 319 (S.D.N.Y. 2018).

that Syntel engaged in reprehensible conduct. The evidence showed that Syntel engaged in a sustained course of illegal conduct against TriZetto over a period of years. For example, TriZetto produced evidence that Syntel misappropriated over 100 of Syntel's trade secrets, including downloading more than 700 test cases and automation scripts, pursuant to a long-term strategy. *See, e.g.*, *Epic Sys.*, 980 F.3d at 1141 (finding the fourth factor weighed in favor of finding reprehensible conduct when the defendant's wrongful conduct was directed repeatedly but solely against the plaintiff).[6]

The fifth factor -- whether the misconduct was intentional and deceitful or merely accidental -- is the most decisive factor in finding that Syntel's conduct was reprehensible. TriZetto presented evidence that Syntel acted willfully, that it adopted a plan in 2012 "to go to war" with TriZetto, using an "arsenal" of TriZetto's trade secrets to target TriZetto's customers. For example, Syntel employees shared tools for use in servicing TriZetto customers with Syntel's internal product consulting team. Also, TriZetto offered evidence showing that Syntel attempted to conceal possession or use of trade secrets, for example by using references like "T$Z" to thwart later email searches, or hiding marks identifying a document as TriZetto's. TriZetto also offered evidence that, when the neutral forensic examiner attempted to examine

---

[6] It is unclear whether the fourth factor includes repeated misconduct against the plaintiff or is focused on misconduct against multiple victims. In *State Farm*, the Supreme Court seems to envision repeated unlawful conduct against others like the plaintiff. 538 U.S. at 409-410. The Second Circuit in *Lee v. Edwards*, 101 F.3d 805, 810 (2d Cir. 1996), appears to share that interpretation but does not definitely say so. District courts in this Circuit are split. *Compare Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*, 79 F. Supp. 2d 197, 208 n.15 (E.D.N.Y. 2000) ("The phrase "repeated instances of misconduct," as used by the Second Circuit in *Lee v. Edwards* . . . appears to refer to evidence of repeated misconduct with respect to other employees rather than repeated misconduct against the plaintiff.") *with Allam v. Meyers*, 906 F. Supp. 2d 274, 292 (S.D.N.Y. 2012) (harm involved repeated, intentional acts of violence and threats of violence against a single victim). Regardless, repeated misconduct against a plaintiff is more egregious than a single incident.

Syntel's computers for TriZetto trade secrets, seventeen of the computers could not be found and were later discovered apparently hidden in a closet in India.  Although Syntel offered alternative innocent scenarios and evidence, they did not persuade the jury.  In light of the evidence taken in the light most favorable to TriZetto, Syntel's conduct was reprehensible, but not on a par with murderous or life-threatening conduct.

**b)**      **Second Guidepost:  Relationship of Punitive Damages to Harm**

The second guidepost is the relationship of punitive damages to "harm, or potential harm."  *See Gore*, 517 U.S. at 575.  This typically means determining the ratio of punitive damages to compensatory damages, which are generally measured by the plaintiff's loss.  *See, e.g.*, *Gore*, 517 U.S. at 559.  However, as discussed above, the compensatory damages, in this case, are not based on TriZetto's loss; instead, they are based on Syntel's unjust enrichment.  In the particular circumstances of this case, it is appropriate to use the jury's compensatory damage award as the denominator in the ratio for several reasons.

First, the DTSA -- which is the basis for the compensatory award -- provides that the relevant ratio is based on the DTSA compensatory damages awarded.  The statute permits compensatory damages based on actual loss, unjust enrichment and a reasonable royalty.  18 U.S.C. 1836(b)(3)(B).  The DTSA expressly permits exemplary damages based on a multiple "of the damages awarded under subparagraph (B)," *regardless* of which one.  *Id*. at 1836(b)(3)(C).  Thus the punitive damages ratio is based on the damages actually awarded and is limited to a ratio of 2:1, a relatively modest ratio in general terms.

