# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Gianni Cutri, P.C.
To Call Writer Directly:
+1 312 862 3372
gianni.cutri@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

> For the reasons stated in this letter, TriZetto's motion to seal Exhibit 1 is GRANTED. However, the parties' confidentiality stipulations are not dispositive to the question of whether documents should be filed under seal. Accordingly, TriZetto's request to file Exhibits 2, 4, 9 and 10 under seal is DENIED without prejudice to renewal. By **March 12, 2024**, Syntel may file a letter motion, not to exceed three pages, renewing the motion to seal those exhibits with a justification that is sufficient under Second Circuit caselaw. The Clerk of Court is respectfully directed to maintain Dkt. 1106 under seal pending a potential renewal of the motion by Syntel, and to close the motion at Dkt. 1103.
>
> Dated: March 5, 2024
> New York, New York
>
> LORNA G. SCHOFIELD
> UNITED STATES DISTRICT JUDGE

August 25, 2023

Honorable Lorna G. Schofield
U.S. District Court, S.D.N.Y.
500 Pearl Street
New York, NY 10007

Re: *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, case No. 1:15-cv-00211 (LGS)(SDA)

Dear Judge Schofield:

Pursuant to the Your Honor's Individual Rule I.D.3, Defendants The TriZetto Group Inc. and Cognizant Technology Solutions Corp. (collectively, "TriZetto") hereby submits this motion to file under seal the following documents:

- Exhibit 1 (Kirkland & Ellis Time Entries)

- Exhibit 2 (11/22/16 Joint Letter)

- Exhibit 4 (7/20/16 Letter from M. Mrkonic to G. Cutri)

- Exhibit 9 (2/5/18 Letter from G. Cutri to Judge Aaron)

- Exhibit 10 (TriZetto's 7/30/18 Motion for Sanctions)

TriZetto acknowledges that the public generally has an interest in judicial proceedings and that under the common law there is a "presumption of access" to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit applies a three-step framework to assess whether that common law presumption applies. *First*, the Court "must … conclude that the documents at issue are indeed judicial documents." *Id.* Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (citation omitted). *Second*, the Court "must determine the weight of that presumption" based on the "value of such information to those monitoring the federal courts." *Id.* "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (citation omitted). *Third*, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it." *Id.* at 120. Courts

## KIRKLAND & ELLIS LLP

Honorable Lorna G. Schofield
August 25, 2023
Page 2

consider many factors in assessing the third step. For example, courts consider "the extent of the closure or sealing sought; the potential damage to [the Parties] from disclosure; the significance of the public interest at stake; the extent to which [the Parties] intend to prove [their] case by relying on documents [they] seek to withhold from public scrutiny; [and] whether the particular matter is integral or tangential to the adjudication." *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07-cv-2014, 2008 WL 199537, at *8 (S.D.N.Y. Jan. 22, 2008). Moreover, "[t]he interest in protecting business information that might harm a litigant's competitive standing has, at a minimum, been recognized by the Supreme Court as potentially sufficient to defeat the common law presumption." *Id.*

TriZetto also recognizes that, in addition to the common law right of access, it is well established that the public and the press have a "qualified First Amendment right … to access certain judicial documents." *Lugosch*, 435 F.3d at 120. The common law presumption is different from the protections afforded by the First Amendment. *See Newsday LLC v. County of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013). First Amendment protections apply to documents (1) that "have historically been open to the press and general public" and where "public access plays a significant positive role in the functioning of the particular process in question" or (2) that "are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch*, 435 F.3d at 120 (quotation marks omitted). Under this framework, sealing "may be justified only with specific, on-the-record findings that [it] is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (quotation marks omitted). "Examples of 'higher values' may include … the privacy of innocent third parties … and trade secrets." *Olvera v. Mazzone Mgmt. Grp. Ltd.*, No. 1:16-CV-502-BKS-DJS, 2018 WL 2137882, at *2 (N.D.N.Y. May 9, 2018).

"The demonstration of a valid need to protect confidentiality of confidential and proprietary business information may be a legitimate basis to rebut the public's presumption of access to judicial documents." *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19-cv-6239, 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021); *see also SEC v. Telegram Group, Inc.*, No. 19-cv-9439, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020) ("The demonstration of a valid need to protect the confidentiality of proprietary business information, such as internal analyses, business strategies, or customer negotiations, may be a legitimate basis to rebut the public's presumption of access to judicial documents." Examples of commonly sealed documents include those containing "marketing plans, revenue information, pricing information, and the like." *Cumberland*, 184 F.R.D. at 506; *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 199 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (permitting sealing of "internal corporate documents that govern investment strategies, information regarding proprietary modeling assumptions, and more generally, customer names, account numbers, and pricing information"). The Second Circuit has "previously held that '[t]he privacy interests of innocent third parties … should weigh heavily in a court's balancing equation" for sealing information. *Amodeo*, 71 F.3d at 1051-52, quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-80 (2d Cir.

## KIRKLAND & ELLIS LLP

Honorable Lorna G. Schofield
August 25, 2023
Page 3

1990); *see also Telegram Group, Inc.*, 2020 WL 3264264, at *3 ("protecting the privacy interests of non-parties, including their business and financial records, represents a legitimate basis for sealing judicial documents").

**Sealing Justification – TriZetto Information (Exhibit 1)**: Exhibit 1 is a spreadsheet containing highly confidential and proprietary TriZetto information regarding TriZetto's approach to protecting its trade secret and confidential information. Disclosure of this confidential and proprietary information to unauthorized third parties and competitors would provide them with a competitive advantage by giving insight into TriZetto's sensitive business information concerning its expenditures, staffing and corporate approach regarding matters that involve pursuing protection its intellectual property rights. Courts recognize that disclosure of sensitive business information may harm a business's ability to compete in the future. *Bergen Brunswig Corp. v. Ivax Corp.*, No. 97 Civ. 2003, 1998 WL 113976, at *3 (S.D.N.Y. Mar. 12, 1998) (collecting cases); *Standard v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming district court's sealing on grounds that the party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access"). Accordingly, TriZetto respectfully requests permission to redact the information in the columns titled "Time" and "Amount."

In order to preserve as much of the public's right to access as possible, and in accordance with Rule I.D.3, TriZetto has narrowly tailored its redaction request to only the specific confidential information discussed above. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12-cv-1540, 2013 WL 12338472, at *3 (S.D.N.Y. June 24, 2013) ("the Court has reviewed the proposed redactions and finds that they are narrowly tailored, limited in scope, and justified to protect Aereo's confidential and proprietary business information."); *Standard*, 2008 WL 199537, at *9 ("One way to achieve narrow tailoring is to order redaction instead of wholesale sealing of documents.").

**Syntel Information (Exhibits 2, 4, 9, and 10)**: TriZetto files Exhibits 2, 4, 9, and 10 under seal pursuant to Your Honors Individual Rule I.D.3 because these exhibits contain information that Syntel has been designated as CONFIDENTIAL or higher under the Protective Order. TriZetto notes that a redacted versions of Exhibits 9 and 10 were previously filed on the public docket. *See* Dkt. 330 (Exhibit 9); Dkt. 439 (Exhibit 10). In accordance with Section I.D.3 of the Court's Individual Rules, Syntel bears the burden of persuasion on the necessity of sealing these exhibits; Syntel must file a letter within two business days of this motion explaining why the information should be filed under seal.

Respectfully submitted,

/s/ Gianni Cutri

## KIRKLAND & ELLIS LLP

Honorable Lorna G. Schofield
August 25, 2023
Page 4

*Counsel for TriZetto*

cc:     All counsel of record