UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SYNTEL STERLING BEST SHORES                                 :
MAURITIUS LTD., et al.,                                     :
                                                            :
                              Plaintiffs,                   :    15 Civ. 211 (LGS)
                                                            :
               -against-                                    :    ORDER
                                                            :
THE TRIZETTO GROUP, INC., et al.,                           :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

At issue are damage awards in favor of Counterclaim Plaintiffs The TriZetto Group, Inc. and Cognizant Technology Solutions Corporation (together, "TriZetto") against Counterclaim Defendants Syntel Sterling Best Shores Mauritius Limited and Syntel, Inc. (together, "Syntel") after a jury trial. On May 25, 2023, the Second Circuit affirmed Syntel's liability for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") but vacated the damages judgment under the DTSA. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 68 F.4th 792 (2d Cir. 2023) ("*Syntel*"). The matter was remanded to consider the damages awards on two other causes of action the appellate court did not address. For the following reasons, these two compensatory damages awards, on the New York trade secret misappropriation claim (the "New York Claim") and the federal copyright claim (the "Copyright Claim"), are vacated. TriZetto also filed a motion for attorney's fees, which is granted.

I.  BACKGROUND

On October 27, 2020, after a six-day jury trial, the jury returned a verdict for TriZetto on all counts. The jury found that Syntel had misappropriated TriZetto's trade secrets, violating both the DTSA and New York law, and had infringed TriZetto's copyrights. To compensate for Syntel's misappropriation, the jury awarded TriZetto $284,855,192 in avoided development costs

under the DTSA and half that amount, $142,427,596, as a reasonable royalty under New York law, which does not permit recovery of avoided costs. The jury also awarded $59,100,000 as a reasonable royalty for Syntel's copyright infringement. To avoid duplicative damages, the jury ultimately limited its award to $284,855,192 in compensatory damages, with double that amount, $569,710,384, for punitive damages.

After trial, Syntel renewed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b),[1] moving in the alternative for a new trial or remittitur under Rule 59. The post-trial motions were denied. Syntel's challenge to liability and the DTSA compensatory damages award was rejected. Although the parties had addressed the propriety of the jury's awards on the New York Claim and the Copyright Claim, the decision did not address them since the jury did not factor them into their total compensatory damages, relying exclusively on the DTSA damages. The punitive damages award, which was based on either or both of the DTSA claim and the New York Claim, was remitted to $284,855,192 on account of the "large compensatory damages award" and "Syntel's reprehensible but not egregious conduct." TriZetto did not object to remittitur. TriZetto's application for a permanent injunction was granted, and Syntel was enjoined from using any of the trade secrets going forward.

On appeal to the Second Circuit, Syntel challenged both the liability finding and the damages award under the DTSA. The court affirmed Syntel's liability. *Syntel*, 68 F.4th 792 at 800. However, it held that, as a matter of law, "an unjust enrichment award of avoided costs [under the DTSA] was unavailable under the specific facts of this case." *Id.* at 814. The DTSA damages judgment was vacated. *Id.* The court remanded the case "to address the propriety of the

---

[1] All references to Rules in this Opinion are to the Federal Rules of Civil Procedure unless otherwise stated.

two jury awards that were based on TriZetto's damages theory of awarding a reasonable royalty: (1) the $142,427,596 New York trade secret misappropriation award and (2) the $59,100,000 copyright infringement award." *Id.*[2] TriZetto filed a petition for certiorari on September 22, 2023, challenging the Second Circuit's holding on damages. That petition was denied on October 30, 2023. *TriZetto Grp., Inc. v. Syntel Sterling Best Shores Mauritius Ltd.*, 144 S. Ct. 352 (2023).

## II.    LEGAL STANDARD

Under Rule 50, judgment as a matter of law may be granted if a court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party." Fed. R. Civ. P. 50(a)(1). Such relief is appropriate "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019).[3] A Rule 50 motion may be granted only if "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Perry v. City of New York*, 78 F.4th 502, 517 (2d Cir. 2023). "This standard presents a particularly heavy burden for Syntel, where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Syntel*, 68 F.4th at 800.

