UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
SYNTEL STERLING BEST SHORES                                   :
MAURITIUS LIMITED, et al.,                                    :
                                   Plaintiffs,                :      15 Civ. 211 (LGS)
                                                              :
                   -against-                                  :      **ORDER**
                                                              :
THE TRIZETTO GROUP, INC. et al.,                              :
                                   Defendants.                :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

This order addresses the in limine motions of Syntel Sterling Best Shores Mauritius Limited and Syntel, Inc. (collectively, "Syntel") to preclude TriZetto Group, Inc., and Cognizant Technology Solutions Corp. (collectively, "TriZetto") from introducing certain evidence at the upcoming damages trial.[1] Any ruling below that bars evidence or argument takes precedence over any other order permitting it, absent further order of the Court.

**Syntel's Motion to Preclude Evidence Not Presented at the First Trial** (Dkt. 1208). Syntel's motion, based on the Seventh Amendment's proscription against reexamination in a bifurcated trial, to preclude TriZetto from introducing evidence not presented to the first jury (a) is denied as moot as to documents reflecting or containing trade secrets that are earlier or later than those presented to the first jury and listed on Syntel's "Exhibit B," because TriZetto represents that it does not intend to introduce them; and (b) is denied as to Syntel's "Exhibit A" documents insofar as they show the extent of Syntel's use of the same trade secrets with the same customers from the first trial, and link that use to specific harm caused to TriZetto. Such evidence, though it may have been relevant to determining the *fact* of use -- i.e., that Syntel used

---

[1] All references to rules refer to the Federal Rules of Evidence.

TriZetto's trade secrets, which was a finding necessary for liability -- the same evidence is admissible if it is also probative of the *extent* of Syntel's use, which is squarely within the purview of the damages inquiry. *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169-70, 170 n.14 (2d Cir. 2001) (permitting bifurcation of liability and damages and noting that the successive juries can consider overlapping evidence so long as they decide distinct issues), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

**Syntel's Motion to Bar the Jury from "Re-Determining the Nature of Use"** (Dkt. 1208). Syntel's motion to preclude TriZetto from having the jury "re-determine the nature of use as to any trade secrets where use was already tried to the first jury" is denied, if what Syntel means is that the second jury should not determine damages flowing from the liability findings of the first jury. The Seventh Amendment declares that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. This proscription, which Syntel invokes, is built on the need to respect and uphold a jury's findings. Here, the jury found Syntel liable to TriZetto on all counts, rejected all of Syntel's claims against TriZetto and awarded TriZetto the maximum amount of compensatory damages suggested, as well as twice that amount in punitive damages, totaling over $850 million. Because of a subsequent clarification in the law, all of the compensatory damages were vacated, with this Court's observation that the result is "in stark contrast to the jury's verdict" and "out of step with courts' general deference to, and respect for, the judgment of the jury." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 Civ. 211, 2024 WL 1116090, at *8 (S.D.N.Y. Mar. 13, 2024). The damages trial is intended to recognize and give effect to the jury's evident determination that Syntel egregiously wronged

TriZetto, and specifically to the jury's liability findings. Syntel's invocation of the Seventh Amendment is both untimely and without merit.

The motion is untimely, and Syntel has waived the objection. "[O]bjections raising constitutional protections may be waived or forfeited . . . in the same manner as lesser objections . . . ." *Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp.*, 975 F.2d 48, 56 (2d Cir. 1992).[2] Syntel's Seventh Amendment argument is presented as an apparent motion to exclude evidence, but in substance is a very belated objection to the upcoming bifurcated trial on damages. Syntel first made this Seventh Amendment argument in April 2025 in anticipation of the upcoming June 2025 trial. The issue should have been raised a year ago, when the parties briefed TriZetto's motion for a new damages trial, or perhaps over twenty months ago, when both parties asserted the need for a new trial rather than an adverse ruling in the wake of the Second Circuit's vacating the avoided costs damages under the Defend Trade Secrets Act ("DTSA"). Syntel was invited to oppose TriZetto's motion for a new trial, and submitted a 15-page memorandum of law in opposition -- but without the Seventh Amendment argument. Having forgone the opportunity to make the objection then or during the following twelve months, Syntel cannot make it now. *See id.* at 56 (finding that the defendant waived its objection to an allegedly inconsistent verdict, despite Seventh Amendment reexamination concerns, as the defendant had "abundant opportunities" to timely raise the objection but failed to do so and raised it for the first time on appeal); *Gusler v. City of Long Beach*, 715 F. App'x 68, 69 (2d Cir. 2018) (summary order) (finding waiver based on failure to object to the court's fact finding following an evidentiary hearing).