Second, at least one Second Circuit case suggests that the amount of compensatory damages provides the proper denominator but that the measure of such damages affects the evaluation of the ratio.  In *Turley v. ISG Lackawanna, Inc*., the Second Circuit evaluated the

21

relationship between "the compensatory award" and the punitive damages.  774 F.3d at 166.  The compensatory damages were "emotional damages."  *Id.* at 165.  These damages do not measure any kind of economic loss, and the Court described them as "intangible and therefore immeasurable."  *Id.*  The Court found that the type of damages counseled a lower acceptable ratio of punitive damages to compensatory damages.  On this basis, the Court rejected the 4:1 ratio and concluded that a 2:1 ratio was the maximum allowable based on "necessarily a largely arbitrary compensatory award."  *Id.* at 166.  Although the compensatory damages, in this case, are not arbitrary, and in fact are very concrete, they similarly do not represent TriZetto's "loss" and are a proxy -- TriZetto's development costs -- to ascertain Syntel's unjust enrichment.  The approach in *Turley* thus suggests that the applicable ratio of damages awarded in this case is 2:1 and that a closer relationship, *i.e.*, a smaller rather than larger ratio, is an appropriate limit on punitive damages.

Third, in a case similar to this one, the Seventh Circuit evaluated a punitive damages award on a claim of trade secret misappropriation, where the jury had awarded compensatory damages based on avoided costs.  *See EpicSys.,* 980 F.3d at 1140- 45.  In analyzing the second guidepost, the court used compensatory damages as the denominator in the ratio to evaluate the punitive damages award.  *Id*. at 1143.  The Court noted that the plaintiff's economic harm was significantly smaller than the avoided costs damages and if used "would in turn drastically change the relevant ratio."  *Id*. at 1143.  Although the Court held that the misappropriator had waived the argument that the compensatory award was the incorrect denominator, the Court also observed that at least "one other court had compared an unjust enrichment award to the punitive-damages award under this guidepost. . . ."  *Id.* (citing *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1351 (Fed. Cir. 2001), *vacated sub nom. DeKalb Genetics Corp.*

22

*v. Bayer CropScience, S.A.*, 538 U.S. 974, (2003), *opinion reinstated as modified*, 345 F.3d 1366 (Fed. Cir. 2003) (reaching the same result as to punitive damages).  The Court accordingly determined the ratio of punitive and compensatory damages actually awarded to be 2:1, and held that a 1:1 ratio would yield the maximum permissible award.  *Id.* at 1145.

In this case, as discussed above, the jury's compensatory damages award was roughly $285 million, based on Syntel's unjust enrichment and not TriZetto's actual loss, which is much less.  The jury's punitive award was twice its compensatory award or approximately $570 million, for a ratio of 2:1.  As in *Epic*, and as suggested by the approach in *Turley,* this punitive damages award is excessive.

### c)      Third Guidepost:  Civil Penalties

The third guidepost -- penalties imposed by law for the conduct giving rise to punitive damages -- is of little guidance here.  There is no relevant civil penalty for comparison.  The DTSA's punitive damages cap suggests that Congress believes any punitive award exceeding a 2:1 ratio would be inappropriate, but it does not suggest that Congress contemplated that all awards within this cap would be proportionate and not excessive.

### d)      Comparison to Similar Cases

In addition to the *Gore* guideposts, comparison with punitive damages awards in similar cases can also provide useful guidance.  *See Payne*, 711 F.3d at 104.  "The undertaking is precarious because the factual differences between cases can make it difficult to draw useful comparisons."  *Id.* at 105.  Nevertheless, this comparison shows that the punitive damages award is excessive.  As referenced above, *Epic Systems* is a similar trade secret misappropriation action that involved an avoided costs damages award.  The misappropriator's conduct was similarly reprehensible to the conduct here.  The jury awarded $240 million in avoided costs for Tata's

misappropriation of information related to Epic's software and $700 million in punitive damages. *See Epic Sys.*, 980 F.3d at 1136. The district court reduced both the compensatory damages and punitive damages award to $140 million and $280 million respectively. *Id.* at 1124. The Seventh Circuit determined that this reduced punitive damages award was still excessive and violated due process -- even though the punitive award was within the Wisconsin law cap limiting punitive damages to two times compensatory damages. *Id.* at 1144. The Court held that the maximum permissible punitive award was "at most, $140 million," *i.e.*, a 1:1 ratio. *Id.* at 1145.