---

[2] The jury's punitive damages award is not within the scope of the Second Circuit's remand, which was explicit to the dollar, and says nothing about punitive damages. A footnote in the opinion confirms that the omission was intentional: "Syntel does not directly challenge the legality of the district court's permanent injunction or its punitive damages award. That said, it asks this Court to direct the district court on remand to adjust the punitive damages award should we vacate the district court's DTSA compensatory damages judgment." *Syntel*, 68 F.4th at 806 n.19. Despite acknowledging Syntel's request, the Second Circuit did not address or grant it.
[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

3

### III. DISCUSSION

#### A. Damages

##### 1. New York Claim Award

The jury awarded TriZetto $142,427,596 in damages on the New York Claim based on TriZetto's theory that the amount represented a reasonable royalty that Syntel would have paid for its infringing use of TriZetto's trade secrets. This award is vacated because the amount bears no reasonable relation to the actual harm TriZetto suffered, as required by New York law.

The Second Circuit has "approved the concept of a reasonable royalty award that attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff" when "measuring either the defendant's profits or the plaintiff's losses is too hard or speculative." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 858 F.3d 744, 748 (2d Cir. 2017) (*E.J. Brooks I*) (New York law). The Second Circuit made this statement in dicta in its decision certifying to the New York Court of Appeals the question of whether, under New York law, a plaintiff can recover as damages its costs of development which a defendant avoided in misappropriating the plaintiff's trade secret. In the resulting decision, the New York Court of Appeals held that "a plaintiff bringing an unjust enrichment action may not recover as compensatory damages the costs that the defendant avoided due to its unlawful activity in lieu of the plaintiff's own losses." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 313 (N.Y. 2018) ("*E.J. Brooks II*"). Although the Court of Appeals did not squarely speak to whether and when the receipt of a reasonable royalty award may compensate an injured party, the court made important pronouncements about the nature of compensatory damages under New York law that guide the analysis here.[4]

---

[4] One court in this district observed that, "while the Second Circuit has previously approved the

Damages in a trade secrets case "must be measured by the plaintiff's actual losses." *E.J. Brooks II*, 105 N.E.3d at 308. "To be sure, courts may award a defendant's unjust gains as a proxy for compensatory damages in an unfair competition case" but "the accounting for profits in such circumstance is not *in lieu of* damages, but is *a method of computing* damages." *Id.* There must be "some approximate relation of correspondence, a causal relation not wholly unsubstantial and imaginary, between the gains of the aggressor and those diverted from his or her victim." *Id.* The goal of compensatory damages "is to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred." *Id.* at 307.

Damages in a misappropriation action "must be measured by the loss of the *plaintiff*'s commercial advantage, which may not correspond to what the defendant has wrongfully gained." *Id.* at 308. "[W]hile a defendant's gains may be evidence of a plaintiff's losses, they will not be presumed to be the actual measure of a plaintiff's losses. Otherwise, damages would cease to serve the compensatory goals of tort recovery." *Id.* at 310. "[T]he measure of damages in a trade secret action must be designed, as nearly as possible, to restore the plaintiff to the position it would have been in but for the infringement. Whether those losses are measured by the defendant's profits, revenues, cost savings or any other measure of unjust gain, there is no presumption of law or of fact that such a figure will adequately approximate the losses incurred by the plaintiff." *Id.* "[D]amages in trade secret actions must be measured by the losses incurred

---

concept of a reasonable royalty award for misappropriation cases [under New York law] where measuring either defendant's profits or the plaintiff's losses is too hard or speculative, it did so prior to the New York Court of Appeals' decision in *E.J. Brooks* [*II*]." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 398 n.30 (S.D.N.Y. 2023) (precluding plaintiff from seeking a reasonable royalty based entirely on plaintiff's development costs as damages for its New York misappropriation claim). This acknowledges the possibility that *E.J. Brooks II* might have implicitly eliminated reasonable royalty awards as a form of compensatory damages in New York trade secret cases. This Opinion does not need to decide that issue in order to resolve the present motion.

by the plaintiff" and "damages may not be based on the infringer's avoided development costs." *Id.* at 311.

The implication of *E.J. Brooks II* as applied to the present case is clear: whether labeled as "unjust enrichment," as "a reasonable royalty" or as any other flavor of compensatory damages, those damages must be congruent with the actual losses incurred by the plaintiff. Avoided development costs do not necessarily correlate to that injury. "Where disclosure of a trade secret has destroyed [the secret's] competitive edge" -- something both parties acknowledge has not happened here -- "the plaintiff's costs of developing the product may be the best evidence of the (now-depleted) value that the plaintiff placed on the secret." *Id.* at 311. But the focus of the inquiry is still on the injury itself, for which development costs can, in circumstances not applicable here, provide an effective proxy.