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Based on TriZetto's representations about its trial evidence, the motion is without merit. "Trying a bifurcated claim before separate juries does not run afoul of the Seventh Amendment" as long as "they are not presented in a way that causes juror confusion or uncertainty," even where the two juries will "have to consider similar evidence in deciding distinct issues." *Robinson*, 267 F.3d at 169 n.13, 170 n.14. The issues of liability and damages decided by the first and second juries respectively are distinct, despite implicating similar or the same evidence. TriZetto represents that its damages evidence pertains to Syntel's use of the same trade secrets with the same six stipulated-to customers at issue in the first trial. To prove its damages, TriZetto may show the extent of Syntel's use of the trade secrets and the harm that flowed from that use, consistent with its proof of liability at the first trial.

**Syntel's Motion in Limine No. 1** (Dkt. 1237). Syntel's motion to exclude the price erosion damages opinion of TriZetto's expert, Thomas W. Britven ("Britven"), is denied. Syntel challenges the opinion on the grounds that it is unreliable and based on speculative data.

Britven's methodology to determine price erosion damages is not unreliable. The analysis proceeds in four steps: (1) estimating the average rates TriZetto would have charged absent Syntel's challenged conduct, assuming annual increases in line with the Consumer Price Index based on Urban Consumers ("CPI"); (2) calculating the difference between projected revenue based on these rates and TriZetto's actual revenue; (3) limiting the calculation to the six most impacted clients, and certain related clients, based on their share of revenue and (4) further narrowing the analysis work related to Facets, the product Syntel infringed, by applying the proportion of such work (70%) to TriZetto's overall services. This analysis presents a reasonable approach to determining the hypothetical price absent infringing competition -- applying a benchmark that TriZetto itself used for pricing and confining the impact to the

relevant clients and work.  *See generally* Cleve B. Tyler & Gregory E. Smith, *Calculating Intellectual Property Damages* §§ 4:14-15 (2024) (discussing price determination, including the benchmark method and amount computation).

Syntel objects to Britven's factual assumptions that (1) absent Syntel's competition, TriZetto's prices would have risen in tandem with the CPI and (2) 70% of TriZetto's work is Facets-related.  Rule 703 permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed" and rely on otherwise inadmissible facts or data "[i]f experts in the particular field would reasonably rely on those kinds of facts or data."  Fed. R. Evid. 703.  "A district court has discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony."  *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 254 (2d Cir. 2021). "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."  *Id.*  Britven based the assumptions on his interview of TriZetto's Chief Executive Officer ("CEO").  TriZetto's CEO stated, among other things, that (a) 70% of TriZetto's total sales from TriZetto accounts [the parties dispute whether this is all accounts or only Facets accounts] comes from Facets services; (b) TriZetto increases its prices at the same rate as the CPI, but gave several major clients a three-year CPI holiday from annual price increases and (c) the rate reduction for major clients impacted the rest of the clientele.  The parties' disagreement over factual assumptions "is precisely the role of cross-examination" not a basis for exclusion.  *See Bitmanagement Software GmBH v. United*

*States*, 124 F.4th 1368, 1380 (Fed. Cir. 2025).  Both Britven and TriZetto's CEO will be available for cross-examination at trial.