In *Motorola Solutions, Inc. v. Hytera Comm. Corp.*, a recent trade secret case under the DTSA, the district court determined that a punitive damages award of $418 million was appropriate on a compensatory damages award of $346 million. *Motorola*, 2020 WL 6554645 at *12, *15. This produces a ratio of punitive damages to compensatory damages of about 1.2:1. In *Motorola*, the court held that the punitive award was not so excessive as to violate due process because it was within the DTSA cap for exemplary damages and because it was warranted by the conduct discussed at trial. *See id.* at *15.

e)      <strong>Totality of Factors</strong>

Considering the totality of factors, the $570 million punitive damages award, in this case, is excessive under federal common law. Given the large compensatory damages award -- calculated based on Syntel's benefit -- Syntel's reprehensible but not egregious conduct, and in light of similar cases -- a 1:1 ratio relative to the compensatory award is the highest permissible award. Accordingly, the punitive damages award of $569,710,384 is excessive and will be reduced to $284,855,192 if TriZetto agrees to remittitur. Otherwise, Syntel's motion for a new trial on the issue of punitive damages is granted.

24

Because Syntel challenges the punitive damages award as unconstitutional and for the avoidance of doubt, the remitted award is constitutionally permissible. Based on the principle of constitutional avoidance, this Court need not address whether the original unremitted punitive damages award violates due process. *See Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 508, 511-512 (1st Cir. 2011) ("Facing the constitutional question of whether the award violated due process was not inevitable. The district court should first have considered the non-constitutional issue of remittitur, which may have obviated any constitutional due process issue and attendant issues."); *Payne*, 711 F.3d at 97 (citing a Seventh Circuit case for the proposition that "constitutional limits on punitive damages . . . come into play only after the assessment has been tested against statutory and common-law principles." *See Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000)).

## III.    TRIZETTO'S MOTION FOR PERMANENT INJUNCTION AND INTEREST

### A.    Permanent Injunction

TriZetto seeks a permanent injunction under the DTSA and the Copyright Act.[7] As a permanent injunction is warranted, TriZetto's alternative request for an ongoing royalty need not be addressed.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To obtain a permanent injunction, TriZetto must demonstrate that (1) "irreparable injury," (2) the

---

[7] The parties appear to agree that federal law applies to determine whether to grant an injunctive remedy in this case and do not separately address any injunctive relief for the state misappropriation claim. Under the DTSA, a court may "grant an injunction . . . to prevent an actual or threatened misappropriation . . . on such terms as the court deems reasonable," 18 U.S.C. § 1836(b)(3)(A), and under the Copyright Act, a court may "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restraint infringement of a copyright." 17 U.S.C. § 502(a).

"remedies available at law, such as monetary damages, are inadequate to compensate for that

injury," (3) "considering the balance of hardships between [TriZetto] and [Syntel], a remedy in

equity is warranted," and (4) the "public interest would not be disserved by permanent

injunction." *See eBay*, 547 U.S. at 391 (applying traditional four-factor test to a patent dispute).

The first and second factors -- irreparable harm and adequate remedies at law -- are

related. The first factor asks whether TriZetto will be irreparably harmed in the absence of an

injunction. In other words, the injunction must prevent or remedy the harm. *See Roach v.