*E.J. Brooks II* spoke explicitly to unjust enrichment, not to reasonable royalty awards. But to permit a reasonable royalty award premised entirely on avoided development costs "would circumvent the Court of Appeals' holding in *E.J. Brooks* [*II*]." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 398 n.30 (S.D.N.Y. 2023) (New York law). Such a holding would mean that any party hoping to recover damages based on avoided development costs need only present its damages theory as one of "reasonable royalty" to side-step the bedrock principle that compensatory damages "restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred." *E.J. Brooks II*, 105 N.E.3d at 307.

Here, a reasonable royalty is not an appropriate measure of damages because it does not "restore the plaintiff to the position it would have been in but for the infringement." *Id.* at 310. As the Second Circuit observed in the instant case, Syntel's misappropriation did not injure TriZetto beyond its actual loss of $8.5 million in lost profits. *Syntel*, 68 F.4th at 810-11. The trial

6

evidence showed that Syntel's misappropriation did not diminish the value of the trade secrets or impair TriZetto's ability to use them. The permanent injunction entered after trial prevents Syntel's continued use or destruction of TriZetto's trade secrets, some of which are now worth more than they were at the time of the misappropriation. *Id.* at 811.

At trial, TriZetto's damages expert, Thomas Britven, testified that a hypothetical negotiation between TriZetto and Syntel would yield a royalty that apportioned half of TriZetto's development costs to Syntel. But he provided no basis for a jury to infer that his suggested royalty amount bore any relation to the injury TriZetto suffered from Syntel's relatively limited infringing use. Accordingly, the $142,427,596 awarded under New York law would entitle TriZetto to a windfall far in excess of any injuries demonstrated at trial and is vacated.

### 2. Copyright Claim Award

The $59,100,000 awarded under the Copyright Act is also vacated. In its supplemental briefing, TriZetto did not separately address the jury's damages award under the Copyright Act, explaining that "[t]he copyright infringement award is subsumed within the New York trade secret misappropriation damages award." The statement reflects TriZetto's view that a Copyright Claim royalty would not be awarded in addition to a New York Claim royalty because that, in some sense, would be double counting. TriZetto's statement also apparently concedes that if a royalty award on the New York Claim is rejected, a similar royalty award on the Copyright Claim would likewise be rejected. The Court agrees. For the reasons above, the jury's damages award on the Copyright Claim based on a "reasonable royalty" is improper in this case.

In addition, the Copyright Claim award is rejected because of insufficient evidence. The owner of a copyright that has been infringed "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable

7

to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). An award of actual damages "undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act." *On Davis v. Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001); *accord Juliff v. Headout, Inc.*, No. 20 Civ. 699, 2021 WL 3887764, at *2 (S.D.N.Y. Aug. 31, 2021). Such damages include "the market value of the fee the owner was entitled to charge" for the defendant's use. *On Davis*, 246 F.3d at 165. The question for the court "is not what the owner would have charged, but rather what is the fair market value." *Id.* at 166. To calculate this "fair market value," a court must determine "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Id.* at 167.

In this case, the infringing use by Syntel was limited. It involved servicing a single client, from which Syntel earned $27 million in revenue, of which $823,899 was profit. No reasonable fact finder would conclude that $59,100,000 is a reasonable licensing fee for this use. Nor did TriZetto's damages expert present evidence sufficient to establish the fair market value of a hypothetical license to service a single customer, for example by analogizing to benchmark agreements reached between similarly situated parties for the purchase of comparable rights. *See United States v. Broad. Music, Inc.*, 316 F.3d 189, 194 (2d Cir. 2003); *accord Broad. Music, Inc. v. N. Am. Concert Promoters Ass'n*, 664 F. Supp. 3d 470, 478 (S.D.N.Y. 2023). Instead, the Copyright Claim award proposed to and accepted by the jury is 50% of TriZetto's development costs for the trade secrets subject to copyright. TriZetto's expert provided no evidence or explanation that the royalty rate approximated TriZetto's actual losses.