Syntel's additional criticism that Britven's analysis fails to address price elasticity also "go[es] to the weight, not the admissibility, of the testimony." *Electra*, 987 F.3d at 254; *see Stanacard, LLC v. Rubard LLC*, No. 12 Civ. 5176, 2016 WL 6820741, at *3 (S.D.N.Y. Nov. 10, 2016) ("[R]eliance on incorrect assumptions about the market would not itself be grounds for excluding [the expert's] testimony.").  Britven did address this issue by concluding, based on consumers' past behavior, that the market was inelastic so long as TriZetto's price increases continued to track the CPI.  *See generally Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378-79 (Fed. Cir. 2003) (permitting price erosion damages which assumed the markets "were totally inelastic" where "the unique market conditions . . . would not have resulted in decreased sales at an increased price").

Syntel further argues that Britven's price erosion opinion omits any analysis of causation linking Syntel's infringement with price erosion.  That argument is incorrect.  A plaintiff may establish causation for price erosion by satisfying the widely-used four-factor test announced in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).  *See Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075, 2022 WL 2757643, at *26 (S.D.N.Y. July 14, 2022) (discussing wide use of the *Panduit* analysis).  The test is based on the rationale that, without the defendant's infringement in a "two-supplier market, it is reasonable to assume, provided the [plaintiff] has the manufacturing and marketing capabilities, that it would have made the [defendant's] sales." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).  Britven's expert report addresses each of the four *Panduit* factors by discussing (1) the use of, and demand for the Facets platform by major healthcare

players due to its complexity and customization; (2) the lack of acceptable alternatives to TriZetto before Syntel's infringement; (3) TriZetto's adequate staffing resources and (4) the quantified price erosion damages.  Britven's expert report explains that TriZetto and Syntel competed in a two-supplier market where one's win is the other's loss, which -- if credited by the fact finder -- establishes causation.

**Syntel's Motion in Limine No. 2** (Dkt. 1243).  Syntel's motion to exclude evidence related *solely* to punitive damages is denied as moot because TriZetto represents that it does not intend to introduce such evidence.  Syntel's motion to exclude other evidence related to punitive damages is denied to the extent that such evidence is relevant to show that TriZetto was harmed and the extent of that harm.  Any prejudice can be prevented by instructing the jurors on the purpose for which they may consider the evidence.  Evidence regarding Syntel's (or its employees') motives, willfulness, intent or state of mind is excluded because it is irrelevant to determining compensatory damages.  Evidence that Syntel did or did not reprimand employees or prevent further harm to TriZettto after the first jury's liability verdict is similarly irrelevant; to assess damages, the jury needs to know only if alleged damages continued to accrue after the verdict and for how long, not why they did.  *See* Motion in Limine No. 8, *infra*, regarding limitations on post-verdict damages.  Any probative value that Syntel's motive or state of mind may offer is substantially outweighed by the risk of prejudice -- namely, painting Syntel as a bad actor -- or confusing the jury, which may mistakenly conclude that such considerations bear on the calculation of compensatory damages.  That limited value is also outweighed by the certainty of wasting time by unnecessarily retrying part of the liability case.  Fed. R. Evid. 403.

**Syntel's Motion in Limine No. 3** (Dkt. No. 1249).  Syntel's motion to preclude TriZetto from introducing narrative testimony of background facts through their experts is denied to the

extent that the testimony is relevant to determining compensatory damages, but is granted as to irrelevant testimony. For example, TriZetto's experts (and other witnesses) may not offer testimony regarding Syntel's strategies, motives and intentions to misappropriate and use TriZetto's trade secrets to target TriZetto's customers, including Syntel's "Three-Phase Plan to Compete with TriZetto." TriZetto's experts are also precluded from describing Syntel's actions as "deceptive," "illegitimate" and "inappropriate," as such testimony has little or no probative value. Any limited probative value is substantially outweighed by the risk of unfair prejudice to Syntel by influencing the jury's verdict with impermissible moral judgments. TriZetto's experts shall limit their testimony of background facts to those pertinent to the economic harm TriZetto suffered as a result of Syntel's misappropriation of TriZetto's trade secrets.

**Syntel's Motion in Limine No. 4** (Dkt. 1255). Syntel's motion to exclude evidence of damages from work performed for Blue Shield of California ("BSC") and Capital District Physicians' Health Plan ("CDPHP") is denied because the first jury considered and rejected Syntel's argument that its work for CDPHP and BSC was authorized. Such evidence of damages is admissible regardless of whether it was presented to the first jury.