Morse*, 440 F.3d 53, 56 (2d Cir. 2006). "If an injury can be appropriately compensated by an

award of monetary damages, then an adequate remedy at law exists, and no irreparable injury

may be found to justify specific relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d

Cir. 2004); *accord CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010)

(summary order).[8] "[A]n award of damages [may not] provide a complete remedy" if there is "a

danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a

wider audience or otherwise irreparably impair the value of those secrets." *See Faiveley,* 559

F.3d at 118.

TriZetto has demonstrated irreparable harm that cannot be adequately compensated by

---

[8] The Court declines to apply a presumption of irreparable harm as TriZetto suggests. It is
inappropriate to presume irreparable injury in a copyright case, and the movant must prove that it
suffered irreparable injury. *See Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010). The Second
Circuit has not directly addressed the same issue in DTSA actions. In one case alleging
misappropriation under state law, the Second Circuit found that the movant had not shown
irreparable harm where the circumstances made it unlikely that the plaintiff's proprietary
information would be disclosed to third parties. The Court stated that no presumption of
irreparable harm applied where the misappropriator seeks to use the trade secrets only internally
and is unlikely to disseminate them. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d
110, 118-19 (2d Cir. 2009); *see also KCG Holdings, Inc. v. Khandekar*, No. 17 Civ. 3533, 2020
WL 1189302, at *16 (S.D.N.Y. Mar. 12, 2020), *reconsideration denied*, 2021 WL 517226
(S.D.N.Y. Feb. 11, 2021).

monetary damages, specifically the likelihood that, if not enjoined, Syntel will disseminate or impair the trade secrets by sharing them with unauthorized third parties.  The evidence supporting liability for misappropriation suggests that Syntel widely shared TriZetto trade secrets among its own employees and also obtained TriZetto trade secrets from one customer for use in servicing *other* customers.  Even though Syntel may "have the same incentive as the originator to maintain the confidentiality of the secret in order to profit," *id.*, Syntel's use risks disclosure to unauthorized third parties.  *See, e.g.*, *KCG Holdings*, 2020 WL 1189302 at *17 (irreparable harm where an individual "does not merely seek to use its trade secrets or keep them to himself" but could "resume[] producing [proprietary models] for another financial-services firm, [and thus] . . . disseminate the trade secrets he improperly acquired to a wider audience.").  This is not a situation where there is little risk of dissemination to a wider audience.  *See, e.g.*, *Faiveley,* 559 F.3d at 119 (trade secret technology that was a component of a product sold and not disseminated to third parties created little or no risk of irreparable harm through disclosure); *Passlogix, Inc. v. 2FA Tech., LLC*, No. 08 Civ. 10986, 2010 WL 2505628, at *10 (S.D.N.Y. June 21, 2010) (no irreparable harm where no allegations of disclosure to third parties and only allegations of maintenance of trade secret source code within the company).  TriZetto has also shown that Syntel is likely to continue to use the trade secrets, as its marketing materials up to and even during the trial advertised the use of TriZetto's trade secrets to perform services for customers.

Syntel asserts that an injunction is senseless here where the compensatory damages require Syntel to pay fully for the development of the trade secrets at issue.  This is another way of saying, not only that TriZetto's harm *can* be compensated with money damages, but also that the compensatory damage award fully compensates TriZetto for both past and future harm.  This

argument is incorrect because the purpose of the damages award is to compensate TriZetto for Syntel's past misappropriation, *i.e.*, misconduct up to and concluding with the trial.  An injunction is aimed at preventing harm from any future misappropriation.  Even if Syntel would not necessarily avoid further development costs in any future misappropriation, TriZetto could still suffer additional harm, including, as discussed above, irreparable injury by dissemination to third parties.  Indeed, the DTSA -- in permitting recovery of both compensatory damages based on loss and unjust enrichment -- acknowledges that TriZetto's actual harm and Syntel's unjust enrichment are not necessarily mutually exclusive.