### B. Attorney's Fees

TriZetto seeks attorney's fees of $14,548,992.98. The motion is granted. Because attorney's fees are dependent on the unique facts of each case, the district court has "considerable discretion in determining what constitutes reasonable attorney's fees." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *accord Vogelmann v. Comm'r of Soc. Sec.*, 15 Civ. 8717, 2021 WL 6127077, *2 (S.D.N.Y. Dec. 28, 2021). To determine the appropriate attorney's fees award, courts calculate the "lodestar," which "is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023). The most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the party requesting fees. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *accord Rothman v. City of New York*, No. 19 Civ. 225, 2020 WL 7022502, at *2 (S.D.N.Y. Nov. 30, 2020).

#### 1. Entitlement to Fees

TriZetto is entitled to attorney's fees. Under the DTSA, the court may "award reasonable attorney's fees to the prevailing party" if "the trade secret was willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(D). The jury was instructed that, to award punitive damages, they must "find that a party has proven by a preponderance of the evidence the other party's conduct was malicious and wanton, and not merely unreasonable," meaning that the liable party "acted with deliberate intent to injure or interfere with the [prevailing] party's rights and with conscious indifference and utter disregard of its effect on the safety and rights of others."

9

By awarding punitive damages against Syntel, the jury necessarily found that Syntel's conduct was malicious and wanton. The Court similarly determined that "Syntel's conduct was reprehensible," a conclusion based in part on TriZetto's "evidence that Syntel acted willfully." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 Civ. 211, 2021 WL 1553926, at *9 (S.D.N.Y. Apr. 20, 2021) (remitting the punitive damages award). These findings unequivocally satisfy the DTSA's requirement that a trade secret be "willfully and maliciously misappropriated" to justify an award of attorney's fees. 18 U.S.C. § 1836(b)(3)(D).

Syntel does not dispute that the DTSA authorizes attorney's fees in this instance. Instead, it argues that an award of attorney's fees under the DTSA is discretionary even where malicious and willful misappropriation have been proved and that the Court, in its discretion, should deny the motion. While a grant of attorney's fees under the DTSA is discretionary, Syntel does not persuasively argue that they should not be awarded here. Syntel cites cases for the unremarkable proposition that a finding of malice and willfulness does not *require* an award of attorney's fees under the DTSA or comparable statutes. That some courts have declined to award attorney's fees under similar discretionary provisions has no bearing on whether fees are appropriate under the circumstances here. Syntel next attempts to read into the DTSA a requirement that attorney's fees be awarded only where they may serve to deter future misconduct. The statute contains no such requirement, and the cases Syntel points to do not hold otherwise. Nor is Syntel's "conduct during the litigation" a relevant datapoint in assessing whether an award of attorney's fees is appropriate. The statute looks to the willfulness and maliciousness of the conduct underlying the substantive claim -- i.e., the misappropriation of trade secrets -- not to the liable party's conduct during the litigation. And even if conduct during litigation were a relevant consideration, it is

10

doubtful that Syntel, which "[d]uring discovery, . . . destroyed documents and computers" and was subject to a preclusion order, could marshal much favor there. *See Syntel*, 68 F.4th at 797.

The parties dispute whether the Copyright Act affords an independent basis to award attorney's fees. Under the Copyright Act, a district court "may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The word "may" in § 505 "clearly connotes discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994); *accord Boesen v. United Sports Publ'ns, Ltd.*, No. 21-1029-CV, 2022 WL 457281, at *1 (2d Cir. Feb. 15, 2022) (summary order). Several factors inform the exercise of that discretion. First, the district court must make a "particularized, case-by-case assessment." *Boesen*, 2022 WL 457281, at *1. Second, the court "may not treat prevailing plaintiffs and prevailing defendants any differently." *Id.* Third, the court should consider "several nonexclusive factors" including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* "[O]bjective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted." *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001); *accord Brunswick Recs. Corp. v. Lastrada Ent. Co.*, No. 23 Civ. 100, 2023 WL 8703705, at *3 (S.D.N.Y. Dec. 15, 2023).