**Syntel's Motion in Limine No. 5** (Dkt. 1261). Syntel's motion to exclude evidence regarding reasonable royalty damages on TriZetto's New York trade secrets misappropriation claim is denied. However, the jury will be instructed that it may award such damages only if it finds that measuring Syntel's lost profits is too speculative, and only in an amount that reflects and reasonably relates to TriZetto's actual losses. *See E.J. Brooks Co. v. Cambridge Sec. Seals*, 858 F.3d 744, 748 (2d Cir. 2017) (New York law) (too speculative); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E. 3d 301, 307 (N.Y. 2018) (reasonably relates).

**Syntel's Motion in Limine No. 6** (Dkt. 1267). Syntel's motion to preclude TriZetto from seeking reasonable royalty damages for copyright infringement is denied. The jury will be instructed that it may award such damages only if the jury finds that TriZetto has not proved lost sales caused by Syntel's copyright infringement but has proved the loss of payment of a reasonable royalty for Syntel's infringing use. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 164-66 (2d Cir. 2001), *as amended*, (May 15, 2001) (permitting reasonable royalty damages when the infringing plaintiff "does not show that the infringement caused him lost sales"); *accord Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 Civ. 4819, 2019 WL 12239656, at *1 (S.D.N.Y. Mar. 19, 2019). The Court does not find, and Syntel identifies none, prejudice that would result from the introduction of such evidence.

**Syntel's Motion in Limine No. 7** (Dkt. 1273). Syntel's motion to exclude evidence or argument related to SyntBots is denied as moot because TriZetto represents that it does not intend to offer SyntBots-related evidence, provided that Syntel does not open the door to such evidence. If, during the trial, TriZetto believes that Syntel has opened the door and TriZetto intends to present such evidence, as soon as possible thereafter, TriZetto shall advise Syntel and the Court to obtain a ruling before doing so.

**Syntel's Motion in Limine No. 8** (Dkt. 1327). Syntel's motion to exclude evidence, testimony, argument or suggestion regarding damages occurring before January 1, 2012, or after October 18, 2020, for the New York misappropriation claim, or before October 30, 2013, or after October 27, 2020, (the date of the verdict) for the copyright infringement claim is:

(1) denied as moot as to lost profits and reasonable royalty damages that accrued before January 1, 2012, for the New York misappropriation claim because TriZetto represents that it will not seek such damages;

(2) granted as to copyright infringement damages incurred before October 30, 2013, the first publication date of Facets 5.10.  Evidence regarding those damages relates to prior versions of Facets, of which Facets 5.10 is a derivative.  TriZetto did not argue at the first trial that Syntel infringed those prior versions.  While the infringement of a derivative may permit a copyright infringement action against the underlying work, a jury finding of the former does not establish liability for the latter.  *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) (holding that a patented derivative work may permit an infringement action for the unpatented underlying work, but that the copyright owner still needs to prove actual infringement) and

(3) denied as to any damages that may have occurred after October 18, 2020, for the New York misappropriation claim and after October 27, 2020, for the copyright infringement claim, but only to the extent that such damages arose out of Syntel's misappropriation or infringement that occurred on or before those dates; i.e., TriZetto may seek post-verdict damages, but only for pre-verdict misconduct.[3]  TriZetto may present evidence of such damages not presented to the first jury.

**Syntel's Motion in Limine No. 9** (Dkt. 1278).  Syntel's motion to exclude evidence, testimony or argument regarding Syntel's avoided development costs or TriZetto's development costs is (1) granted as to Syntel's avoided development costs and TriZetto's development costs in the context of the Cost Approach as a way to determine a royalty data point range, and (2) is denied to the extent that TriZetto may use its development costs as one of several factors that TriZetto would have considered in its hypothetical royalty negotiation and as a method of apportioning the royalties attributable to the three categories of trade secrets.

---

[3] The same principle and ruling apply to DTSA reasonable royalty damages.