The remaining factors -- balance of hardships and public interest -- weigh in favor of the entry of a permanent injunction.  As discussed, TriZetto risks the dissemination of its trade secrets as well as attendant competitive harm.  Even though the latter is compensable through money damages, Syntel would be required to bring a new lawsuit to enforce its rights.  Syntel asserts no countervailing hardship except to say that TriZetto's proposed injunction is overly broad and captures lawful activity.

An injunction is also in the public interest because it upholds the law that protects TriZetto's trade secrets and intellectual property rights, and thus encourages future investment in innovation.  *See, e.g.*, *Chadha v. Chadha*, 2020 WL 1031385, at *16 (E.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 5228812 (E.D.N.Y. Sept. 2, 2020) (public interest in protecting copyrights, innovation and trade secret and proprietary information); *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 2020 WL 1129773 (E.D.N.Y. Mar. 9, 2020) (public interest served by injunctive relief protecting secrecy of trade secrets and confidential information).  Syntel argues that TriZetto's proposed injunction is overly broad and against the public interest because it would exclude Syntel from the Facets services market and make

consumers reliant on one company, TriZetto, for providing such services.  This argument is belied by Syntel's own statement based on trial testimony that "TriZetto allows Facets customers to use third-party service providers and confirmed it currently faces services competition from companies besides Syntel."

Balancing the parties' interests as well as the public interest, and because of the likely irreparable harm to TriZetto without an injunction, a permanent injunction barring Syntel from the unauthorized use of TriZetto's trade secrets at issue in this case is warranted.

Syntel argues that, even if an injunction is appropriate, TriZetto's proposed form is overly broad and unspecific.  Injunctive relief "should be 'narrowly tailored to fit specific legal violations' and avoid 'unnecessary burdens on lawful commercial activity.'"  *Faiveley*, 559 F.3d at 119 (quoting *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)).  Rule 65 also requires that a permanent injunction be specific and "describe in reasonable detail" what is restrained.  Fed. R. Civ. P. 65(d).  It must be "possible to ascertain from the four corners of the order precisely what acts are forbidden without resorting to extrinsic documents."  *Capstone Logistics Holdings, Inc. v. Navarrete*, 838 F. App'x 588, 590 (2d Cir. 2020) (summary order) (quotation marks omitted).

TriZetto has proposed a revised permanent injunction order, which was submitted with TriZetto's reply brief and responds to some of Syntel's objections.  Those objections are resolved as follows:

- Syntel objects that the trade secrets are not defined with the necessary specificity. TriZetto has addressed this objection by referencing in footnote 1 of the proposed order the 104 trade secrets at issue concerning Facets and appending the list of such secrets.  The substance of the footnote is accepted.   The language of the

footnote and the list itself shall be included in the text of the Order.

- Syntel objects to the list of prohibited activities as including "otherwise misappropriating."  This language shall be omitted as impermissibly vague.

- Syntel objects that there is no carve-out for service work authorized by TriZetto. The language proposed by TriZetto in the last paragraph of section I shall be replaced with a paragraph that excludes from the injunction any previously authorized use of the trade secrets, and shall include a reference to the client and the agreement that authorizes such use.  To the extent that Syntel is not a party to any such agreement, TriZetto shall identify the agreement and provide Syntel with the language from the relevant provisions.

- Syntel objects that the injunction bars TriZetto from using the misappropriated trade secrets anywhere on the ground that it constitutes an extraterritorial application of U.S. law and that TriZetto should be required to sue Syntel anywhere outside the United States where Syntel uses TriZetto's misappropriated trade secrets.  This argument is rejected.  The DTSA expressly provides for injunctive relief.  18 U.S.C. 1836(b)(3)(A).  The DTSA also expressly "applies to conduct occurring outside the United States if . . . the offender is . . . an organization under the laws of the United States" or "an act in furtherance of the offense was committed in the United States."  18 U.S.C. § 1837.  Both conditions are satisfied here.  It is undisputed that Syntel Inc. is a U.S. corporation (although the other Syntel party is not), and the evidence at trial showed acts in furtherance of the misappropriation that occurred in the United States.  For example, Syntel employees, some of whom were located in the United States, downloaded

30

TriZetto's trade secrets in abnormally high volumes suggesting, according to

TriZettos expert, that they were actively creating a repository. *See generally*

*Motorola Sols.*, 436 F. Supp. 3d at 1157-68 (collecting cases analyzing the

extraterritorial application of the DTSA).