Syntel argues that it raised a good-faith defense as to whether TriZetto's Data Dictionary was even subject to copyright, and that attorney's fees should be disallowed under the Copyright Act as Syntel's arguments in litigation were not objectively unreasonable. But because fees are proper under the DTSA, it is unnecessary to decide whether the Copyright Act provides an independent channel for the recovery of fees. The Second Circuit has held that "[i]n fixing the lodestar the court may exclude any hours spent on severable unsuccessful claims." *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *accord Sanchez v. Oceanside First Class Roofing, Inc.*,

11

818 F. App'x 106, 108 (2d Cir. 2020) (summary order). But where the claims "involve a common core of facts or are based on related legal theories, and are therefore not severable, attorney's fees may be awarded for unsuccessful claims as well as successful ones." *Green*, 361 F.3d at 98. This logic -- recognizing that claims "can be intertwined based on common facts as well as common legal theories" -- would seem to apply with even greater force in a case like this where the party seeking fees has prevailed on all, not just some, of its related claims. *See id.* at 98 n.2.

Claims are intertwined when they are based on a "common core of facts" or "related legal theories" or when they "require[] essentially the same proof." *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 n.6 (2d Cir. 2000); *accord Sanchez*, 818 F. App'x at 108. Here, the claims are all based on the misappropriation of TriZetto's intellectual property by Syntel. These claims are sufficiently intertwined to permit recovery of fees for work relating to the Copyright Claim under the DTSA's fees provision.

### 2. Fees Calculation

#### a. Reasonable Hourly Rate

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Zhang v. Zhang*, No. 16 Civ. 4013, 2021 WL 1154084, at *2 (S.D.N.Y. Mar. 26, 2021). The rate must be "in line with prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *accord Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Piccini MNM, Inc.*, 19 Civ. 5258, 2021 WL 1791591, *4 (S.D.N.Y.

May 5, 2021). A court should consider the *Johnson* factors[5] to help determine "what rate a paying client would be willing to pay." *Lilly v. City of New York*, 934 F.3d 222, 239-30 (2d Cir. 2019). A court does not need to make specific findings as to each factor as long as all are considered. *See, e.g.*, *R.G. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851, 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019).

All of the *Johnson* factors noted above have been considered, including the following: the rates here range from $585 for junior attorneys up to $1,765 for lead attorneys. These are reasonable rates given the rates typically charged for similar services by lawyers of comparable skill, expertise and reputation in this market. Kirkland & Ellis is ranked among the best law firms for intellectual property litigation. The litigation involved complex questions of intellectual property law, and the work involved was substantial. In addition to the six-day trial, there were over 1,100 court filings, over 900,000 pages of documents produced, more than 156 hours of depositions and 1,966 trial exhibits. "[F]or prevailing parties with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is reasonable." *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001); *accord Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 549 (2d Cir. 2023). TriZetto sought out experienced litigators for the work involved in this case and willingly paid the above-mentioned fees. This billing arrangement also points to the fees' reasonableness.

---

[5] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Syntel does not object to the hourly rates proposed. Syntel correctly identifies several calculation errors contained in the original billing statement submitted by TriZetto. TriZetto corrected these errors in a subsequent filing, explaining that a typographical error was to blame. This lowered the amount of attorney's fees sought by over $5 million, to $14,548,992.98.

### b. Reasonable Hours Billed

"[A]ny attorney who applies for court-ordered compensation in this Circuit must document the application with contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014); *accord Brunswick Recs. Corp.*, 2023 WL 8703705, at *6. Before including time entries in the lodestar, a court must make "a conscientious and detailed inquiry" into the hours for which a party seeks reimbursement. *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997); *accord Brunswick Recs. Corp.*, 2023 WL 8703705, at *6. A court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437; *accord In re Petrobras Sec. Litig.*, 828 F. App'x 754, 759 (2d Cir. 2020) (summary order) (noting that *Hensley* does not require "a line-by-line accounting of every cost included or excluded from the fee award"). The court need not determine "whether attorney hours were necessary to the relief obtained" but simply whether, "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *accord Harrington v. Kaushan Media Corp.*, No. 23 Civ. 3213, 2023 WL 8880311, at *6 (S.D.N.Y. Nov. 21, 2023). Nonetheless, the court may exclude hours that are "excessive, redundant or otherwise unnecessary." *H.C.*, 71 F.4th at 126.