**Syntel's Motion in Limine No. 10** (Dkt. 1284). Syntel's motion to exclude evidence or argument under the DTSA is denied because TriZetto is seeking only reasonable royalty damages under 18 U.S.C. § 1836(b)(3)(B)(ii), which the Second Circuit did not preclude. *See generally Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 808-11 (2d Cir. 2023) (quoting the DTSA's damages provision, including but not otherwise addressing "a reasonable royalty for the misappropriator's unauthorized . . . use of the trade secret"). Because TriZetto's reasonable royalty damages under the DTSA are properly at issue, evidence of those damages is probative and not unfairly prejudicial. Fed. R. Evid. 403.

**Syntel's Motion in Limine No. 11** (Dkt. 1292). Syntel's motion to exclude evidence, testimony, argument or suggestion regarding the prior compensatory and punitive damages awards is granted under Rule 403. The minimal probative value of such evidence is outweighed by the substantial risk of prejudice and confusion by improperly suggesting to the second jury that they should follow the first jury's award, or by anchoring the second jury's deliberations. Without limiting the foregoing ruling, neither party shall reference, explicitly or implicitly, (1) that the first jury considered the issue of damages or rendered a verdict on damages, (2) that the Court of Appeals considered or remanded the case on the issue of damages or (3) the substance or outcome of any such proceedings, including any reference to damages based on avoided costs. Any reference to testimony from the prior trial shall be referred to as "prior sworn testimony" instead of "testimony from the earlier trial" or similar formulations.

**Syntel's Motion in Limine No. 12** (Dkt. No. 1297). Syntel's motion to preclude TriZetto from introducing hearsay statements by unidentified customers (group A) suggesting that Syntel made derogatory statements about TriZetto to other unidentified customers (group B) is granted. The purported statements by unidentified customers (group A) are hearsay statements

11

as to which no hearsay exception applies. The statements shall not be introduced or referenced by TriZetto's fact or expert witnesses.

**Syntel's Motion in Limine No. 13** (Dkt. No. 1303). Syntel's motion to preclude TriZetto from introducing evidence, testimony, argument or suggestions that:

(1) the prior jury found that all of the 104 alleged trade secrets were both trade secrets and misappropriated is granted insofar as TriZetto may state or suggest only that the prior jury determined that Syntel misappropriated "one or more" of TriZetto's trade secrets. The damages jury will be instructed, in substance, that the prior jury found that Syntel is liable to TriZetto under New York and federal law for trade secret misappropriation, and specifically, that Syntel misappropriated "one or more" of TriZetto's trade secrets during the relevant time period. To prove its damages, TriZetto may show the extent of Syntel's use of the trade secrets and the harm that flowed from that use consistent with its proof of liability at the first trial and

(2) Syntel was not authorized to use TriZetto's trade secrets and copyrighted material in providing services to BSC and CDPHP is denied. As the Second Circuit stated in affirming the denial of Syntel's post-trial motions, "[T]he unambiguous terms of the Amended MSA are clear and so is the extrinsic evidence: TriZetto did not authorize Syntel to use TriZetto's trade secrets to compete with TriZetto. Thus, Syntel misappropriated TriZetto's intellectual property in violation of the DTSA and New York law." *Syntel Sterling Best Shores Mauritius Ltd.*, 68 F.4th at 806. Evidence of Syntel's unauthorized use of TriZetto's trade secrets in providing services to BSC and CDPHP is highly relevant to the determination of damages and does not subject Syntel to any unfair prejudice.