The parties shall submit a proposed form of order for a permanent injunction consistent with this

Opinion and Rule 65(d), Fed. R. Civ. P.  The parties shall not make any other modifications to

the proposed order at Dkt. No. 973 except as they both shall agree.

### B.    Pre- and Post-Judgment Interest

TriZetto seeks prejudgment interest for the DTSA damages.  TriZetto's request is denied.

"Prejudgment interest is generally not awarded, but it may be ordered in the district

court's discretion to ensure that a plaintiff is fully compensated or to meet the remedial purpose

of the statute involved." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) (internal

quotation marks omitted) (citing *Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW*,

955 F.2d 831, 833-34 (2d Cir. 1992)); *see Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130,

139 (2d Cir. 2000) (citations and quotation marks omitted) ("In a suit to enforce [a federal right],

the question of whether or not to award prejudgment interest is ordinarily left to the discretion of

the district court.").  "The court must . . . explain and articulate its reasons for any decision

regarding prejudgment interest." *Henry v. Champlain Enters.*, 445 F.3d 610, 623 (2d Cir. 2006).

Prejudgment interest is not warranted here.  Plaintiff obtained a judgment for $285

million following a trial and jury verdict.  The amount awarded was calculated based on Syntel's

gain and not its losses.  Considering the evidence at trial, the Court finds this to be sufficient

compensation, and there are no special circumstances warranting additional compensation.

Moreover, TriZetto was awarded punitive damages, which suggests that prejudgment interest

would likely result in overcompensation. *See Mori v. Saito*, No. 10 Civ. 6465, 2014 WL 3812326, at *3 (S.D.N.Y. Aug. 1, 2014) ("Because this Court has awarded punitive damages in the maximum amount presumptively allowed by the Constitution, awarding prejudgment interest is unnecessary to fully compensate plaintiffs.").

TriZetto argues that the remedial purpose of the DTSA -- to deter misappropriation and provide recovery for trade secret owners -- warrants an award of prejudgment interest. The awarded compensatory and punitive damages adequately serve this purpose without the addition of prejudgment interest. Contrary to TriZetto's contentions, this is also not a case where Syntel would be enjoying a windfall as a result of its wrongdoing or would be incentivized to violate the DTSA to "in effect . . . enjoy an interest-free loan for as long as they could delay paying out." *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 58 (2d Cir. 1984). Accordingly, equitable considerations counsel against awarding prejudgment interest in this case.

Post-judgment interest, which is mandatory for any money judgment recovered in a civil case, *see* 28 U.S.C. § 1961, is granted.

## IV.   CONCLUSION

For the foregoing reasons, Syntel's motions for judgment as a matter of law, or in the alternative for a new trial or remittitur, pursuant to Rules 50 and 59 are DENIED, except that Syntel's request for a new trial or remittitur on punitive damages is GRANTED. The punitive damages award of $569,710,384 will be reduced to $284,855,192 if TriZetto agrees to remittitur. Otherwise, Syntel's motion for a new trial on the issue of punitive damages is granted. TriZetto shall advise the Court of its decision no later than May 4, 2021.

TriZetto's applications for permanent injunction and post-judgment interest are GRANTED and the request for prejudgment interest is DENIED. By May 4, 2021 the parties

shall meet and confer and submit a proposed order for a permanent injunction consistent with this Opinion and Rule 65(d).

TriZetto's Rule 50(a) motion and the parties' requests for oral argument on the motions are DENIED as moot.

The Clerk of Court is respectfully directed to close Dkt. Nos. 921, 928, 959, 965, 968, 974.

SO ORDERED.

Dated: April 20, 2021
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

33