TriZetto seeks fees for a reasonable number of hours billed. TriZetto seeks only the subset of fees expended on the trade secret and copyright portions of the case, totaling

14

approximately 21,000 hours over seven years, including trial during the COVID-19 pandemic, and an appeal. TriZetto does not seek to recover for time spent defending against Syntel's breach of contract, intentional interference with contract and misappropriation claims, or defeating Syntel's motion for preliminary injunctive relief at the beginning of the case. Kirkland's records also exclude charges from twenty-nine of the fifty attorneys who worked on this matter and exclude charges for all of the paralegals and other administrative staff who billed time on this case.

Syntel makes several objections to the hours billed. None is persuasive. It objects that TriZetto's time entries include "repeated examples of the same timekeeper entering the same narrative in multiple time entries on the same day but with differing amounts." But as TriZetto explains, this is a function of Kirkland's timekeeping system, which does not allow entries of more than fourteen hours in a single day. Days in excess of fourteen hours were accordingly broken into several entries. In particular, the entries to which Syntel objects all relate to work performed during the trial, when the workload was extremely high and attorneys often billed in excess of fourteen hours a day. Syntel also objects to entries that are redacted or vague. TriZetto responds that redactions conceal matters related to trade secret misappropriation and that "Trial prep," while vague, corresponds with the direct and cross-examinations performed by the attorney in question, Patricia Carson. These hours appear reasonable and, in any case, the Court has no obligation to scrutinize a fee application line by line, *In re Petrobras Sec. Litig.*, 828 F. App'x at 760, but "is to do rough justice, not to achieve auditing perfection." *Kyros L. P.C.*, 78 F.4th at 547.

Syntel finally objects that Trizetto is not entitled to fees for claims on which it did not prevail. This too is unavailing. Where a party "has achieved only partial or limited success, the

product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436; *accord Raja v. Burns*, 43 F.4th 80, 87-88 (2d Cir. 2022). "But the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Rather, the most critical factor is the degree of success obtained." *Raja*, 43 F.4th at 88. "When a [party] has achieved partial success but the [party's] claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for work done on unsuccessful claims as well as successful ones." *Id.* "The court need not determine how much time counsel devoted to each such overlapping claim but should instead look to the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Here, despite subsequent adverse rulings on the jury's damages awards, TriZetto achieved substantial success on its trade secret and copyright claims. The jury found for TriZetto on every issue presented, rejecting all of Syntel's defenses. TriZetto also succeeded in obtaining a permanent injunction against Syntel's continued, unauthorized use of TriZetto's intellectual property. The Second Circuit rejected Syntel's efforts to overturn the jury's findings on liability. To attempt to pick apart TriZetto's fee calculation to omit any work related to TriZetto's damages -- work that was inherently bound up in its liability arguments -- is a needless undertaking. The overall relief obtained by TriZetto on its trade secret and copyright claims is significant, and TriZetto is entitled to recover for the hours reasonably expended in that effort.

\* \* \* \* \*

The Court is mindful that the conclusion reached here is, in some respects, out of step with courts' general deference to, and respect for, the judgment of the jury. *See Syntel*, 68 F.4th at 800, 807 n.21. After hearing all of the evidence at trial, the jury spoke, awarding TriZetto the

16

largest amount of compensatory damages offered by TriZetto's expert, plus substantial punitive damages. These awards expressed the jury's clear view about the harm to TriZetto and the maliciousness of Syntel's conduct. Vacating the entirety of the jury's compensatory damages, which is where this case now stands, is in stark contrast to the jury's verdict. This result also deprives TriZetto of its lost profit damages of $8.5 million and, in effect, penalizes TriZetto for presenting a theory of damages that had yet to be addressed by the Second Circuit and had been accepted by the Seventh Circuit. *See Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1123 (7th Cir. 2020). Acknowledging that the jury's award was based on what now turns out to be legal error, the Court is compelled to vacate the jury's remaining compensatory damages awards.

## IV. CONCLUSION

The remaining compensatory damages judgments entered in this case -- (1) the $142,427,596 New York trade secret misappropriation award and (2) the $59,100,000 copyright infringement award -- are **VACATED**. TriZetto's motion for attorney's fees in the amount of $14,548,992.98 is **GRANTED**. Entry of an amended judgment is stayed until **April 30, 2024**, so that the parties may (1) discuss a possible resolution and (2) file any follow-on motions.

The Clerk of Court is respectfully directed to close the motion at Dkt. 1104.

Dated: March 13, 2024
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

17