**Syntel's Motion in Limine No. 14** (Dkt. No. 1308). Syntel's motion to preclude TriZetto from introducing evidence related to Syntel's downloading or copying of the trade

secret(s) or presenting argument characterizing the same, and, instead, seeking to instruct the damages jury that Syntel was found liable under New York law for misappropriation of "one or more trade secrets" "for the period of January 1, 2012, to October 18, 2020," is granted in part. TriZetto may not introduce evidence regarding Syntel's downloading or copying of misappropriated trade secrets, except as it pertains to the extent of use, because such evidence is irrelevant to the issue of compensatory damages. Any minimal probative value is outweighed by the risk of prejudice and confusion by suggesting that such evidence could affect the amount of damages, or that Syntel is a bad actor that "deserves" to pay greater damages. While TriZetto argues that such evidence is necessary to its damages theory, that Syntel was able to access the trade secrets or intended to use them is not necessary to show Syntel's actual use and the harm that flowed from that use. At best, such evidence is prejudicial and unnecessary "background." TriZetto has not shown that its experts' calculation of damages relies on that evidence. Regarding liability instructions to the jury, see the above decisions regarding MILs # 8, # 10 and # 13.

**Syntel's Motion in Limine No. 15** (Dkt. No. 1314). Syntel's motion to exclude the "lost sales" damages opinion of TriZetto's expert, Thomas W. Britven, is denied as Syntel's criticisms of his methodology go to the weight, not admissibility, of his testimony.

**Syntel's Motion in Limine No. 16** (Dkt. No. 1320). Syntel's motion to preclude TriZetto from introducing evidence or argument regarding Syntel's alleged acquisition or use of versions of software, tools or guides and manuals that TriZetto did not claim were trade secrets at the October 2020 trial is denied as moot based on TriZetto's representation that it will present only "the same trade secrets that were found to be misappropriated at the underlying trial."

**Syntel's Motion in Limine No. 17** (Dkt. No. 1324).  Syntel's motion to preclude TriZetto from introducing evidence, argument, testimony or suggestion regarding prior discovery violations or sanctions relating to the first trial is granted under Rule 403.  Neither party shall reference any prior discovery rulings, or a party's conduct underlying such rulings.  This evidence has little probative value which is substantially outweighed by the risk of confusing the jury with irrelevant procedural matters, or unfairly prejudicing the jury against a party because of its prior discovery misconduct.  Contrary to TriZetto's argument, Syntel's "credibility" (i.e., its moral character) is not at issue.

\*   \*   \*

The Clerk of Court is respectfully directed to enter on the docket only the following as the substance of this Order:

The Court's detailed rulings are as set forth in this Order.  In sum, Syntel's:

(i) motion to preclude evidence of trade secrets or use that was not presented to the first jury is **DENIED** as moot with regard to the earlier and later versions of certain trade-secret documents and otherwise **DENIED** to the extent that the documents are probative of the extent of Syntel's use (1) of the same trade secrets with the same customers from the first trial and (2) linked to specific harm caused to TriZetto;

(ii) motion to preclude TriZetto from having the jury redetermine the "nature of use" as to any trade secrets where use was already tried to the first jury is **DENIED** as untimely and on the merits.  TriZetto may show the extent of Syntel's use of the trade secrets and the harm that flowed from that use, consistent with its proof of liability at the first trial;

(iii) MIL # 1, to exclude the price erosion theory presented by Thomas W. Britven, expert

        for TriZetto, is **DENIED**;

(iv)    MIL # 2, to exclude evidence related to punitive damages and Syntel's motives, willfulness, intent or state of mind is **DENIED** in part as moot with regard to evidence related solely to punitive damages, **DENIED** in part with regard to other evidence related to punitive damages to the extent that such evidence is relevant to the occurrence and amount of compensatory damages and **GRANTED** in part as to Syntel's motives, willfulness, intent or state of mind;

(v)    MIL # 3, to preclude TriZetto from introducing narrative testimony of background facts through their experts is **DENIED** to the extent that the testimony is relevant to determining compensatory damages, but is **GRANTED** as to irrelevant testimony. TriZetto's experts may not offer testimony regarding Syntel's strategies, motives and intentions to misappropriate and use TriZetto's trade secrets to target TriZetto's customers or describe Syntel's actions as "deceptive," "illegitimate" and "inappropriate;"

(vi)    MIL # 4, to exclude evidence for any use of trade secrets or copyrighted materials in work performed for BSC and CDPHP is **DENIED**;

(vii)    MIL # 5, to exclude evidence regarding reasonable royalty damages for TriZetto's New York trade secrets misappropriation claim is **DENIED**;

(viii)    MIL # 6, to preclude TriZetto from seeking reasonable royalty damages for its copyright infringement claim is **DENIED**;

(ix)    MIL # 7, to exclude evidence or argument related to SyntBots is **DENIED** as moot;

(x)    MIL # 8, to exclude evidence, testimony, argument or suggestions regarding damages before January 1, 2012, or after October 18, 2020, for the New York misappropriation

claim, or before October 30, 2013, or after October 27, 2020, for the copyright infringement claim is **DENIED** in part as moot as to lost profits and reasonable royalty damages incurred before January 1, 2012, for the New York misappropriation claim; **GRANTED** for damages incurred before October 30, 2013, for the copyright infringement claim and **DENIED** as to damages incurred after October 18, 2020, for the New York misappropriation claim and after October 27, 2020, for the copyright infringement claim to the extent that the damages TriZetto seeks to prove arise out of the continuation of the infringement found at trial;

(xi) MIL # 9, to exclude evidence, testimony or argument regarding Syntel's avoided development costs or TriZetto's development costs is **GRANTED** as to Syntel's avoided development costs and TriZetto's development costs in the context of the Cost Approach as a way to determine a "royalty data point range," and **DENIED** to the extent that TriZetto may use its development costs as one of several factors that TriZetto would have considered in its hypothetical royalty negotiation, and as a method of apportioning the royalties attributable to the three categories of trade secrets.

(xii) MIL # 10, to exclude evidence or argument under the Defend Trade Secrets Act is **DENIED**;

(xiii) MIL # 11, to exclude evidence, testimony, argument or suggestion regarding the prior compensatory and punitive damages verdict is **GRANTED** as to all parties. Neither side shall reference, explicitly or implicitly, (1) that the first jury considered the issue of damages or rendered a verdict on damages, (2) that the Court of Appeals considered or remanded the case on the issue of damages or (3) the substance or

outcome of any such proceedings, including any reference to damages based on avoided costs. Any reference to testimony from the prior trial shall be referred to as "prior sworn testimony" instead of "testimony from the earlier trial" or similar formulations;

(xiv) MIL # 12, to preclude TriZetto from introducing testimony suggesting Syntel made derogatory statements about TriZetto to unidentified customers is **GRANTED**;

(xv) MIL # 13, to preclude TriZetto from introducing evidence, testimony, argument or suggestions that:

　　a. the prior jury found that all of the 104 alleged trade secrets were both trade secrets and misappropriated is **GRANTED** insofar as TriZetto may state or suggest only that the prior jury determined that Syntel misappropriated "one or more" of TriZetto's trade secrets and

　　b. Syntel was not authorized to use TriZetto trade secrets and copyrighted material in providing services to BSC and CDPHP is **DENIED**;

(xvi) MIL # 14, to preclude TriZetto from introducing evidence related to Syntel's downloading or copying of the trade secret(s) in this case and presenting argument characterizing the same, and instead instruct the damages jury that Syntel was found liable under New York law for misappropriation of "one or more trade secrets" "for the period of January 1, 2012, to October 18, 2020," is **GRANTED** in part. TriZetto may not introduce evidence regarding Syntel's downloading or copying of misappropriated trade secrets except as it pertains to the extent of use. Regarding liability instructions to the jury, see the above decisions regarding MILs # 8, # 10 and # 13;

(xvii)   MIL # 15, to exclude Britven's "lost sales" damages opinion is **DENIED**;

(xviii)  MIL # 16, to preclude TriZetto from introducing evidence or argument regarding Syntel's alleged acquisition or use of versions of software, tools or guides and manuals that TriZetto did not claim were trade secrets at the October 2020 trial is **DENIED** as moot;

(xix)    MIL # 17, to preclude TriZetto from introducing evidence, argument, testimony, or suggestion regarding prior discovery violations or sanctions relating to the first trial is **GRANTED**.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 1208, 1237, 1243, 1249, 1255, 1261, 1267, 1273, 1278, 1284, 1292, 1297, 1303, 1308, 1314, 1320, 1324 and 1327.

Dated:  June 2, 2025
        New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**